1  Deepak Gupta
   PUBLIC CITIZEN LITIGATION GROUP
2  1600 20th Street, NW
   Washington, DC 20009
3  Telephone: (202) 588-1000
   Facsimile : (202) 588-7795
4  dgupta@citizen.org
   (*pro hac vice* application to be filed)
5
6  Erica L. Craven (SBN 199918)
   LEVY, RAM & OLSON LLP
7  639 Front Street, 4th Floor
   San Francisco, CA 94111-1913
   Telephone: (415) 433-4949
8  Facsimile: (415) 433-7311
   elc@lrolaw.com
9  *Attorneys for Plaintiffs*

10

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE NORTHERN DISTRICT OF CALIFORNIA

13  PUBLIC CITIZEN, INC.,                )   Case No.
                                         )
14  CONSUMERS FOR AUTO RELIABILITY       )
15  AND SAFETY, and                      )   COMPLAINT FOR DECLARATORY
                                         )   AND INJUNCTIVE RELIEF
16  CONSUMER ACTION,                     )
                                         )
17            Plaintiffs,                )
                                         )
18       v.                              )
                                         )
19  MICHAEL MUKASEY, ATTORNEY            )
20  GENERAL OF THE UNITED STATES,        )
                                         )
21            Defendant.                 )
22  _____

23

24

25

26

27

28
    _____
              COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF   Page 1

# INTRODUCTION

1.      In 1992, Congress sought to combat the growing problems of auto fraud and theft by requiring the federal government to establish and implement the National Motor Vehicle Title Information System (NMVTIS), a single database that would provide public access to vehicle-history information gathered from states, insurance companies, and junk and salvage yards. Before purchasing a potentially dangerous used car, a consumer using the database would be able to instantly check the validity of the vehicle's title, verify its mileage, and learn whether it was stolen or whether it was deemed a junk or salvage vehicle.

2.      Among other things, Congress required the Secretary of Transportation to: (1) establish a commencement date for the monthly reporting to the database of vehicle-history information by insurance carriers and junk and salvage yard operators; (2) establish by regulation procedures to facilitate the efficient reporting of that information; and (3) provide access to that information to prospective automobile purchasers. 49 U.S.C. §§ 30504(a), (b), (c), 30502(e).  Congress required the government to establish the database by January 31, 1996.

3.      In January 1996, after being informed that the government would not meet that deadline, Congress transferred responsibility for the database from the Secretary of Transportation to the Attorney General and required the Attorney General to establish the database "not later than December 31, 1997." 49 U.S.C. § 30502(a).

4.      More than a decade since responsibility was transferred to the Attorney General, and nearly sixteen years since Congress first required these actions to be taken, the government has yet to carry them out: The Attorney General has not yet set a start

date for the reporting of vehicle-history information by junk yards and insurance companies, has not yet issued regulations to facilitate the reporting of that information, and has not yet made any vehicle-history information accessible to consumers.

5.     Because the government's failure to comply with these statutory directives puts consumers at unnecessary risk of economic loss and physical harm, plaintiffs Public Citizen, Inc., Consumers for Auto Reliability and Safety, and Consumer Action bring this lawsuit under the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2), to compel the Attorney General to take action that is required by law and that has been unreasonably delayed.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

6.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1361.

7.     Venue is proper in this District under 28 U.S.C. § 1391(e)(3).

8.     Under Civil Local Rule 3-2 and 3-5(b), this action is appropriately assigned to the San Francisco Division of the Northern District of California because one or more of the plaintiffs reside in the City and County of San Francisco.

## PARTIES

9.     Plaintiff Public Citizen is a Washington, DC-based non-profit consumer-advocacy organization with approximately 90,000 members nationwide. Public Citizen advocates before Congress, administrative agencies, and the courts for strong and effective safety regulation and for policies that ensure consumers' access to information about auto safety. Through its Auto Safety Group, Public Citizen has worked to improve highway safety by lobbying Congress to pass critical legislation, monitoring the government to be sure it carries out the will of Congress, conducting public awareness

campaigns on critical issues, and participating in lawsuits to force government action when necessary. In 1992, Public Citizen's advocacy was instrumental in securing passage of the Anti-Car Theft Act, which required the government to create and implement NMVTIS.

