1  GREGORY G. KATSAS
Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
United States Attorney
3  SANDRA M. SCHRAIBMAN
Assistant Branch Director
4  DIANE KELLEHER
Senior Counsel
5  United States Department of Justice
Civil Division, Federal Programs Branch
6  20 Massachusetts Ave., N.W., Room 7318
P.O. Box 883
7  Washington, DC 20044
(202) 514-4775
8  (202) 616-8470 (fax)

9  *Attorneys for Michael Mukasey, Attorney
General of the United States*

10

11                  UNITED STATES DISTRICT COURT
                 NORTHERN DISTRICT OF CALIFORNIA
12                   SAN FRANCISCO DIVISION

13  _____
                                    )
14  PUBLIC CITIZEN, INC.,           )    No. CV 08-0833 (MHP)
      et al.,                       )
15                                  )
              Plaintiffs            )    **DEFENDANT'S NOTICE OF MOTION**
16                                  )    **AND MOTION FOR JUDGMENT ON**
          v.                        )    **THE PLEADINGS, OR IN THE**
17                                  )    **ALTERNATIVE, FOR SUMMARY**
    MICHAEL MUKASEY, ATTORNEY       )    **JUDGMENT**
18  GENERAL OF THE UNITED STATES    )
                                    )    Hearing date: September 22, 2008
19              Defendant.          )    Courtroom 15
    _____)    Time: 2:00 p.m.

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.     PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS. . . . . . . . . . . . . 7

          A.     Plaintiffs Lack Representational/Associational Standing. . . . . . . . . . . . . 8

          B.     Plaintiffs Also Lack Organizational Standing. . . . . . . . . . . . . . . . . . . . . 12

                 1.     Plaintiffs Lack Article III Standing. . . . . . . . . . . . . . . . . . . . . . . . 12

                 2.     Plaintiffs Should Be Denied Standing for Prudential
                     Reasons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    II.    THE SIX-YEAR STATUTE OF LIMITATIONS APPLICABLE
        TO APA ACTIONS BARS PLAINTIFFS' CLAIMS. . . . . . . . . . . . . . . . . . . . . 16

          A.     28 U.S.C. § 2401 IS JURISDICTIONAL AND NOT
               SUBJECT TO TOLLING VIA THE CONTINUING
               VIOLATIONS DOCTRINE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    III.   SUMMARY JUDGMENT SHOULD BE ENTERED FOR DOJ
        BECAUSE DOJ IS MAKING ADEQUATE PROGRESS
        TOWARDS TAKING THE ACTIONS PLAINTIFFS CONTEND
        HAVE BEEN UNLAWFULLY WITHHELD AND/OR
        UNREASONABLY DELAYED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

-i-

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>                                                                                                    <u>PAGE(S)</u>

3

4
<u>Action Alliance of Senior Citizens v. Heckler</u>, 789 F.2d 931 (D.C. Cir. 1986). . . . . . . . . . . .  24

<u>Air Courier Conference v. Am. Postal Workers Union</u>, 498 U.S. 517 (1991). . . . . . . . . . . . .  15

5
<u>Allen v. Wright</u>, 468 U.S. 737 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

6
<u>Am. Canoe Ass'n, Inc. v. EPA</u>, 30 F. Supp. 2d 908 (E.D. Va. 1998). . . . . . . . . . . . . . . . .  20, 21

7
<u>Am. Chemistry Council v. DOT</u>, 468 F.3d 810 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . .  9

8
<u>American-Arab Anti-Discrim.  Comm. v. Thornburgh</u>, 970 F.2d 501
        (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 10

9

10
<u>Ashley Creek Phosphate Co. v. Norton</u>, 420 F.3d 934 (9th Cir. 2005). . . . . . . . . . . . . . . . . . .  15

11
<u>Auto. Workers v. Brock</u>, 477 U.S. 274 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12
<u>Cedars-Sinai Med. Ctr. v. Shalala</u>, 125 F.3d 765 (9th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . 19

13
<u>Cherosky v. Henderson</u>, 330 F.3d 1243 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

14
<u>Clarke v. Sec. Indus. Ass'n</u>, 479 U.S. 388 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

15
Coalition for ICANN Transparency, Inc. v. Verisign, Inc.,
        452 F. Supp. 2d 924 (N.D.  Cal. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

16

17
<u>Ctr. for Biological Diversity v. Hamilton</u>, 453 F. 3d 1331 (11th Cir. 2006). . . . . . . . . . . . .  *passim*

18
<u>Ctr. for Law and Educ. v. Dep't of Educ.</u>, 396 F.3d 1152 (D.C. Cir. 2005). . . . . . . . . . . . .  15, 16

19
<u>Dept. of the Army v. Blue Fox, Inc.</u>, 525 U.S. 255 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

20
<u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . .  15

21
<u>Fair Housing of Marin v. Combs</u>, 285 F.3d 899 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . .  13

22
<u>Havens Realty Corp. v. Coleman</u>, 455 U.S. 363 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

23
<u>Hunt v. Washington Apple Ader. Comm'n</u>, 432 U.S. 333 (1977). . . . . . . . . . . . . . . . . . . . . . . . . 8

24
<u>Inst. for Wildlife Prot. v. United States Fish and Wildlife Serv.</u>,
        No. 07-358-PK, 2007 WL 4118136 (D. Or. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

25
<u>In re Am. Fed. of Gov't Employees</u>, 790 F.2d 116 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . 24

26

27

28

Irwin v. Dept. of Veterans Affairs, 498 U.S. 89 (1990)................................. 19

John R. Sand & Gravel Co. v. United States, —, U.S. -- 128 S. Ct. 750,
    169 L.Ed.2d 591 (2008)................................................ *passim*

Klehr v. A.O. Smith Co., 521 U.S. 179 (1984)................................. 20, 21

Kowalski v. Tesmer, 543 U.S. 124 (2004). ...................................... 14

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)........................... *passim*

Nat'l Treasury Employees Union v. United States, 101 F.3d 1423
    (D.C. Cir. 1996)........................................................ 12

Oil, Chemical & Atomic Workers Int'l Union v. Zegeer, 768 F.2d 1480
    (D.C. Cir. 1985)........................................................ 24

Ottis v. Shalala, No. 92-425, 1993 WL 475518 (W.D. Mich. 1993)..................... 24

Powers v. Ohio, 499 U.S. 400 (1991). .......................................... 15

Pub. Citizen Health Research Grp. v. Chao, 314 F.3d 143 (3d Cir. 2002). ................ 23

Ranchers Cattlemen Action Legal Fund United Stockgrowers of
    America v. USDA, 415 F.3d 1078 (9th Cir. 2005). ......................... 11, 12

Renne v. Geary, 501 U.S. 312 (1991). .......................................... 7

Salmon v. Pac. Lumber Co., 30 F. Supp. 2d 1231 (N.D. Cal. 1998).................. 11, 12

Salmon v. Pac. Lumber Co., 61 F. Supp. 2d 1001 (N.D. Cal. 1999)..................... 12

Sierra Club v. Thomas, 828 F.2d 783 (D.C. Cir. 1987)........................... *passim*

Singleton v. Wulff, 428 U.S. 106 (1976)......................................... 14

Smith v. Pac. Props and Dev. Corp., 358 F.3d 1097 (9th Cir. 2004).................. 8

Spann v. Colonial Vill., Inc., 899 F.2d 24 (D.C. Cir.1990). ......................... 12

Spannaus v. U.S. Dept. of Justice, 824 F.2d 52 (D.C. Cir. 1987). ..................... 18

United Mineworkers of Am. Int'l Union, 190 F.3d 545 (D.C. Cir. 1999)................. 23

United States v. Mitchell, 463 U.S. 206 (1983)................................... 16

United States v. Richardson, 418 U.S. 166 (1974). ................................ 8

United States v. Sherwood, 312 U.S. 584 (1941). ................................ 16

United States v. Students Challenging Regulatory Agency Procedures,
    412 U.S. 669 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United Steelworkers of America v. Rubber Mfrs. Ass'n, 783 F.2d 1117
    (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

West Virginia Highlands Conservancy v. Johnson, 540 F. Supp. 2d 125
    (D.D.C. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Whitmore v. Arkansas, 495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Wildman v. United States, 827 F.2d 1306 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES

28 U.S.C. § 2401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 2501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

49 U.S.C. § 30501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

49 U.S.C. § 30502. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

49 U.S.C. § 30503. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

49 U.S.C. § 30504. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## MISCELLANEOUS

The Anti-Car Theft Act of 1992 (Pub. L. 102-519). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Anti-Car Theft Improvements Act of 1996 (Pub. L. 104-152). . . . . . . . . . . . . . . . . . . . . . 3

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on September 22, 2008, at 2:00 p.m., before Hon.

Marilyn Patel, 450 Golden Gate Avenue, Courtroom 15, 18th Floor, San Francisco, California

94102, Defendant Michael Mukasey, Attorney General of the United States, will move this Court

for an order dismissing this case and/or entering judgment for Defendant pursuant to Federal

Rules of Civil Procedure 12 and 56. This Motion is based on this Notice, the points and

authorities in support of the motion, the declarations of James Burch and Eric Gormsen in

support of the motion, and on such oral argument as the Court may permit. As the following

memorandum of points and authorities demonstrates, the Court lacks jurisdiction over this matter

because Plaintiffs lack standing to assert their claims, and Plaintiffs' claims are time-barred.

Alternatively, summary judgment should be entered for Defendant because the materials

submitted herewith show that the Department of Justice is making diligent progress on the

actions that are the subject of Plaintiffs' claims.

**INTRODUCTION**

In 1992, Congress enacted the Anti-Car Theft Act, which established the National Motor

Vehicle Title Information System ("NMVTIS"), a database designed to provide an electronic

means for verifying and exchanging title, brand, and theft data among motor vehicle

administrators, law enforcement officials, prospective purchasers, junk and salvage yards, and

insurance carriers. Responsibility for the database was assigned to the Department of

Transportation. In 1996, Congress, through the enactment of the Anti-Car Theft Amendments

Act of 1996, transferred that responsibility to the Department of Justice ("DOJ"). In February of

this year, Plaintiffs filed the instant lawsuit, alleging that DOJ has violated the Administrative

Procedure Act ("APA") by failing to: (1) establish a commencement date for the monthly

reporting to the database of vehicle-history information by insurance carriers and junk and

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

1    salvage yard operators; (2) establish by regulation procedures to facilitate the efficient reporting

2    of that information; and (3) provide access to that information to prospective automobile

3    purchasers.  Compl. at ¶ 4.  This Court should dismiss Plaintiffs' Complaint, or, in the

4    alternative, enter summary judgment for Defendant.