10.    Plaintiff Consumers for Auto Reliability and Safety (CARS) is a Sacramento, California-based non-profit safety and consumer-advocacy organization dedicated to preventing motor-vehicle-related fatalities, injuries, and economic losses. CARS has spearheaded the enactment of many landmark legislative measures to protect California and U.S. automobile consumers, including provisions to improve and strengthen California's auto "lemon law," expand the law to include protection for small businesses, and prohibit the imposition of "gag" agreements on owners of defective vehicles repurchased by manufacturers or dealers. CARS has also successfully advocated for red-light-camera enforcement, cell-phone safety, improved pedestrian safety, and curbing fraud involving unsafe vehicles. In the aftermath of Hurricane Katrina, CARS testified about auto salvage fraud in the U.S. Senate on behalf of American consumers.

11.    Plaintiff Consumer Action is a San Francisco, California-based non-profit consumer-education and advocacy organization founded in 1971. Each year, Consumer Action distributes over two million pieces of its free multilingual consumer education materials through a national network of 10,000-plus non-profit and community-based agencies. These materials include information on consumers' rights as automobile purchasers, automobile financing, "lemon law" protection, and avoiding auto fraud. Consumer Action also advocates for consumers, including automobile owners and purchasers, in the media and before lawmakers at the state and federal levels.

12.    Public Citizen, CARS, and Consumer Action bring this action on behalf of themselves and their members nationwide who are owners and operators of automobiles and prospective purchasers of automobiles. These members are, and will continue to be, injured by the Attorney General's failure to act because they are being deprived of their ability to obtain information that would allow them to learn about the history of their vehicles and thereby avoid the effects of auto fraud and theft. As a result of the Attorney General's continued failure to implement NMVTIS, and specifically his failure to require reporting by insurance carriers and junk and salvage yard operators, these consumers face an unacceptably high risk of economic injury and physical harm.

13.    Defendant Michael Mukasey is the Attorney General of the United States, the official charged by Congress with the duty of establishing and implementing the National Motor Vehicle Title Information System.

**FACTS**

A.    **The 1992 Anti-Car Theft Act**

14.    In 1992, Congress enacted the Anti-Car Theft Act of 1992, P.L. 102-519, §§ 202-04, 106 Stat. 3390-93, which required the Secretary of Transportation to establish or designate the NMVTIS "not later than January 31, 1996," to provide individuals, States, law-enforcement officials, prospective purchasers of automobiles, and insurers with "instant and reliable access" to motor vehicle history information.

15.    The 1992 Act provides that the database shall permit users to instantly and reliably establish not only the validity of a vehicle's title, but also its mileage and theft or damage history, which would indicate whether the vehicle has been branded as a junk or salvage vehicle. 49 U.S.C. § 30502(d).  The statute provides that the database may be

operated by a third party and that the operator may collect user fees that are not in excess of the cost of operating the system, thereby making NMVTIS "self-sufficient and not dependent on amounts from the United States Government." *Id.* § 30502(b), (c). The government has designated the American Association of Motor Vehicle Administrators (AAMVA) as the operator of the system.

16.     The 1992 Act requires junk yard and salvage yard operators to file monthly reports with the operator of NMVTIS. *Id.* § 30502(d). Each report must contain an inventory of all junk or salvage automobiles obtained by the junk yard or salvage yard during the prior month, including (1) the vehicle identification number (VIN) of each automobile obtained; (2) the date on which the automobile was obtained; (3) the name of the individual or entity from whom the automobile was obtained; and (4) a statement of whether the automobile was crushed or disposed of for sale or other purposes. *Id.* § 30504(a)

17.     Similarly, the 1992 Act requires insurance carriers to file monthly reports with the system operator.  The insurance carriers' reports must include an inventory of junk or salvage automobiles obtained by the carrier during the prior month, including: (1) the VIN of each automobile obtained, (2) the date on which the automobile was obtained, (3) the name of the individual from whom the automobile was obtained, and (4) the name of the owner of the automobile at the time of the filing of the report. *Id.* § 30504(b).