5        As an initial matter, Plaintiffs lack standing to pursue their claims because they have

6    failed to identify a single member who has suffered a cognizable injury from DOJ's alleged

7    violations of the APA.  And even if there were such individual members, their participation in

8    this litigation would be necessary to establish that they had suffered a cognizable injury fairly

9    traceable to DOJ's conduct.  In addition, Plaintiffs' claims are barred by the statute of limitations;

10   in their Complaint, Plaintiffs allege that DOJ had responsibility to take the specified actions by

11   December 31, 1997.  Compl. at ¶ 27.  But this legal action did not follow until 2008, more than

12   ten years later.  Plaintiffs have filed their Complaint too late, as recent case law from the

13   Supreme Court underscores the jurisdictional nature of 28 U.S.C. § 2401(a), the six-year statute

14   of limitations applicable to APA actions.

15       In the alternative, Defendant moves for summary judgment on the grounds that it is

16   already undertaking the actions Plaintiffs claim have been unlawfully withheld and unreasonably

17   delayed.  As explained in the Declarations of James Burch and Eric Gormsen, not only has DOJ

18   already made substantial progress to implement NMVTIS, but it is also working diligently to

19   propose and finalize the reporting regulations called for by 49 U.S.C. § 30504(c), and to provide

20   prospective purchasers of automobiles with access to NMVTIS information by the end of this

21   year.  The agency's rulemaking work, however, must proceed in accordance with the APA and

22   the relevant procedures that apply to executive branch rulemakings, including time for the next

23   Administration to consider the rule.  The Court should allow the agency reasonable time to bring

24   this rulemaking to completion.  For these reasons, summary judgment should be entered for DOJ.

25

26   Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
27   Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
     or in the Alternative, for Summary Judgment

28

1

## STATUTORY BACKGROUND

2       NMVTIS is an information system designed to provide states with the ability to reliably

3   verify the titling, theft, and damage history of a motor vehicle before a new title is issued.  The

4   database is currently operated by the American Association of Motor Vehicle Administrators

5   ("AAMVA").  The Anti-Car Theft Act of 1992 (Pub. L. 102-519) required the Secretary of

6   Transportation to establish a database known as the National Motor Vehicle Title Information

7   System not later than January 31, 1996, to provide States, law-enforcement officials, prospective

8   purchasers of automobiles, and insurers with "instant and reliable" access to motor vehicle

9   history information.  The Anti-Car Theft Act of 1992 was amended by the Anti-Car Theft

10  Improvements Act of 1996 (Pub. L. 104-152).[1/]  The 1996 legislation transferred responsibility

11  for implementing NMVTIS from the Secretary of Transportation to the Attorney General, and

12  required the Attorney General to establish the database "not later than December 31, 1997."

13  49 U.S.C. § 30502(a).

14      The Anti-Car Theft Act directs each state to make its titling information available for use

15  in the operation of NMVTIS and to perform an instant title verification check before issuing a

16  certificate of title.  See 49 U.S.C. § 30503(a).  The system is to be paid for by user fees, should

17  be self-sufficient, and not dependent on federal funding; the system operator may not collect fees

18  in excess of the costs of the operating the system.  49 U.S.C. § 30502(c).  Title 49 U.S.C. §

19  30504(c) authorizes the Attorney General to establish, by regulation, detailed reporting

20  requirements for both junk- and salvage-yard operators and insurance carriers; these reports

21  would be filed "with the operator of the system."  49 U.S.C. § 30504(a).  To date, the regulations

22  called for by 49 U.S.C. § 30504(c) have not been issued, and NMVTIS  is not yet searchable by

23

24  ────────────────
    [1/]     The two statutes, codified at 49 U.S.C. §§ 30501-30505, are collectively referred to as the
25  "Anti-Car Theft Act."

26  <u>Public Citizen v. Mukasey</u>, No. CV 08-0833 (MHP),
27  Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
    or in the Alternative, for Summary Judgment

28                              - 3 -

1  prospective purchasers of automobiles. But as shown below, DOJ is working diligently on both

2  fronts to make progress and ensure that NMVTIS is fully functional. A proposed rule to

3  implement 49 U.S.C. § 30504(c) was recently cleared by the Office of Management and Budget

4  (see http://www.reginfo.gov/public/do/eoDetails?rrid=115756), and DOJ is currently taking the

5  final steps that are necessary for the proposed rule to be published in the Federal Register.

6  **FACTUAL BACKGROUND**

7  As discussed in the Declaration of James H. Burch, II, a Deputy Director of the Bureau of

8  Justice Assistance at DOJ, the purpose of NMVTIS is to provide an electronic means for

9  verifying and exchanging title, brand, and theft data among motor vehicle administrators, law

10  enforcement officials, prospective purchasers, junk and salvage yards, and insurance carriers.[2]

11  See Declaration of James H. Burch, II, dated August 11, 2008, (hereinafter "Burch Decl.")

12  (attached as Exhibit 1), ¶ 3. Since 1996, DOJ has made significant progress on NMVTIS,

13  particularly with regard to its ability to obtain the involvement and cooperation of the third-

14  parties that are necessary to implement NMVTIS. Id. at ¶ 11. Every day, approximately 200,000

15  inquiries are made into NMVTIS. Id. Currently, 25 states are involved in NMVTIS (60% of the

16  U.S. vehicle population is represented), with an additional 11 states actively working towards

17  participation in 2008.[3] Id. By the end of 2008, it appears that DOJ should have close to 80% of

18  _____

19  [2]    Brands are descriptive labels regarding the status of a motor vehicle, such as "junk,"
    "salvage," and "flood" vehicles. Burch Decl., ¶ 3, n.1.

20

21  [3]    Participating states provide files of all active titles and brands to the NMVTIS Vehicle
    Information Number ("VIN") pointer and brand files, ideally in real time or at least once every 24

22  hours, make inquiries into NMVTIS prior to issuing a new title on an out-of-state vehicle, and
    provide updates as necessary to the NMVTIS files. Burch Decl., ¶ 11, n.2. Data-only states

23  provide files of all active titles and brands to the NMVTIS VIN pointer and brand files in real
    time or at least once every 24 hours. Id. States actively working towards participation include

24  those states that have a plan, timeline, and funding in place and are in the process of

25  (continued...)

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),

27  Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
    or in the Alternative, for Summary Judgment

28

the vehicle population included.  Id.

NMVTIS allows state titling agencies to verify the validity of ownership documents before they issue new titles.  Id. at ¶ 3.  NMVTIS also checks to see if the vehicle is reported "stolen" — if so, the states do not issue the new titles.  Id.  Brands would not be lost when the vehicle travels from state to state because NMVTIS keeps a history of all brands ever applied by any state to the vehicle.  Id.  In order to perform this check, these states run the vehicle identification number ("VIN") against a national pointer file, which provides the last jurisdiction that issued a title on the motor vehicle and requests details from that jurisdiction, including the motor vehicle's last reported odometer reading.  Id. at ¶ 4.

Verification of this data allows fully participating states to reduce the issuance of fraudulent titles and reduce odometer fraud.  Id. at ¶ 5.  Once the inquiring jurisdiction receives the information, it is able to decide whether to issue a title.  Id.  NMVTIS also allows fully participating states to ensure that brands are not lost when a motor vehicle travels from state to state.  Id. at ¶ 6.  As noted above, brands are descriptive labels regarding the status of a motor vehicle, and many brands, such as a flood vehicle brand, indicate that a motor vehicle may not be safe for use.  Id.  Because NMVTIS keeps a history of brands applied by any state to the motor vehicle, it protects consumers by helping ensure that unsuspecting purchasers are not defrauded or placed at risk by purchasing an unsafe motor vehicle.  Id. at ¶ 7.

DOJ has also provided a series of grants (to states and others) in order to fully implement NMVTIS.  Id. at ¶ 12.  It has also worked hard to persuade more states to fully participate with NMVTIS; in 2007, senior officials from BJA and the Federal Bureau of Investigation jointly signed letters to each administrator of state department of motor vehicles not participating in

---

3/      (...continued)
implementing the plan.  Id.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 5 -

NMVTIS and surveying them to determine why they have not participated to date.  Id. at ¶ 14.

The results have been used to refine the implementation process with the states and to guide

national oversight of the program.  Id.

In addition to its grants and outreach to states, DOJ has also organized and held meetings

with various NMVTIS stakeholders, including one of the Plaintiffs in this litigation, Consumers

for Auto Reliability and Safety.  Id. at ¶ 13.  One such meeting was held in the Spring of 2007, as

part of an effort to discuss progress on NMVTIS, DOJ's plans and approach for supporting

NMVTIS implementation, and NMVTIS benefits.  Id.  Meeting attendees included senior

officials from the FBI, DOJ's Fraud Section, a United States Attorney, and officials from other

components of DOJ, as well as the Consumer Federation of America, private counsel active in

consumer protection litigation, local law enforcement groups, and auto sales industry officials.

Id.  In addition to hearing the agency's progress on NMVTIS implementation, the participants

were given the opportunity to provide their feedback on implementation goals and priorities.  Id.

As an overall matter, however, DOJ's implementation of NMVTIS to date has focused

more so on establishing access by the states and less so on providing access to other authorized

users.  Id. at ¶ 15.  The statute does not contain any specific penalty for states that do not

participate, nor does it contain any financial incentives for states that do participate.  Id.

Moreover, NMVTIS will not be fully reliable until the percentage of vehicle population included

in the system nears 100% (until then, some searches will not yield any results, since the

information will not be in NMVTIS).  Id.  The Act also allows insurance carriers, and junk and

salvage yards, to avoid reporting directly to NMVTIS if their relevant inventories are already

reported to the states.  Id.  Thus, DOJ's reasonable priority has been on improving state

participation and increasing the percentage of vehicles represented in the system.  Id. at ¶¶ 11-16.

State participation also affects NMVTIS finances.  As the Burch Declaration explains,

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 6 -

1
2
3
4
5
6
7

"[f]ocusing on the insurance carrier and junk and salvage yard aspects of the NMVTIS rule would have been hampered by the lack of state participation as well because without state fees (currently only 9 states pay the required fees), AAMVA claims it does not have the resources to expand the functionality of the system." Id. at ¶ 16.  While DOJ has invested more than $14 million since 1997, state fees have only been $2.5 million since inception.  Id.  Despite these challenges, DOJ has worked with AAMVA to develop a plan to provide prospective purchasers of automobiles with access to the contents of NMVTIS by the end of 2008.  Id. at ¶ 17.