18.     The 1992 Act provides that the government "shall establish by regulation procedures and practices to facilitate reporting in the least burdensome and costly fashion." *Id.* § 30504(c).  The 1992 Act further provides that reporting by junk yard and

salvage yard operators under the Act is to begin at a time established by the government "that is not sooner than the 3d month before the establishment or designation of [NMVTIS] under section 30502 of this title[.]" *Id.* § 30504(c). As explained above, section 30502 originally set a statutory deadline of January 1996 for the establishment or designation of NMVTIS. *Id.* § 30504(a).

**B.    The Department of Transportation's Failure to Implement NMVTIS**

19.    The Department of Transportation delegated responsibility for implementing the database to the National Highway Traffic Safety Administration (NHTSA). In April 1993, NHTSA established a task force, known as the Motor Vehicle Titling, Registration, and Salvage Advisory Committee, representing the industries that would be affected by the 1992 legislation. In February 1994, the task force recommended additional legislation to promote nationally uniform methods of titling vehicles.

20.    In May 1994, the Department of Transportation sent proposed legislation to Congress that would extend the deadline for implementation of NMVTIS from January 1996 to October 1997. According to the government, the delay was required because AAMVA was conducting a pilot study of NMVTIS and NHTSA wanted to evaluate the study results. In December 1994, however, NHTSA denied AAMVA's request for funding of the pilot program on the grounds that such a study would be premature. In response, Congress provided $890,000 for the pilot study as part of the Department of Transportation's appropriation for fiscal year 1996.

21.    On November 29, 1995, then-U.S. Representative Charles Schumer of New York, the lead sponsor of the 1992 legislation, asked the Government Accounting Office (GAO) to look into the anticipated delays in implementing NMVTIS. The GAO's report,

issued in April 1996, identified several concerns about the implementation of NMVTIS, including the need for funding to encourage participation by the states, but it did not identify any reason why the government had not yet issued regulations concerning reporting of information by insurance carriers or junk and salvage yards, set a start date for reporting of that information, or made that information accessible to consumers.

**C.     The 1996 Anti-Car Theft Improvements Act**

22.     In January 1996, Congress reacted to the government's delay by passing legislation to "expedite implementation of the motor vehicle titling information system." H.R. Rep. 104-618 (1996), at 2, 1996 U.S.C.C.A.N. 1060, 1061.

23.     The House Report accompanying the 1996 legislation observed that the government "was required to establish [NMVTIS] by January 31, 1996," and had "failed to meet its statutory deadline." H.R. Rep. 104-618, at 2-3 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1060, 1061-62. The Report also reiterated the importance of prompt "implementation of the much-needed national titling information system, which would prevent thieves from obtaining legitimate vehicle ownership documentation and deter other serious consumer fraud related to transfer of motor vehicle ownership." *Id.* at 3, 1996 U.S.C.C.A.N. at 1062. The Report concluded that the "costs imposed on society" by such auto theft and fraud "remain unacceptably high, due in part to the failure to implement [NMVTIS]." *Id.*

24.     The Anti-Car Theft Improvements Act of 1996, Pub. L. 104-152, § 2-3, 110 Stat. 1384, made two amendments to the 1992 legislation that are relevant here: (1) It transferred responsibility for NMVTIS from the Secretary of Transportation to the Attorney General, and (2) it extended the deadline for establishing the system from

January 31, 1996 to December 31, 1997.