8

## ARGUMENT

9

## I.     PLAINTIFFS LACK STANDING TO BRING THEIR CLAIMS

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

It is axiomatic that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III" and is fundamental to a court's jurisdiction to hear a case.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  The "irreducible constitutional minimum of standing" requires a plaintiff to show: (1) that they have suffered an injury which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the existence of a causal connection between the alleged injury and conduct that is fairly traceable to the defendants; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  Id.  The plaintiff bears the burden of proving these elements.  Id. at 560.  Courts should "presume that [they] lack jurisdiction unless the contrary appears affirmatively from the record."  Renne v. Geary, 501 U.S. 312, 316 (1991) (citation and internal quotation marks omitted).  It "is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."  Id. (citation and internal quotation marks omitted).  A general complaint about agency inaction is insufficient to confer standing because courts lack jurisdiction to hear claims that consist of nothing more than "generalized grievance[s]" that are

25
26
27

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

28

"common to all members of the public." <u>United States v. Richardson</u>, 418 U.S. 166, 176 (1974); <u>see also</u> <u>Lujan</u>, 504 U.S. at 573-74 ("a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy."); <u>Allen v. Wright</u>, 468 U.S. 737, 754 (1984) ("an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

An organization may have standing to sue on behalf of its members ("representational" or "associational" standing) or on its own behalf ("organizational" standing). <u>See</u> <u>Smith v. Pac. Props and Dev. Corp.</u>, 358 F.3d 1097, 1101 (9th Cir. 2004). An entity's associational standing depends on "the standing of its members to bring suit," while its organizational standing is distinct "from the standing of its members, turning instead on whether the organization itself has suffered an injury in fact." <u>Id.</u> (citations omitted). Plaintiffs lack standing under either theory.

### A.    Plaintiffs Lack Representational/Associational Standing

"To establish representational standing, [an organization] must demonstrate that: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to vindicate are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" <u>Id.</u> at 1101-02 (quoting <u>Hunt v. Washington Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977)). All three Plaintiffs claim to have representational standing, <u>see</u> Compl. at ¶ 12, but none satisfies the first criteria necessary to establish it, and Plaintiff Consumer Action cannot satisfy the second criteria.

Initially, no Plaintiff has identified specific members who have standing to sue in their own right, an omission which can be "fatal to [an] attempt to plead associational standing." <u>Coalition for ICANN Transparency, Inc. v. Verisign, Inc.</u>, 452 F. Supp. 2d 924, 933-34 (N.D.

<u>Public Citizen v. Mukasey</u>, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 8 -

1  Cal. 2006).[4/]  Even if Plaintiffs were not required to identify such a member by name, they are

2  undoubtedly required to allege specific facts which, if true, would establish that one of their

3  members has suffered concrete injury traceable to Defendant's alleged inaction and would be

4  redressed by judgment in favor of Plaintiffs.  Here, Plaintiffs have alleged no specific facts

5  whatsoever, and no facts exist to establish a clear injury that is traceable solely to Defendant.

6        In the words of the Supreme Court, "pleadings must be something more than an ingenious

7  academic exercise in the conceivable.  A plaintiff must allege that he has been or will in fact be

8  perceptibly harmed by the challenged agency action, not that he can imagine circumstances in

9  which he could be affected by the agency's action."  United States v. Students Challenging

10  Regulatory Agency Procedures, 412 U.S. 669, 688-89 (1973).  In their Complaint, Plaintiffs

11  conjure up hypothetical, un-particularized injuries.  Plaintiffs allege that members of their

12  organizations are "being deprived of their ability to obtain information that would allow them to

13  learn about the history of their vehicles and thereby avoid the effects of auto fraud and theft."

14  Compl. at ¶ 12.  Such pure speculation is insufficient to establish standing.  Nor can standing be

15  established simply by claiming that "[a]s a result of the Attorney General's continued failure to

16  implement NMVTIS, and specifically his failure to require reporting by insurance carriers and

17  junk and salvage yard operators, these consumers face an unacceptably high risk of economic

18  injury and physical harm."  Id.  A vague assertion about "risk" says nothing about whether

19  specific organization members have suffered actual harm.  See American-Arab Anti-Discrim.

20

21  [4/]    See, e.g., Am. Chemistry Council v. DOT, 468 F.3d 810, 820 (D.C. Cir. 2006) ("[A]n

22  organization bringing a claim based on associational standing *must show that at least one specifically-identified member* has suffered an injury-in-fact.  It is not enough to show . . . that

23  there is a substantial likelihood that at least one member may have suffered an injury-in-fact.

24  Our standard has never been that it is likely that at least one member has standing.  At the very least, the identity of the party suffering an injury in fact must be firmly established.") (emphasis

25  added).

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),

27  Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
   or in the Alternative, for Summary Judgment

28                                    - 9 -

1   Comm. v. Thornburgh, 970 F.2d 501, 510 (9th Cir. 1991) ("[An organization's] allegations

2   sufficiently give them a 'special interest' in the outcome of the present case; however, this does

3   not provide standing."). Having failed to identify any members who have suffered a concrete

4   injury, Plaintiffs' representational claims must be dismissed.[5/]

5       Furthermore, even if Plaintiffs could establish that one of their members had suffered an

6   actual, concrete injury, they have not sufficiently alleged that such injury is solely the result of

7   Defendant's alleged inaction, rather than "the result of the independent [in]action of some third

8   party not before the court." Lujan, 504 at 560 (citation and quotation omitted). Similarly,

9   Plaintiffs cannot establish that it is "likely as opposed to merely speculative, that the injury will

10  be redressed by a favorable decision." Id. at 561 (citation and quotations omitted). Plaintiffs

11  cannot prevail on these prongs because the blame for any injury caused by the delay in

12  implementing NMVTIS cannot be borne just (if at all) by Defendant, but is also likely the result

13  of the inaction of third parties not before the Court: the states that are declining to participate

14  with NMVTIS. The Anti-Car Theft Act imposes many of the responsibilities critical to the

15  proper functioning of NMVTIS upon the States. See, e.g., 49 U.S.C. § 30502(a)(1) ("*In*

16  *cooperation with the States* . . . the Attorney General shall establish a National Motor Vehicle

17  Title Information System . . . .") (emphasis added); 49 U.S.C. § 30503(a) ("*Each State* shall

18  make titling information *maintained by that State* available for use in operating the National

19  Motor Vehicle Title Information System established or designated under section 30502 of this

20  title.") (emphasis added). Any injury alleged by Plaintiffs is equally likely to be the result of the

21  nonparty, nonparticipating states' inaction, and no order from this Court directed at Defendant

22  can spur any further action from them. Accordingly, Plaintiffs cannot establish that their alleged

23

24  [5/]    Any such allegation of injury would have to take account of the fact that vehicle
25  information is available through other databases. See Burch Decl., ¶ 18.

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
27  Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
    or in the Alternative, for Summary Judgment

28                                  - 10 -

1   injury will be redressed by a favorable decision against the Attorney General.  Plaintiffs'

2   concerns should be raised in the appropriate legislative forum where they can secure relief to

3   address the fact that the Anti-Car Theft Act neither provides funds to entice states to participate

4   in NMVTIS nor imposes specific penalties on them if they do not participate.  This Court can

5   provide neither the carrot nor the stick to ensure state action — only Congress can.

6          Finally, the consumer protection interests asserted by Consumer Action on behalf of its

7   members are not germane to its organizational purpose.[6/]  Cf. Salmon v. Pac. Lumber Co., 30 F.

8   Supp. 2d 1231, 1240 (N.D. Cal. 1998) ("'[T]he interest and expertise of this plaintiff, when

9   exerted on behalf of its directly affected members, assure that concrete adverseness which

10  sharpens the presentation of issues upon which the court so largely depends for illumination of

11  difficult . . . questions.'") (quoting Auto. Workers v. Brock, 477 U.S. 274, 290 (1986)); see also

12  Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. USDA, 415 F.3d

13  1078, 1104 (9th Cir. 2005) (finding no connection between "purported environmental interest"

14  asserted in the suit and "trade and marketing" purposes of association).  Consumer Action may

15  profess an interest in protecting its members from auto fraud.  However, that incidental interest,

16  which is secondary to its core purposes,[7/] is insufficient to rebut the presumption against a

17

18  [6/]      Defendant does not contend that the interests Public Citizen and Consumers for Auto
    Reliability and Safety seek to vindicate are not germane to those organizations' purposes.

19

20  [7/]      Consumer Action's website states that it "advances consumer rights, nation-wide, by
    referring complaints, publishing educational materials in multiple languages, advocating for

21  consumers in the media and before lawmakers, and comparing prices on credit cards, bank
    accounts and long distance services."  Consumer Action, "What We Do,"

22  http://www.consumer-action.org/about/list/C281/ (last visited August 9, 2008).  While
    admirable, Consumer Action's primary efforts to "advance consumer literacy and protect

23  consumer rights in many areas, *including credit, banking, privacy, insurance, healthcare and*

24  *utilities*" are incidental to NMVTIS.  Consumer Action, "About Consumer Action,"
    http://www.consumer-action.org/about/articles/about_consumer_action (last visited August 9,

25                                                                          (continued...)

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),

27  Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
    or in the Alternative, for Summary Judgment

28                                          - 11 -

litigant's ability to raise the rights of third parties.  See Ranchers, 415 F.3d at 1104.  For this additional reason, Consumer Action cannot show representational standing.

**B.      Plaintiffs Also Lack Organizational Standing**

For an organization to sue on its own behalf, it must, like any other plaintiff, satisfy both the constitutional and prudential considerations of standing.  See, e.g., Salmon, 30 F. Supp. 2d at 1239-40.  Plaintiffs fail both tests.  First, they have alleged no concrete injury fairly traceable to Defendant's conduct and likely to be redressed by a judgment in their favor.  As a result, they lack Article III standing.  Second, Plaintiffs are attempting to improperly argue on behalf of third parties, and their interests are not within the zone of interests protected by the Anti-Car Theft Act.  Therefore, even if Plaintiffs could demonstrate constitutional standing, their claims should be dismissed as a prudential matter.

**1.      Plaintiffs Lack Article III Standing**

An organization may sue on its own behalf if the challenged conduct directly conflicts with the organization's mission and has directly harmed its ability to provide its services.  As with individuals, the injury suffered by the organization cannot be conjectural, hypothetical, speculative or abstract; it must be "'certainly impending.'"  Nat'l Treasury Employees Union v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).  Furthermore, the organization's actual or threatened injury must be "'fairly traceable to the alleged illegal action and likely to be redressed by a favorable court decision.'"  Salmon v. Pac. Lumber Co., 61 F. Supp. 2d 1001, 1009 n.3 (N.D. Cal. 1999) (quoting Spann v. Colonial Vill., Inc., 899 F.2d 24, 27 (D.C. Cir. 1990)).