**D.    The Department of Justice's Failure to Implement NMVTIS**

25.    On July 23, 1998, then-Senator John Ashcroft wrote to the GAO expressing concern about the development of NMVTIS and requesting that the GAO determine the need for an analysis of the system's costs and benefits. In response, the GAO issued a report in August 1999, concluding that a cost-benefit analysis of the system by DOJ was warranted.    The DOJ cost-benefit analysis, conducted by the Logistics Management Institute, was completed in June 2001. The analysis concluded that NMVTIS was a bargain: With an initial annual investment in the range of $10 million, the fully implemented system could "achieve benefits in the range of $4 billion to $11.3 billion annually."

26.    Meanwhile, AAMVA conducted a pilot test of its NMVTIS system in 1999. AAMVA's 2000 pilot evaluation report concluded that the system "fulfills the requirements of the Anti Car Theft Act in a way that is technically feasible, and that it also reduces fraud and deters titling of stolen vehicles." AAMVA concluded that, although funding was a barrier to full participation by the states, the system was ready to receive and process reports from insurance carriers and junk and salvage yards, as required by Congress.    The report concluded that the one thing standing in the way of reporting by insurance carriers and junk and salvage yards was the Justice Department's failure to issue the reporting regulations required by the statute.

27.    More than a decade after the latest statutory deadline, and nearly sixteen years after Congress first required the establishment of the NMVTIS, the federal government has yet to carry out its obligations to (1) issue regulations to facilitate

reporting by insurance carriers and junk and salvage yards, (2) set a start date for the reporting of such information, or (3) make such information available to prospective purchasers of automobiles. Those failures deprive consumers of critical vehicle-history safety information to which they would otherwise be entitled and place them at an unacceptably high risk of suffering economic loss and physical injury caused by automobile theft and fraud. Without action by the Attorney General, the plaintiffs and their members will continue to suffer injury or the threat of injury.

## CLAIMS FOR RELIEF

28.    The Attorney General's failure to establish by regulation procedures and practices to facilitate reporting of information by insurance carriers and junk and salvage yards, as required by 49 U.S.C. § 30504(c), constitutes agency action unlawfully withheld, unreasonably delayed, or contrary to law and violates the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2).

29.    The Attorney General's failure to set a commencement date for the reporting of information by insurance carriers and junk and salvage yards, as required by 49 U.S.C. § 30504(a) and (b), constitutes agency action unlawfully withheld, unreasonably delayed, or contrary to law and violates the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2).

30.    The Attorney General's failure to make motor vehicle title and history information available to prospective purchasers of automobiles, as required by 49 U.S.C. § 30504(e), constitutes agency action unlawfully withheld, unreasonably delayed, or contrary to law and violates the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2).

WHEREFORE, plaintiffs request that this Court:

A.    Declare unlawful the Attorney General's failure to take action required by 49 U.S.C. §§ 30502 and 30504;

B.    Order the Attorney General to issue regulations, as required by 49 U.S.C. § 30504(c), within 30 days of declaring the Attorney General's failure to act to be unlawful;

C.    Order the Attorney General to establish a time for the commencement of information reporting by insurance carriers and junk yard and salvage yard operators, as required as required by 49 U.S.C. § 30504(a) and (b), within 30 days of the issuance of the regulations described above;

D.    Order the Attorney General to provide prospective purchasers of automobiles with access to NMVTIS, as required by 49 U.S.C. § 30504(e)(C), within 30 days of the issuance of the regulations described above;

E.    Award plaintiffs their reasonable costs and attorney's fees under 28 U.S.C. § 2412; and

F.    Grant all other appropriate relief.


Dated: February 6, 2008                     Respectfully submitted,

_____
Erica L. Craven (SBN 199918)
LEVY, RAM & OLSON
639 Front Street, Fourth Floor
San Francisco, CA 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311
elc@lrolaw.com

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF    Page 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Deepak Gupta
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Telephone: (202) 588-1000
Facsimile: (202) 588-7795
dgupta@citizen.org
(*pro hac vice* application to be filed)

*Attorneys for Plaintiffs*