The leading case on an organization's standing to sue in its own right is Havens Realty

---

[7]/    (...continued)
2008) (emphasis added).

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 12 -

Corp. v. Coleman, 455 U.S. 363, 378-79 (1982).  In Havens, a nonprofit organization whose purpose was "to make equal opportunity in housing a reality in the Richmond Metropolitan Area," sued the owner of an apartment complex for engaging in racial steering in violation of the Fair Housing Act.  Id. at 368.  The organization alleged that the defendant's illegal housing practices frustrated its efforts to promote equal housing through counseling and other referral services.  Id. at 379.  It further alleged that it "had to devote significant resources to identify and counteract the defendant's" unlawful housing practices.  Id.  The Court held that the alleged impairment to the organization's ability to provide its services, caused by the defendant's conduct, constituted an injury-in-fact to the organization.  The organization therefore had standing to sue for damages in its own right.  Id.; see also Fair Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002) (fair housing organization had direct standing to sue real estate owner where it alleged that defendant's discriminatory practices frustrated its mission and impaired its ability to provide outreach and education services).

Although Plaintiffs purport to bring this action on their own behalf, see Compl. at ¶ 12, all of the alleged harm was suffered by "consumers" or their "members."  Id.  Despite Plaintiffs' contention that they have standing to sue Defendant on their own behalf, they have alleged no facts to demonstrate concrete injury of their own that is fairly traceable to action or inaction by Defendant, or injury that would be redressed by a judgment in their favor.  Unlike the organization in Havens, Plaintiffs do not allege that Defendant has compromised their mission or that any of their organizational efforts have been frustrated or made ineffective as a result of action or inaction taken by Defendant.  Plaintiffs have also posed no argument about the level and extent of additional services, if any, they have provided or will provide regarding NMVTIS, nor have they alleged facts sufficient to show that actions taken by Defendant have impaired their ability to provide services to members.  Any implication that the organizations themselves are

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 13 -

1  injured simply because they expend resources fighting to improve consumer protection does not
2  improve their standing to bring suit, as it does not state an obstacle to their ability to carry out
3  their organizational mission.  Cf. Havens, 455 U.S. at 379.  This lack of any allegation of
4  organizational injury highlights that Plaintiffs have suffered no direct and concrete injury.
5  Furthermore, they have not – and could not – alleged facts sufficient to show that a judgment in
6  their favor would provide redress for any injury they have suffered.  As noted above, no injury
7  Plaintiffs allege is fairly traceable to Defendant's alleged failures to implement NMVTIS.

### 2.    Plaintiffs Should Be Denied Standing for Prudential Reasons

Even if Plaintiffs have organizational standing under Article III, this Court should
nonetheless deny them standing for prudential reasons.  Prudential standing "embraces several
judicially self-imposed limits on the exercise of federal jurisdiction, such as the general
prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of
generalized grievances more appropriately addressed in the representative branches, and the
requirement that a plaintiff's complaint fall within the zone of interests protected by the law
invoked."  Allen, 468 U.S. at 751.  Although the prudential standing requirement is not meant to
be "especially demanding," Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 399 (1987), Plaintiffs'
Complaint runs afoul of at least two major prudential concerns.

First, Plaintiffs generally cannot rest their claims on the legal rights or interests of third
parties.  See Kowalski v. Tesmer, 543 U.S. 125, 130 (2004) (noting the Supreme Court has "not
looked favorably upon third-party standing"); Singleton v. Wulff, 428 U.S. 106, 113-14 (1976)
(explaining policies justifying limitation include that (i) "it may be that in fact the holders of
those rights either do not wish to assert them, or will be able to enjoy them regardless of whether
the in-court litigant is successful or not" and (ii) "third parties themselves usually will be the best
proponents of their own rights").  The Supreme Court has outlined three considerations to be

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14

weighed when assessing whether litigants may assert the rights of others: (1) "[t]he litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute," (2) "the litigant must have a close relation to the third party," and (3) "there must exist some hindrance to the third party's ability to protect his or her own interests." Powers v. Ohio, 499 U.S. 400, 411 (1991) (quoting Singleton, 428 U.S. at 112-16).  A plaintiff cannot meet this test merely by alleging that a regulatory scheme protects or regulates *someone else's* interests in a way that might indirectly affect his own.  See Air Courier Conference v. Am. Postal Workers Union, 498 U.S. 517, 522-31 (1991).  Quite simply, there exists no hindrance to the ability of any injured individuals, such as members of Plaintiffs' organizations, to bring suit against Defendant.  Plaintiffs' complaint that DOJ has failed to implement NMVTIS as quickly and as completely as Congress directed is the kind of generalized grievance any member of the public could raise, and is thus inadequate to vest them with standing to pursue their claims.  See, Argument, Section I, supra.  As a result, prudential concerns militate against a finding of standing.

15
16
17
18
19

Second, prudential considerations are lacking because Plaintiffs' ability to function as advocacy organizations is not within the "zone of interests protected by the law invoked."  Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (quoting Allen, 468 U.S. at 751); see also Ashley Creek Phosphate Co. v. Norton, 420 F.3d 934, 939 (9th Cir. 2005).  The Anti-Car Theft Act makes no "mention of advocacy organizations' interests."  Ctr. for Law and Educ. v.

20
21
22
23
24
25
26
27
28

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 15 -

1

2

Dep't of Educ. 396 F.3d 1152, 1157 (D.C. Cir. 2005). Nor does it regulate the conduct of

advocacy groups. Plaintiffs' concerns are therefore not within the law's zone of interests.

3

4

## II.    THE SIX-YEAR STATUTE OF LIMITATIONS APPLICABLE TO APA ACTIONS BARS PLAINTIFFS' CLAIMS

Plaintiffs contend that over ten years have passed since DOJ allegedly had an obligation

5

6

to take all of the actions related to NMVTIS cited in the Complaint. This delay also has

implications for Plaintiffs, as it puts the filing of their Complaint outside the six-year

7

8

jurisdictional, strictly construed statute of limitations applicable to APA actions. The United

States, as sovereign, is immune from suit unless Congress waives its immunity, and the terms of

9

10

its waiver, as set forth expressly and specifically by Congress, define the parameters of a federal

court's subject matter jurisdiction to entertain suits brought against the United States. See United

11

12

States v. Sherwood, 312 U.S. 584, 586 (1941). The terms of waiver must be construed strictly,

and any ambiguities must be resolved in favor of the sovereign. See, e.g., Dept. of the Army v.

13

14

Blue Fox, Inc., 525 U.S. 255, 261 (1999).[8/] Title 28, Section 2401 of the United States Code

controls the time for commencing action against the United States. It provides that "every civil

15

16

action commenced against the United States shall be barred unless the complaint is filed within

six years after the right of action first accrues." 28 U.S.C. § 2401(a).[9/]

17

18

19

20

21

22

[8/]    The existence of a waiver of its sovereign immunity from suit is a prerequisite in any claim against the United States. See United States v. Mitchell, 463 U.S. 206, 212 (1983) ("government may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). The Court must address the jurisdictional question before reaching the merits. "The very purpose of the [sovereign immunity] doctrine is to prevent a judicial examination of the merits of the government's position." Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir. 1987).

23

24

25

[9/]    Defendant recently filed an opposed motion to amend its answer to clarify its intent to raise the statute of limitations defense. In the Answer, Defendant included three affirmative defenses. See Answer at 1 (filed April 7, 2008) (including defenses of lack of subject matter

(continued...)

26

27

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

28

1    Plaintiffs here claim that a decade has elapsed since DOJ was under a legal obligation to

2    take the actions cited in the Complaint and that agency action has been unlawfully withheld

3    and/or unreasonably delayed.[10]  Thus, if Plaintiffs are correct, and DOJ was under an obligation

4    to take the actions cited in the Complaint by December 31, 1997, missing those deadlines itself

5    would have constituted "final agency action" and triggered the running of the six-year statute of

6    limitations.  See Sierra Club v. Thomas, 828 F.2d 783, 793 (D.C. Cir. 1987) ("[I]f an agency is

7    under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative

8    act that triggers 'final agency action' review."); Ctr. for Biological Diversity v. Hamilton, 453 F.

9    3d 1331, 1335 (11th Cir. 2006) (holding that a deadline in the Endangered Species Act creates a

10   cause of action "that accrues on the day following the deadline," and that this is a "fixed point in

11   time at which the violation for the failure of the Secretary to act arises").

12   Because Plaintiffs' cause of action against DOJ first accrued on December 31, 1997, they

13   were required to bring their claims before December 31, 2003.[11]  The United States waived its

14

15   [9]    (...continued)
16   jurisdiction; failure to state a claim upon which relief can be granted; and laches).  While the
     subject matter jurisdiction defense includes the statute of limitations claim – under an argument
17   to extend the holding of John R. Sand & Gravel Co. v. United States, — U.S. ----, 128 S. Ct. 750,
     169 L.Ed.2d 591 (2008) to 28 U.S.C. § 2401(a) – Defendant sought leave to amend the answer
18   and specifically identify the statute of limitations as a separate affirmative defense to clarify the
     record and avoid any unnecessary ambiguity.

19
     [10]    See Compl. at ¶ 27 ("More than a decade after the latest statutory deadline, and nearly
20   sixteen years after Congress first required the establishment of the NMVTIS, the federal
     government has yet to carry out its obligations to (1) issue regulations to facilitate reporting by
21   insurance carriers and junk and salvage yards, (2) set a start date for the reporting of such
     information, or (3) make such information available to prospective purchasers of automobiles.")
22   (emphasis added).

23
     [11]    While Plaintiffs may, in their opposition, argue that not all of DOJ's actions had to be
24   taken by December 31, 1997, such an argument would be at odds with the way in which they

25                                                                              (continued...)

26   Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
     Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
27   or in the Alternative, for Summary Judgment

28                                       - 17 -

1
2
3
4
5
6
7

sovereign immunity from suits for six years following the first accrual of the action, and no more. "Six years is a long time, ample time within which to pursue an administrative appeal to completion or, in instances of agency delay, to invoke the aid of the court." Spannaus v. U.S. Dept. of Justice, 824 F.2d 52, 56 (D.C. Cir. 1987).  In this instance, the remedy Congress provided for DOJ's alleged failure to fulfill its statutory duty was to permit any person to "invoke the aid of the court" at any time between December 31, 1997, and December 31, 2003.  In that "ample time," Plaintiffs did nothing.

8
9

### A.    28 U.S.C. § 2401 IS JURISDICTIONAL AND NOT SUBJECT TO TOLLING VIA THE CONTINUING VIOLATIONS DOCTRINE

10
11
12
13
14
15
16

Plaintiffs may argue that DOJ's alleged failure to take the actions required by the Anti-Car Theft Act to implement NMVTIS constitute "continuing violations," which bar the application of the statute of limitations to their claims.  The continuing violations doctrine allows a court to consider an entire course of related conduct, where some wrongful acts occurred within the statute of limitations period and others occurred outside it.  But strict construction of the waiver of sovereign immunity in 28 U.S.C. § 2401(a) does not allow the extension of the limitations period beyond the six years specified in the statute.

17
18
19
20

Plaintiffs will likely claim that the general six-year statute of limitations is not a jurisdictional bar and that the statute of limitations can be tolled because failure to perform a nondiscretionary duty is a continuing violation.  In contrast to some other circuits (see Center for Biological Diversity, 453 F.3d at 1334), the Ninth Circuit has previously determined that 28

21

22
23
24
25

[11]/    (...continued)
have drafted their Complaint.  See Compl. at ¶ 27.  Moreover, even if it were the case, that different deadlines applied to the various actions cited by Plaintiffs as unlawfully withheld and/or unreasonably delayed, it has been at least 5.5 years since the statute of limitations expired as to the first such action.  Thus, whether DOJ's "deadline" was December 31, 1997, or some later date, Plaintiffs were on notice, well in advance of six years before the filing of their Complaint.

26
27

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

28

1   U.S.C. § 2401 is not jursidictional.  See Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 770 (9th

2   Cir. 1997).  But recent case law from the Supreme Court, John R. Sand & Gravel Co. v. United

3   States, --- U.S. ----, 128 S. Ct. 750 (2008), provides new support for the argument that 28 U.S.C.

4   § 2401 is jurisdictional and cannot be tolled, even by an alleged continuing violation.

5        In Sand, the Supreme Court addressed whether 28 U.S.C. § 2501, the statute of

6   limitations for matters brought before the Court of Federal Claims, is jurisdictional.  128 S. Ct. at

7   753-54.  The Court explained that "[s]ome statutes of limitations . . . seek not so much to protect

8   a defendant's case-specific interest in timeliness as to achieve a broader system-related goal, such

9   as facilitating the administration of claims . . . [or] limiting the scope of a governmental waiver

10  of sovereign immunity."  Id. at 753 (citations omitted).  Such statutes of limitations, the Court

11  noted, are read "as more absolute, say as requiring a court to decide a timeliness question despite

12  a waiver, or as forbidding a court to consider whether certain equitable considerations warrant

13  extending a limitations period."  Id. at 753-54.  The primary question in Sand was whether

14  intervening decisions, such as Irwin v. Dept. of Veterans Affairs, 498 U.S. 89 (1990), had

15  undermined that assessment of 28 U.S.C. § 2501 as jurisdictional.  The Court rejected that

16  proposition.  Sand, 128 S.Ct. at 755.

17       Sand casts doubt on the continued viability of the Cedars-Sinai holding for two reasons.

18  First, § 2501 and § 2401(a) contain very similar language.[12]  Second, since both statutes are

19  Congressional waivers of sovereign immunity, the Sand determination that § 2501 is

---

[12]    Section 2501 provides, in relevant part:  "Every claim of which the United States Court of
Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years
after such claim first accrues."  28 U.S.C. § 2501.  That phrasing in § 2501 is nearly identical to
§ 2401(a) – "every civil action commenced against the United States shall be barred unless the
complaint is filed within six years after the right of action first accrues."  The dissent by Justice
Ginsburg in Sand explicitly noted the similarities between the wording of 28 U.S.C. § 2501 and
28 U.S.C. § 2401.  See 128 S. Ct. at 760-61 (noting "28 U.S.C. § 2401(a) contains a time limit
materially identical to the one in § 2501").

---

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 19 -

jurisdictional strongly suggests the same conclusion with respect to § 2401.

Accordingly, if 28 U.S.C. § 2401 is jurisdictional, it cannot be tolled by the continuing violations doctrine, even in a case alleging agency action unreasonably delayed. See Ctr. for Biological Diversity, 453 F.3d at 1335 (holding sovereign immunity prevented court from extending the continuing violation doctrine to suits to compel the performance of an agency's duty to regulate according to a statutory deadline); West Virginia Highlands Conservancy v. Johnson, 540 F. Supp. 2d 125, 143 (D.D.C. 2008) (holding Sand and relevant circuit precedent compelled conclusion that 28 U.S.C. § 2401 was jurisdictional and could not be tolled even in the context of a claim for delayed agency action), currently on appeal, No. 08-5153 (D.C. Cir.).

The consequences of finding that the continuing violation doctrine applies to cases challenging agency action as unlawfully withheld and/or unreasonably delayed would be directly contrary to the purposes of 28 U.S.C. § 2401(a). If failure to meet a statutory deadline were a continuing violation, then a plaintiff effectively would be able to sue forever, since no alternative statute exists to provide agencies with repose – a result which the Court should avoid. See Klehr v. A.O. Smith Co., 521 U.S. 179, 187 (1984) (describing a rule that would permit a series of violations to continue indefinitely as beyond what "Congress could have contemplated" and in conflict with "a basic objective – repose").

Plaintiffs will likely respond that the use of the statute of limitations defense to bar their claims in the context of agency action unlawfully withheld and/or unreasonably delayed is "inappropriate." But the effect of any statute of limitation is to bar otherwise valid claims. Second, while some courts have criticized the assertion of a limitations defense in a delay case, Am. Canoe Ass'n, Inc. v. EPA, 30 F. Supp. 2d 908, 925 (E.D. Va. 1998) (applying "statute of limitations to a claim of unreasonable delay is grossly inappropriate, in that it would mean that EPA could immunize its allegedly unreasonable delay from judicial review simply by extending

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 20 -

1   that delay for six years"), another district court in this Circuit has refused to be swayed by such
2   logic. Inst. for Wildlife Prot. v. United States Fish and Wildlife Serv., No. 07-358-PK, 2007 WL
3   4118136, at *8 (D. Or. 2007) ("However, in light of the plain language of Section 2401(a), the
4   date certain for performance of the duty set forth in Section 1533(b)(6)(C), and this court's duty
5   to construe waiver of sovereign immunity strictly in favor of the government, in the absence of
6   clear guidance from the Ninth Circuit this court declines to adopt the reasoning of these cases.").
7   See also Cherosky v. Henderson, 330 F.3d 1243, 1248 (9th Cir. 2003) ("the application of the
8   continuing violations doctrine should be the exception, rather than the rule") (cited in Inst. for
9   Wildlife Prot., 2007 WL 4118136, at *8). As a result, Plaintiffs are entitled to the six years
10  authorized by section 2401(a), and no more; thus, their claims are too late.

**III.    SUMMARY JUDGMENT SHOULD BE ENTERED FOR DOJ BECAUSE
         DOJ IS MAKING ADEQUATE PROGRESS TOWARDS TAKING THE
         ACTIONS PLAINTIFFS CONTEND HAVE BEEN UNLAWFULLY
         WITHHELD AND/OR UNREASONABLY DELAYED.**

         The attached declarations demonstrate that DOJ is complying with the Anti-Car Theft Act
and making significant progress towards taking the actions Plaintiffs contend were unlawfully
withheld and unreasonably delayed.  The Burch Declaration reviews DOJ's overall NMVTIS
progress and shows that prospective purchasers of automobiles should be able to access to the
contents of NMVTIS by the end of this year.  See Burch Dec., ¶¶ 1-17.  Likewise, with respect to
the delayed rulemaking and commencement date claim, the Declaration of Eric Gormsen
demonstrates that DOJ is preparing to publish a proposed rule but needs time to follow the steps
required by the APA and the requirements of Executive Order 12866.  See Declaration of Eric
Gormsen, dated August 12, 2008 ("Gormsen Decl.") (attached as Exhibit 2), ¶¶ 2, 17-18.

         The first step in the rulemaking process would be for DOJ to draft the text of the
proposed rule and a preamble explaining its basis and purpose.  Id. at ¶ 7.  Once the proposed
rule has been approved by DOJ, E.O. 12866 requires that the draft rule be submitted for review

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 21 -

1
2
3
4
5
6

and approval to OMB, which evaluates the rule for consistency with applicable law, the actions or policies of other agencies, and Presidential priorities.  Id. at ¶¶ 3-9.  E.O. 12866 allows up to 90 days for OMB review of a draft rule.  Id. at ¶ 7.  In order to submit the proposed rule to OMB, DOJ must also consider the applicability of other legal provisions, including the Regulatory Flexibility Act, E.O. 12132, the Paperwork Reduction Act, and/or any information-collection or record-keeping burdens that the proposed action would impose.  Id. at ¶¶ 3-6.

7
8
9
10
11
12
13
14
15
16
17

Once the draft rule has been cleared by OMB, DOJ must publish it in the Federal Register as a proposed rule and extend an opportunity for public comment, as required by the APA. Id. at ¶ 10.  E.O. 12866 provides that agencies should normally afford no less than 60 days to comment on a proposed rule.  Id.  Once that period has closed, DOJ must then review the comments, determine what amendments, if any, should be made to the rule in light of those comments, and prepare written responses to significant comments for publication in the Federal Register with the final rule, all as required by the APA.  Id. at ¶ 11.  Following the review and evaluation of public comments, a draft final rule must be prepared, which must then undergo a series of reviews within DOJ, OMB, and elsewhere.  Id. at ¶¶ 12-15.  If DOJ envisions substantial revisions to the rule, a revised regulatory analysis may be required.  Id. at ¶¶ 12-15. OMB's review of the draft final rule may take up to 90 additional days.  Id. at ¶ 13.

18
19
20
21
22
23
24

At this time, the proposed NMVTIS rule requiring reporting by insurance carriers and junk and salvage yards has already been reviewed by OMB, and DOJ is taking the final steps to publish the proposed rule in the Federal Register.  Id. at ¶¶ 17-18.  DOJ cannot provide a precise schedule for the proposed and final rule at this time, for several reasons.  Id. at ¶¶ 16-25.  First, the agency does not yet know what kind of comments it will receive after the proposed rule is published, nor does it know what its responses to those comments will be, nor whether additional regulatory analyses will be required.  Id. at ¶¶ 19-22.  Another complication with respect to a

25
26
27
28

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 22 -

timeframe for the publication of the NMVTIS proposed rule and the 60-day comment period is the upcoming change in Administration. Id. at ¶ 24. Based on when the NMVTIS rule will likely be proposed, DOJ needs to allow sufficient time for the new Administration to review and weigh in on the proposed rule. Id. Providing the new Administration with a chance to weigh in on the proposed rule may not be a legal requirement, but it reflects sound principles of good government, by creating an environment in which there is no suggestion that a regulation has been "rushed through"[13] at the last minute to escape scrutiny. Id. at ¶ 24.

In other words, it is contrary to both reason and the public interest, to expect DOJ to evaluate and resolve all the issues associated with the reporting required by NMVTIS on a less than optimal schedule. Courts recognize that agencies must be given the "time necessary to analyze [the issues presented] so that [they] can reach considered results . . ." Sierra Club, 828 F.2d at 798, even when confronted with circumstances of agency delay not presented here. See United Mineworkers of Am. Int'l Union, 190 F.3d 545, 554-56 (D.C. Cir. 1999); United Steelworkers of America v. Rubber Mfrs. Ass'n, 783 F.2d 1117, 1120 (D.C. Cir. 1986). A hasty rulemaking schedule would be ill-advised.[14] See Pub. Citizen Health Rsch. Grp. v. Chao, 314 F.3d 143, 159 (3d Cir. 2002) (referring parties to 60-day mediation after determining that "[w]hile we are certain that the time for [agency] action has arrived, we are cognizant of our lack of expertise in setting permissible exposure limits, and we recognize the damage that an

---

[13]     Such "midnight regulations" have sometimes been criticized as a way to avoid scrutiny. See generally Veronique de Rugy, Antony Davies, *Midnight Regulations: An Update, Mar. 28, 2008*, Mercatus Center, George Mason University, available http://www.mercatus.org/repository/docLib/20080403_midnightregulations_final.pdf.

[14]     Moreover, "by decreasing the risk of later judicial invalidation" of a rule as arbitrary and capricious, the "additional time spent reviewing a rulemaking proposal before it is adopted may well ensure earlier, not later, implementation of any eventual regulatory scheme." Sierra Club, 828 F.2d at 798-99.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 23 -

ill-considered limit might cause."). The appropriate course would be for the Court to withhold relief and permit DOJ to complete the process it has already begun. See In re Am. Fed. of Gov't Employees, 790 F.2d 116, 119 (D.C. Cir. 1986) (declining to enter order requiring agency action where agency demonstrated it planned to "diligently pursue[ ] its current case management endeavors"); Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 943 & n.15 (D.C. Cir. 1986); Oil, Chemical & Atomic Workers Int'l Union v. Zegeer, 768 F.2d 1480, 1488 (D.C. Cir. 1985) ("We are satisfied that MSHA is now proceeding toward completion of its rulemaking within a reasonable time; there is accordingly no need, at this juncture, for a court order compelling agency action unreasonably delayed."); Ottis v. Shalala, No. 92-425, 1993 WL 475518 at *7 (W.D. Mich. 1993) (declining to decide whether pre-NPRM delay was unreasonable and noting that even if it were, "alteration of the Secretary's proposed schedule would not be in the best interest of the public [because it] is reasonable in light of the number of comments received and the procedure the Secretary must follow to respond to the comments and finalize the regulations."). Since DOJ is proceeding toward completion of its proposed rulemaking, and providing prospective purchasers of automobiles with access to the contents of NMVTIS, there is no need for a court order compelling agency action.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 24 -

## CONCLUSION

The Court should dismiss this action for the reasons set forth above, or, in the alternative, enter summary judgment for Defendant.

Dated: August 12, 2008                              Respectfully submitted,

                                                    JOSEPH P. RUSSONIELLO
                                                    United States Attorney

                                                    GREGORY G. KATSAS
                                                    Assistant Attorney General

                                                    SANDRA M. SCHRAIBMAN
                                                    Assistant Branch Director

                                                    \s\ *Diane Kelleher*
                                                    _____
                                                    DIANE KELLEHER
                                                    Senior Counsel
                                                    PETER LEARY
                                                    Trial Attorney

                                                    Department of Justice
                                                    Civil Division, Federal Programs Branch
                                                    E-mail address:  Diane.Kelleher@usdoj.gov

                                                    Courier Address:
                                                    20 Massachusetts Ave., NW, Room 7318
                                                    Washington, D.C. 20004

                                                    *Attorneys for Attorney General Michael Mukasey*

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Defendant's Notice of Motion and Motion for Judgment on the Pleadings,
or in the Alternative, for Summary Judgment

- 25 -

**EXHIBIT  1**

1  GREGORY G. KATSAS
   Assistant Attorney General
2  SANDRA M. SCHRAIBMAN
   Assistant Branch Director
3  DIANE KELLEHER
   Senior Counsel
4  United States Department of Justice
   Civil Division, Federal Programs Branch
5  20 Massachusetts Ave., N.W., Room 7318
   P.O. Box 883
6  Washington, DC 20044
   (202) 514-4775
7  (202) 616-8470 (fax)

8  *Attorneys for Michael Mukasey, Attorney*
   *General of the United States*

9

10              UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF CALIFORNIA
                 SAN FRANCISCO DIVISION

11

12  _____ )    No. CV 08-0833 (MHP)
    PUBLIC CITIZEN, INC.,             )
13    et al.,                         )
                                      )
14              Plaintiffs            )
                                      )
15        v.                          )    **DECLARATION OF**
                                      )    **JAMES H. BURCH, II**
16  MICHAEL MUKASEY, ATTORNEY         )
    GENERAL OF THE UNITED STATES      )
17                                    )
                Defendant.            )
18  _____ )

19            **DECLARATION OF JAMES H. BURCH, II**

20        I, JAMES H. BURCH, II, hereby declare as follows:

21  1.      I am a Deputy Director of the Bureau of Justice Assistance ("BJA") within the

22  Department of Justice ("DOJ").  BJA is an agency within the DOJ which provides leadership and

23  services in grant administration and criminal justice policy development to support local, state,

24  and tribal justice strategies to achieve safer communities.  As a Deputy Director, I oversee BJA's

25  National Policy Office and have responsibility for administering all of BJA's national programs

26  and policy initiatives including those in law enforcement, crime prevention, information sharing

27  and other aspects of the justice system.  I make this Declaration in support of Defendant's motion

28  for summary judgment.

2.    The National Motor Vehicle Title Information System ("NMVTIS") is an information system designed to provide states with the ability to reliably verify the titling, theft, and damage history of a motor vehicle before a new title is issued.  NMVTIS was established by the Anti-Car Theft Act of 1992, and responsibility for NMVTIS was transferred to DOJ from the Department of Transportation by the Anti-Car Theft Improvements Act of 1996, 49 U.S.C. §§ 30501-30505.

3.    The purpose of NMVTIS is to provide an electronic means for verifying and exchanging title, brand, and theft data among motor vehicle administrators, law enforcement officials, prospective purchasers, junk and salvage yards, and insurance carriers.[1/]   NMVTIS also allows state titling agencies to verify the validity of ownership documents before they issue new titles.  NMVTIS also checks to see if the vehicle is reported "stolen" — if so, the states do not issue the new titles.  Brands are not lost when the vehicle travels from state to state, because NMVTIS keeps a history of all brands ever applied by any state to the vehicle.

4.    NMVTIS is a powerful tool for state titling agencies.  Fully participating state titling agencies are able to use NMVTIS to prevent fraud by verifying the motor vehicle and title information, information on brands applied to a motor vehicle, and information on whether the motor vehicle has been reported stolen – all prior to the titling jurisdiction issuing a new title.  In order to perform this check, these states run the vehicle identification number ("VIN") against a national pointer file, which provides the last jurisdiction that issued a title on the motor vehicle and requests details about the motor vehicle's history from that jurisdiction, including the motor vehicle's last reported odometer reading.

5.    Verification of this data allows fully participating states to reduce the issuance of fraudulent titles and reduce odometer fraud.  Once the inquiring state receives the information,  it is able to decide whether to issue a title.  For fully participating states, if a new title is issued,

---

[1/]    Brands are descriptive labels regarding the status of a motor vehicle, such as "junk," "salvage," and "flood" vehicles.

NMVTIS notifies the last titling jurisdiction that another jurisdiction has issued a title. The old jurisdiction then can inactivate its title record. This action allows fully participating jurisdictions to identify and purge inactive titles on a regular basis.

6.      NMVTIS also allows fully participating states to ensure that brands are not lost when a motor vehicle travels from state to state. As noted above, brands are descriptive labels regarding the status of a motor vehicle. Many brands, such as a flood vehicle brand, indicate that a motor vehicle may not be safe for use. Unfortunately, motor vehicles with brands on their titles can have their brands "washed" (i.e., removed ) from a title if the motor vehicle is retitled in another state that does not check with the state that issued the previous title to determine if it has any existing brands.

7.      Because NMVTIS keeps a history of brands applied by any state to the motor vehicle, it protects consumers by helping ensure that unsuspecting purchasers are not defrauded or placed at risk by purchasing an unsafe motor vehicle.

8.      Data supported by this system and available to its users include: title data, odometer data, brand history, detailed vehicle information, and theft data. Before NMVTIS, a thief could steal a car, then take it over the state line and get a valid title by presenting fraudulent ownership documentation. Or, the thief could steal a car, switch the VIN plate for one from a junked car, and get a valid title for the stolen car. These activities were possible because the states had no instant, reliable way of verifying the information on the ownership documentation prior to issuing the new title.

9.      Since FY 1997, BJA has provided over $14 million to the American Association of Motor Vehicle Administrators ("AAMVA") for NMVTIS implementation. Since 1992, when NMVTIS was the responsibility of the U.S. Department of Transportation, AAMVA has acted in the capacity of the "system operator" for NMVTIS, a role authorized by the Anti-Car Theft Act of 1992.

10.    In 2006, the Integrated Justice Information Systems ("IJIS") Institute, a nonprofit organization made up of technology companies, was asked by BJA to conduct a full review of the NMVTIS system architecture to identify any technological barriers to NMVTIS implementation and to determine if any potential cost savings were available through emerging technology.  The IJIS Institute report found that: "the NMVTIS program provides an invaluable benefit to state vehicle administrators and the public community as a whole.  Advantages of the program include improving the state titling process, as well as providing key information to consumers and law enforcement agencies."  BJA continues to provide support to AAMVA and NMVTIS through IJIS Institute in the areas of technology applications and strategic enhancements.

11.    Since 1996, DOJ has made some important progress on NMVTIS, particularly with regard to its ability to obtain the involvement and cooperation of the third-parties that are necessary to implement NMVTIS, as noted above.  Currently, 25 states are involved in NMVTIS (60% of the U.S. vehicle population is represented), with an additional 11 states actively working towards participation in 2008.[2]   Every day, approximately 200,000 inquiries are made into NMVTIS.  By the end of 2008, it appears that DOJ should have close to 80% of the vehicle population included in NMVTIS.

12.    DOJ has also provided grants to states in order to fully implement NMVTIS; recently, in

---

[2]     States are involved with NMVTIS in one of two ways:

Participating: Participating states provide files of all active titles and brands to the NMVTIS VIN pointer and brand files, ideally in real time or at least once every 24 hours, make inquiries into NMVTIS prior to issuing a new title on an out of state vehicle, and provide updates as necessary to the NMVTIS files.

Providing Data Only: Data only states provide files of all active titles and brands to the NMVTIS VIN pointer and brand files in real time or at least once every 24 hours.

States actively working towards participation include those states that have a plan, timeline, and funding in place and are in the process of implementing the plan

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Declaration of James H. Burch, II

- 4 -

fiscal years 2008 and 2007, BJA invited states to apply for funds to participate in NMVTIS.  In both fiscal years, states were eligible to apply for funds to provide data or to fully participate in the system as is required by law.  While fiscal year 2008 award decisions have not yet been made, in fiscal year 2007 BJA awarded funds to five states to begin their participation and awarded funds to AAMVA to assist with system administration and to supplement state participation fees received by AAMVA, as authorized under the Anti-Car Theft Act.  In addition, several major national, regional, and local organizations within and outside of the law enforcement community have endorsed NMVTIS and support DOJ's efforts to have states participate.[3]

13.    In addition, DOJ has organized and held meetings with various NMVTIS stakeholders, including one of the Plaintiffs in this litigation, Consumers for Auto Reliability and Safety.  One such meeting was held in the Spring of 2007, as part of an effort to discuss progress on NMVTIS, DOJ's plans and approach for supporting NMVTIS implementation, and NMVTIS benefits.  Other key stakeholders were included or invited to this meeting, which was held at the Headquarters of the Federal Bureau of Investigation ("FBI") and attended by senior officials from the FBI, DOJ's Fraud Section, a United States Attorney, and officials from other components of DOJ.  Other non-DOJ stakeholders invited included the Consumer Federation of America, private counsel active in consumer protection litigation, local law enforcement groups, and auto sales industry officials.  In addition to sharing the agency's progress on NMVTIS implementation, the participants were given the opportunity to provide their feedback on implementation goals and priorities.

---

[3]    These organizations include the National Insurance Crime Bureau, International Association of Auto Theft Investigators, North American Export Committee, International Association of Chiefs of Police.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Declaration of James H. Burch, II

- 5 -

14.     In 2007, senior officials from the Bureau of Justice Assistance and the FBI jointly signed letters to each administrator of state department of motor vehicles not participating in NMVTIS and surveying them to determine why they have not participated to date.  The results have been used to refine the implementation process with the states and to guide national oversight of the program.

15.     To date, the implementation of NMVTIS has focused on establishing access by the states and not on providing access to other authorized users.  Because there is no penalty for states that do not participate, the remaining states have chosen not to participate despite the encouragement and previous availability of funding and assistance from AAMVA and DOJ.   Without greater state participation, adding insurance or salvage yard data can only provide limited protection for consumers, as vehicles with missing or "washed" histories could still be purchased by unsuspecting consumers in states that are not participating in NMVTIS.  Each state that does not participate in NMVTIS creates a loophole in the system for consumer protection and becomes a prime target for criminal enterprises.  Additionally, NMVTIS access will not be fully reliable until the percentage of vehicle population included in the system nears 100% (until then, some searches will not yield any results, since the information will not be in NMVTIS).  Even in the case of insurance information, the Act allows insurance, junk and salvage operators to not report to NMVTIS if their relevant inventories are already reported to the states.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Declaration of James H. Burch, II

- 6 -

16.     For this reason, DOJ's priority has been on improving state participation and increasing the percentage of vehicles represented in the system – rather than on insurance carrier and junk and salvage yard reporting.  That reporting would also have been hampered by the lack of state participation in NMVTIS because without state fees (currently only 9 states pay the required fees), AAMVA claims it does not have the resources to expand the functionality of NMVTIS. While the DOJ's investment in NMVTIS has exceeded $14 million since 1997, the revenues from state fees (which are required to sustain the system) has only been $2.5 million since inception.  The funds that AAMVA received from DOJ have gone towards system administration and state support and were inadequate to support insurance, junk and salvage reporting, and NMVTIS access by prospective purchasers of automobiles.

17.     DOJ has discussed with AAMVA a public access portal, as authorized under the Act, so that prospective purchasers of automobiles can, with a VIN, query NMVTIS for information including vehicle branding and other information.  AAMVA expects that this access will be operational within the calendar year.  DOJ and AAMVA discussed whether or not such access could be provided via the DOJ website but concerns arose as to funding, and whether states were willing to have their vehicle data shared directly with prospective purchasers via a DOJ website. In addition, AAMVA's members –  the states – felt that they could better  provide this data to prospective purchasers through the existing connections they have built to AAMVA's network.

18.     In addition, since Congress passed the Anti-Car Theft Act in 1992, prospective purchasers of automobiles have not been entirely unable to obtain the information in NMVTIS from any source; indeed, since 1992, several private entities have begun offering much of the NMVTIS-required information to prospective purchasers of automobiles.  These private entities include Carfax, AutoCheck, Experian, and Consumer Guide Automotive.  For a fee of approximately $20 to $30, these private entities offer prospective purchasers of used automobiles information about the automobile's title, brand, odometer reading, lemon history, number of owners, accident indicators, service records, emissions inspection results, and use information.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on: August __11__, 2008

Washington D.C.



JAMES H. BURCH, II

EXHIBIT  2

1  GREGORY G. KATSAS
   Assistant Attorney General
2  SANDRA M. SCHRAIBMAN
   Assistant Branch Director
3  DIANE KELLEHER
   Senior Counsel
4  United States Department of Justice
   Civil Division, Federal Programs Branch
5  20 Massachusetts Ave., N.W., Room 7318
   P.O. Box 883
6  Washington, DC 20044
   (202) 514-4775
7  (202) 616-8470 (fax)

8  *Attorneys for Michael Mukasey, Attorney
   General of the United States*

9

10              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
11                 SAN FRANCISCO DIVISION

12  _____
                                           )
13  PUBLIC CITIZEN, INC.,                   )
      et al.,                               )
14                                          )   No. CV 08-0833 (MHP)
                         Plaintiffs         )
15                                          )
              v.                            )   **DECLARATION OF**
16                                          )   **ERIC T. GORMSEN**
    MICHAEL MUKASEY, ATTORNEY               )
17  GENERAL OF THE UNITED STATES            )
                                            )
18                       Defendant.         )
    _____)

19            **DECLARATION OF ERIC T. GORMSEN**

20       I, ERIC T. GORMSEN, hereby declare as follows:

21  1.    I am a Senior Counsel in the Office of Legal Policy ("OLP"). I make this declaration in

22  support of Defendant's Motion for Summary Judgment. OLP is the office within the Department

23  of Justice ("DOJ") that is responsible for developing and implementing DOJ's significant policy

24  initiatives. OLP also reviews certain regulations promulgated by DOJ. As a Senior Counsel, I

25  am responsible, in part, for reviewing regulations concerning the National Motor Vehicle Title

26  Information System ("NMVTIS"), in particular, the requirement that insurance carriers, and junk

27  and salvage yards report data to NMVTIS.

28

2.    The promulgation of regulations by DOJ to implement the requirements of the Anti-Car Theft Act is governed by a number of statutory requirements, including the Administrative Procedure Act, the Regulatory Flexibility Act, the Paperwork Reduction Act, and by a number of Executive Orders and internal DOJ procedures.  In addition to the preparation of the rule itself, rulemaking involves a number of analyses, opportunities for public participation, and various review and clearance procedures, both within and outside DOJ, before a rule can become final.  Some of these actions can be taken simultaneously, but a number must be carried out sequentially.  It is very difficult to predict in a given case how long a particular step will take, much more so the time required to complete all steps necessary to issue a final rule.  The number and complexity of the issues involved in a particular rulemaking can vary greatly.

### Rulemaking Procedures – Proposed Rule

3.    Once DOJ drafts a rule, it is submitted to the Office of Management and Budget ("OMB") to fulfill the requirements of Executive Order 12866 and internal DOJ directives. OMB designates rules as "not significant," "significant," or "economically significant." These designations substantially affect both the analytical requirements for the proposed rule and the review and clearance procedures that must be completed.

4.    The Regulatory Flexibility Act requires agencies to publish, together with a proposed rule, an analysis of the potential effect of the intended agency action on "small entities" (including business, nonprofit organizations, and local governments), with a discussion of significant alternatives that accomplish regulatory objectives while minimizing any significant economic impact of the proposed rule on small entities.  5 U.S.C. § 603.  However, if the head of the agency certifies that the rule will not, if promulgated, have a significant economic impact on a substantial number of small entities, then the requirements of Section 603 do not apply.  See 5 U.S.C. § 605(b).

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Declaration of Eric T. Gormsen

5.    The Paperwork Reduction Act (44 U.S.C. § 3501 et seq.) requires submission of such requirements in the rule to OMB for approval.  Specifically, OMB's regulations implementing the Act, at 5 C.F.R. § 1320, require agencies to include in the preamble to the proposed rules a statement that the collections of information contained in the proposal, and identified as such, have been submitted to OMB for review under section 3507(d) of the Act.  5 C.F.R. § 1320.11(a).  These submissions to OMB must be made no later than the day that the proposed rule is to be published in the Federal Register.  5 C.F.R. § 1320.11(b).  The agency must conduct an analysis of the need for the collection of information, a plan for how it will be used, and various other information, including an estimate of the average burden imposed by the collection (i.e., the total time, effort, or financial resources expended by persons to generate, maintain, retain, or disclose or provide information to a Federal agency).  See 5 C.F.R. § 1320.8.

6.    Another consideration for agency rulemakings is Executive Order 13132, which was issued "in order to guarantee the division of governmental responsibilities between the national government and the States that was intended by the Framers of the Constitution, to ensure that the principles of federalism established by the Framers guide the executive departments and agencies in the formulation and implementation of policies, and to further the policies of the Unfunded Mandates Reform Act . . . ."  If Executive Order 13132 applies to a particular rulemaking, it may require the completion of a federalism summary impact statement.

7.    In addition to the foregoing analyses and reviews, the text of the proposed rule and a preamble explaining its basis and purpose must also be drafted.  Once a proposed rule has been approved within DOJ, if deemed significant, it still must undergo review by at least two additional federal agencies before a notice of proposed rulemaking may be published in the Federal Register.  First, as noted above, DOJ must submit a draft rule to OMB for review and approval.  As provided for by E.O. 12866, § 6(b), OMB reviews the draft rule for consistency with applicable law, the President's priorities, the principles of regulation set forth in § 1(b) of

E.O. 12866, and the actions or policies of other agencies.  E.O. 12866, § 6(b)(2)(B)-(C), provides up to 90 days for OMB review of a draft proposed rule (with an extension of up to another 30 days).  OMB may either approve the rule or return it to the agency for further consideration (and re-submission).  See id. at § 6(b)(3).

8.      Executive Order 13272, Proper Consideration of Small Entities in Agency Rulemaking (Aug. 13, 2002), § 3(b) and (c), requires that notification of the draft proposed rule also be provided to the Small Business Administration Office of Advocacy, concurrent with OMB review, if the rule may have a significant economic impact on a substantial number of small entities under the Regulatory Flexibility Act.  Prior to publication in the Federal Register, DOJ must give "every appropriate consideration" to any comments provided by the Office of Advocacy concerning the rule.

9.      Following review and clearance by OMB, and any modifications made to the rule as a result, the rule is reviewed by DOJ.  One of the most important internal DOJ reviews that the proposed rule would undergo before being published is review by the Office of Legal Counsel ("OLC").  OLC reviews all proposed orders of the Attorney General and all regulations requiring the Attorney General's signature.

10.     After these various reviews, the proposed rule must be published in the Federal Register, and an opportunity given for public comment, as required by the Administrative Procedure Act. E.O. 12866, § 6(a)(1), provides that an agency should ordinarily afford the public an opportunity of no less than 60 days after publication to comment on a proposed rule.  The APA requires at least 30 days.  5 U.S.C. § 553(d).  Generally, during this Administration, OMB has insisted that agencies provide a minimum comment period of 60 days, except in extraordinary circumstances.

**Rulemaking Procedures – Comments**

11.     Following the close of the comment period, DOJ must review and evaluate all the public comments received on the proposed rule, and determine what additions, deletions or other

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Declaration of Eric T. Gormsen

- 4 -

modifications, if any, should be made to the proposed rule based on those comments, and as well on any other relevant information that has become available to the agency since the proposed rule was published at the Federal Register.  DOJ also must prepare written responses to all issues raised by commenters.  These responses must be included in the preamble of the final rule.

### Rulemaking Procedures – Final Rule

12.    Following the analysis of the comments, a draft of the final rule and preamble are prepared by DOJ.  The rule also undergoes further review for compliance with the Paperwork Reduction Act.  As required by 5 C.F.R. § 1320.11(f), agencies must explain how any collection of information in the final rule responds to comments from OMB or the public.

13.    Thereafter, the draft of the final rule would have to undergo the same DOJ policy and legal review as the draft of the proposed rule did.  After the draft final rule is approved within DOJ, E.O. 12866 requires that it be submitted to OMB; OMB then reviews the draft final rule for consistency with applicable laws, Presidential priorities, regulatory principles, and the actions or policies of other agencies.  E.O. 12866, § 6(b).  OMB's review of the draft final rule may take up to 90 days, with a possible extension of up to 30 additional days, id. at § 6(b)(2)(B)-(C), and thereafter, it may either approve the final rule or return it to DOJ for further considerations.  See, Id. at § 6(b)(3).

14.    Typically, OMB also provides final approval of information collection requirements under the Paperwork Reduction Act during this time and assigns an OMB control number for the collection.  Agencies generally may not conduct or sponsor information collections or recordkeeping unless the required collection or recordkeeping displays a valid OMB control number.  See 5 C.F.R. 1320.11(l).

15.    Following review and clearance by OMB, the final rule must be reviewed by OLC for Form and Legality before it is signed by the Attorney General.  Only then may the rule be published in the Federal Register as a final rule.  Under the APA, substantive rules may normally

be made effective no less than 30 days after publication.  5 U.S.C. § 553(d).  However, rules designated by OMB as "major" under the Congressional Review Act of 1996 (Pub. L. No. 104-121, 5 U.S.C. § 801 et seq.) may not be made effective until at least 60 days after publication or 60 days after Congress receives notification of the rule as required by the Act, whichever is later.

**Schedule for NMVTIS Rule Requiring Reporting
by Insurance Carriers, and Junk and Salvage Yards**

16.     Because of circumstances yet to unfold, it is not possible to estimate with any precision when the final regulations will be published.  I can discuss, however, the steps that must occur.

17.     The proposed NMVTIS rule requiring reporting by insurance carriers, and junk and salvage yards was submitted to OMB on May 13, 2008.  OMB returned the rule to DOJ on July 24, 2008.  See http://www.reginfo.gov/public/do/eoDetails?rrid=115756.

18.     DOJ is currently taking the final steps that are necessary for the proposed rule to be published in the Federal Register.

19.     Once the proposed NMVTIS rule is published, DOJ plans to provide for a 60-day comment period.  The first step after publication of a proposed rule is to review and analyze the comments.  The length of this process depends, first, on the number of comments received.  Once the comments are received, each must be reviewed to determine which sections of the proposed regulations it addresses.  This is a necessary first step, because it is not possible to respond efficiently or thoroughly to the concerns raised about each section of the regulations without first identifying all the comments that pertain to it.  Typically, the bulk of the most substantive comments are submitted during the last week of the comment period.

20.     After the comments are reviewed, they are analyzed to determine what sort of written response is called for, and whether revisions to the proposed regulations should be made.  The length of this process depends on not only the number, but also the nature of the comments received.  Review of the comments may cause the agency to rethink each detail of the regulations, as well as the fundamental assumptions on which they are based.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Declaration of Eric T. Gormsen

21.    The next step, based on the review of the comments, is actually to draft responses to them, and make any necessary revisions to the proposed regulations. If commentators suggest changes of a primarily technical nature, then this stage requires relatively little time. If the comments raise numerous and significant policy questions, the process to simply resolve such policy questions, and draft a response, will be time-consuming. More time will be required if DOJ decides that significant revisions to the proposed regulations must be written or if new legal issues are raised.

22.    DOJ has a responsibility to the members of the public who submitted comments to give due consideration to what they have to say, and to make such revisions to the proposed regulations that are warranted. In a rulemaking of this kind, that is necessarily a time-consuming task.

23.    DOJ also may be required to conduct a regulatory impact analysis addressing the cost and benefits of implementing the final rule. The extent of this analysis will be affected by the comments received by DOJ.

24.    In addition, another complication with respect to a timeframe for the publication of the NMVTIS proposed rule and the 60-day comment period, is the upcoming change in Administration. Based on when the NMVTIS rule will likely be proposed, DOJ also needs to allow sufficient time for the new administration to review and weigh in on the proposed rule. The Presidential election will be held on November 4, 2008, and the new Administration will take office, via its inauguration, on January 20, 2009. Between the election and the inauguration, many of the key positions at the DOJ – and at OMB – will be unfilled, as political appointees from the current Administration take new positions elsewhere. DOJ needs to provide sufficient time for the new Administration to review and weigh in on the NMVTIS rulemaking. Although providing the new Administration with a chance to weigh in on the proposed rule is not a legal requirement, it reflects sound principles of good government, by creating an environment in

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Declaration of Eric T. Gormsen

1   which there is no suggestion that a regulation has been "rushed through" at the last minute to

2   escape scrutiny.

3   25.    Accordingly, how soon DOJ can publish the final NMVTIS regulation depends on:  (i)

4   the number of comments received; (ii) the drafting of responses to those comments; (iii) the

5   number and complexity of revisions to the proposed regulations that DOJ deems to be warranted

6   in light of those comments; (iv) the time required to meet the agency's responsibilities under

7   E.O. 12866; and (v) the new administration's logical need to be given the chance to weigh in on

8   the proposed rule before it becomes final.

9

10       I declare under penalty of perjury that the foregoing is true and correct.

11

12   Executed on: August 12, 2008

13   Washington D.C.

14

15

16

17                    ERIC T. GORMSEN

18

19

20

21

22

23

24

25

26

27   Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
     Declaration of Eric T. Gormsen

28                              - 8 -

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

_____
                                                    )    No. CV 08-0833 (MHP)
PUBLIC CITIZEN, INC.,                 )
  et al.,                                        )
                                                    )
                       Plaintiffs            )    **PROPOSED ORDER**
                                                    )
            v.                                   )
                                                    )
MICHAEL MUKASEY, ATTORNEY   )
GENERAL OF THE UNITED STATES )
                                                    )
                       Defendant.          )
_____)

Upon consideration of Defendant's Motion for Judgment on the Pleadings, or, in the

Alternative, for Summary Judgment, the Court hereby GRANTS the motion.



DATED:_____        _____


                                                   JUDGE MARILYN HALL PATEL
                                                   UNITED STATES DISTRICT JUDGE

1  This filing was not efiled for the following reason(s):

2  **[X]** Voluminous Document (PDF file size larger than the efiling system allows)

3

4    Dated:  June 16, 2008                       JOSEPH P. RUSSONIELLO

5                                        United States Attorney

6                                        GREGORY G. KATSAS

7                                        Acting Assistant Attorney General

8                                        SANDRA M. SCHRAIBMAN

                                      Assistant Branch Director

9                                  */s/ Diane Kelleher*

                                    DIANE KELLEHER

10                                      Senior Counsel

                                    Department of Justice

11                                      Civil Division, Federal Programs Branch

12                                      <u>Mailing Address:</u>

                                    Post Office Box 883

13                                      Washington, D.C.  20044

14                                      <u>Courier Address:</u>

                                    20 Massachusetts Ave., NW, Room 7318

15                                      Washington, D.C. 20004

16                                      <u>E-mail address:</u>  Diane.Kelleher@usdoj.gov

17                                      *Attorneys for Defendant, Attorney General Michael Mukasey*

18

19

20

21

22

23

24

25

26

27

28  <u>Public Citizen v. Mukasey</u>, No. CV 08-0833 (MHP),
    Manual Filing Notification