DEEPAK GUPTA
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Tel.: (202) 588-1000
Fax: (202) 588-7795
Email: dgupta@citizen.org

ERICA L. CRAVEN
LEVY, RAM & OLSON LLP
639 Front Street, 4th Floor
San Francisco, CA 94111
Tel.: (415) 433-4949
Fax: (415) 433-7311
Email: elc@lrolaw.com

*Attorneys for Plaintiffs Public Citizen, Inc., Consumers for Auto Reliability and Safety, and Consumer Action*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC CITIZEN, INC., CONSUMERS FOR AUTO RELIABILITY AND SAFETY, and CONSUMER ACTION,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MICHAEL MUKASEY, Attorney General of the United States,<br><br>    *Defendant*. | No. CV 08-0833 (MHP)<br><br>**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   September 22, 2008<br>Time:  2:00 p.m.<br>Place:  Courtroom 15, 18th Floor |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 22, 2008, at 2:00 p.m., before the Honorable Marilyn Hall Patel in Courtroom 15 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, plaintiffs Public Citizen, Inc., Consumers for Auto Reliability and Safety, and Consumer Action will move, and hereby move, for summary judgment in this action under Federal Rule of Civil Procedure 56. Under the briefing schedule set by the Court (Doc. 16), any opposition to this motion must be served and filed not later than September 1, 2008.

As described in greater detail in the accompanying memorandum, the plaintiffs seek summary judgment in their favor; a declaration that the Attorney General of the United States has violated the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(1), by failing to take action required by 49 U.S.C. §§ 30502 and 30504; and injunctive relief in the form of a remedial schedule setting concrete deadlines by which the government must complete actions unlawfully withheld and provide regular status reports on its progress. This motion is based the memorandum of points and authorities submitted in support thereof; the proposed order submitted herewith; the papers, pleadings and administrative record on file in this action; and upon such further briefs, evidence, and oral argument as may be presented to the Court in connection with this motion.

**TABLE OF CONTENTS**

INTRODUCTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.     The Anti-Car Theft Act of 1992.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.     The Failure to Implement NMVTIS (1992-96).. . . . . . . . . . . . . . . . . . . . . . 4

      C.     The Anti-Car Theft Improvements Act of 1996.. . . . . . . . . . . . . . . . . . . . . 5

      D.     The Continuing Failure to Implement NMVTIS (1996-2008). . . . . . . . . . 6

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      I.     The Attorney General's Failure to Implement NMVTIS
           Constitutes Agency Action Unlawfully Withheld. . . . . . . . . . . . . . . . . . . . 8

      II.    This Court Should Set Concrete Deadlines By Which the
           Government Must Meet Its Statutory Obligations. . . . . . . . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**INTRODUCTION**

This is an action to compel the Attorney General of the United States to take action that has been mandated by Congress but unlawfully withheld and unreasonably delayed in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(1) and 706(2).

Sixteen years ago, Congress enacted a statute requiring the federal government to implement the National Motor Vehicle Title Information System (NMVTIS), a single database that would provide public access to vehicle-history information gathered from states, insurance companies, and junk and salvage yards. Before purchasing a potentially dangerous used car, a consumer using the database would be able to instantly check the validity of the vehicle's title, verify its mileage, and learn whether it had been stolen or deemed a junk or salvage vehicle. Congress viewed the database as an important solution to the problems of auto theft, auto fraud, and the dangers associated with unsafe or unreliable vehicles, and set a deadline of January 31, 1996 for establishment of the system.

After that initial deadline came and went, Congress again enacted legislation to "expedite implementation of the motor vehicle titling information system," because the government "was required to establish [it] by January 31, 1996," and had "failed to meet its statutory deadline." H.R. REP. NO. 104-618, at 2-3 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1061. Congress reiterated the importance of prompt "implementation of the much-needed national titling information system, which would prevent thieves from obtaining legitimate vehicle ownership documentation and deter other serious consumer fraud related to transfer of motor vehicle ownership." *Id*. The Report concluded that the "costs imposed on society" by theft and fraud "remain unacceptably high, due in part to the failure to implement [NMVTIS]." *Id*. The new legislation required the Attorney General to establish the database "not later than December 31, 1997." 49 U.S.C. § 30502(a).

It has now been more than a decade since the second statutory deadline and the government still has not discharged its statutory obligations to establish NMVTIS.

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

1

The facts are not in dispute; the government concedes that it has not carried out any of the three statutorily-required actions that the plaintiffs seek to compel in this action—(1) providing instant and reliable consumer access to a national vehicle-history database, (2) issuing regulations to require insurance carriers and junk yards to report vehicle information to that database, and (3) setting a start date for the reporting of that information. Because there are no genuine issues of material fact, this Court should grant summary judgment for the plaintiffs and order the government to adhere to a remedial schedule with concrete deadlines by which it must complete each of these actions.

## STATEMENT OF THE ISSUES

**I.   Action Unlawfully Withheld:** The Attorney General concedes that he has failed to: (1) establish an information system that provides prospective purchasers of automobiles with instant and reliable access to vehicle-history information, as required by 49 U.S.C. §§ 30502(a) and (e); (2) establish regulations concerning the reporting of vehicle-history information by insurance carriers and junk and salvage yards, as required by 49 U.S.C. §§ 30504(a) and (c); or (3) establish a commencement date for the reporting of information by insurance carriers and junk and salvage yards, as required by 49 U.S.C. § 30504(a) and (b).

Do these failures constitute agency action unlawfully withheld or unreasonably delayed in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2)?

**II.   Remedial Schedule with Concrete Deadlines:** To remedy the Attorney General's statutory violations, should this Court set a remedial schedule with concrete deadlines by which the Attorney General must complete specific tasks, and retain jurisdiction to enforce its orders?

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

2

## STATEMENT OF FACTS

*"Every day that information goes uncollected 'is a day in which fraudulent resellers and fraudulent re-conditioners and re-builders of vehicles can perpetuate fraud.'"* [1]

\* \* \*

*"There is an absolute need for the system.
The federal government must take control."* [2]

### A.   The Anti-Car Theft Act of 1992

In 1992, Congress sought to combat the growing problems of auto theft and auto fraud by requiring the federal government to establish the National Motor Vehicle Title Information System (NMVTIS), a database that would provide public access to critical information about the reliability and safety of used automobiles. The Anti-Car Theft Act of 1992, P.L. 102-519, §§ 202-04, 106 Stat. 3390-93, required the Secretary of Transportation to establish the NMVTIS "not later than January 31, 1996." The Act provides that the database shall permit consumers to instantly and reliably establish not only the validity of a vehicle's title, but also its mileage and theft or damage history, which would indicate whether a vehicle had been branded as a junk or salvage vehicle. 49 U.S.C. § 30502(d). Among other things, the database would prevent and deter the practice of "title-washing," whereby damaged or stolen cars are from one state are re-titled in other states.

The data is to be provided by states, junk yards, salvage yards, and insurance carriers. Among other things, the 1992 Act requires junk yards and salvage yards to file monthly reports with NMVTIS with an inventory of automobiles obtained and disclosure

---

[1]   Jeff Brady, *Holes in Monitoring System Let Lemons Get Resold,* National Public Radio, March 5, 2007, (quoting David Regan, National Automobile Dealers Association) (AR 1497). Citations to the Administrative Record in this case (Doc. #22) are designated by "AR," followed by the page number.

[2]   Presentation on National Motor Vehicle Title Information System by James H. Burch III, Deputy Director, Bureau of Justice Assistance, U.S. Department of Justice,, Sept. 19 and 20, 2006 (AR 0076).

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

3

as to their condition. *Id.* §§ 30502(d), 30504(a). Similarly, the Act requires insurance carriers to file monthly reports with an inventory of vehicles they have obtained. *Id.* § 30504(b). With respect to both junk yards and insurance carriers, the Act requires that the federal government "shall establish by regulation procedures and practices to facilitate reporting in the least burdensome and costly fashion," *id.* § 30504(c), and establish a start date for the reporting "that is not sooner than the 3d month before the establishment or designation of [NMVTIS] under section 30502 of this title[.]" *Id.* § 30504(c). The government has not yet issued the required regulations or established the required start date.

The Act provides that the database may be operated by a third party operator, which is permitted to collect user fees to cover the cost of operating the system, thereby making NMVTIS "self-sufficient and not dependent on amounts from the United States Government." *Id.* § 30502(b), (c). After the statute was enacted, the government designated the American Association of Motor Vehicle Administrators (AAMVA) as the system operator.

**B.     The Failure to Implement NMVTIS (1992-96)**

After the 1992 Act was passed, the Department of Transportation delegated responsibility for implementing the database to the National Highway Traffic Safety Administration (NHTSA), which established a task force representing the industries that would be affected by the 1992 legislation, including junk yards and insurance companies. In February 1994, the task force recommended additional legislation to promote nationally uniform methods of titling vehicles,[3] and in May 1994, the Executive Branch sent proposed legislation to Congress that would extend the deadline for implementation of NMVTIS from January 1996 to October 1997.[4] According to the government, the delay was required because AAMVA was conducting a pilot study of NMVTIS and NHTSA wanted to evaluate

---

[3]    AR 0429; *see also* AR 1456.
[4]    AR 1457.

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

4

the study results. In December 1994, however, NHTSA denied AAMVA's request for funding of the pilot program on the grounds that such a study would be premature.[5] In response, Congress provided $890,000 for the pilot study as part of the Department of Transportation's appropriation for fiscal year 1996.[6] On November 29, 1995, then-U.S. Representative Charles Schumer of New York, a supporter of the original legislation, asked the Government Accounting Office (GAO) to look into the anticipated delays in implementing NMVTIS. The GAO's report, issued in April 1996, identified several concerns about the implementation of NMVTIS, but could not identify any reason why the government had not yet issued regulations concerning reporting of information by insurance carriers or junk and salvage yards, set a start date for reporting of that information, or made that information accessible to consumers.[7]

### C. The Anti-Car Theft Improvements Act of 1996

When the statutory deadline of January 31, 1996 came and went without implementation of NMVTIS, Congress reacted promptly to this delay by passing legislation to "expedite implementation of the motor vehicle titling information system." H.R. REP. NO. 104-618 (1996), at 2-3, 1996 U.S.C.C.A.N. 1060, 1061-61. Known as the Anti-Car Theft Improvements Act of 1996, Pub. L. 104-152, § 2-3, 110 Stat. 1384, the legislation made two amendments to the 1992 legislation relevant here: (1) It transferred responsibility for NMVTIS from the Secretary of Transportation to the Attorney General, and (2) it extended the deadline for implementation of the system from January 31, 1996 to December 31, 1997. The House Report accompanying the legislation observed that the government "was required to establish [NMVTIS] by January 31, 1996," and had "failed to meet its statutory

---

[5] *Id.*

[6] *Department of Transportation and Related Agencies Appropriations Act of 1996*, P.L. 104-50; and Conference Report, H.R. REP. NO. 104-286 (1995); *see also* AR 1457.

[7] GAO, ANTI-CAR THEFT ACT: IMPLEMENTATION STATUS OF CERTAIN PROVISIONS OF THE 1992 ACT (1996) (AR 1450-79).

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

deadline." *Id.* The Report also reiterated the importance of prompt "implementation of the much-needed national titling information system, which would prevent thieves from obtaining legitimate vehicle ownership documentation and deter other serious consumer fraud related to transfer of motor vehicle ownership." *Id.* at 3, 1996 U.S.C.C.A.N. at 1062. The Report concluded that the "costs imposed on society" by such auto theft and fraud "remain unacceptably high, due in part to the failure to implement [NMVTIS]." *Id.*

**D.     The Continuing Failure to Implement NMVTIS (1996-2008)**

Despite this unusually forceful action by Congress, the government's foot-dragging continued. In 1998 or 1999, Missouri-based CARFax, a for-profit corporation that sells vehicle-history data and thus has "a commercial interest in stopping the program," met with then-Senator John Ashcroft of Missouri.[8] On July 23, 1998, John Ashcroft wrote to the GAO to express concern about the slow pace of NMVTIS's implementation and, possibly at the behest of private industry opponents of NMVTIS, to request that the GAO determine the need for an analysis of the system's costs and benefits.[9] In response, the GAO issued a report in August 1999, concluding that a cost-benefit analysis of the system by DOJ was warranted.[10] The DOJ cost-benefit analysis, conducted by the Logistics Management Institute, was completed in June 2001, at which time Ashcroft had become Attorney General.[11] The analysis concluded that NMVTIS was a huge bargain: With an initial annual investment in the range of $10 million, the fully implemented system could "achieve benefits in the range of $4 billion to $11.3 billion annually," including significant benefits

---

[8]     Brady, *Holes in Monitoring System*, *supra*, at AR 1497 (noting that "NMTIS would be a publicly funded competitor to CARFax").

[9]     AR 2918-AR2919 ("The NMVTIS, authorized as part of the Anti Cart Theft Act of 1992, was intended to prevent car theft, motor vehicle title washing, and odometer fraud. However, even now, six years after Congress authorized the NMVTIS, the system is still is not operational . . . ").

[10]    GAO, ANTI-CAR THEFT ACT: ISSUES CONCERNING ADDITIONAL FEDERAL FUNDING OF VEHICLE TITLE SYSTEM (1999) (AR 0706-AR 728); see also David Goldstein, *GAO urges further review of national car title system*, KANSAS CITY STAR, Sept. 20, 1999.

[11]    Logistics Management Institute, NATIONAL MOTOR VEHICLE TITLE INFORMATION SYSTEM COST-BENEFIT ANALYSIS (2001) (AR 0584-AR 0651).

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

to consumers of automobiles.[12] The cost-benefit analysis process, however, greatly delayed the implementation of NMVTIS.[13]

In the meantime, AAMVA had conducted a pilot test of its NMVTIS system, finding that the pilot "fulfills the requirements of the Anti Car Theft Act in a way that is technically feasible, and that it also reduces fraud and deters titling of stolen vehicles."[14] AAMVA concluded that although funding was a barrier to full participation by the states, the system was ready to receive and process reports from insurance carriers and junk and salvage yards, as required by Congress. The report concluded that the one thing standing in the way of reporting by insurance carriers and junk and salvage yards was the Justice Department's continued failure to issue the reporting regulations required by the statute.

More than a decade after the latest statutory deadline, and nearly sixteen years after Congress first required the establishment of the NMVTIS, the federal government has yet to carry out its obligations to (1) provide instant and reliable access to vehicle-history information to consumers; (2) issue regulations to facilitate reporting by insurance carriers and junk and salvage yards; (2) or set a start date for the reporting of such information.

---

[12] *Id.* at AR 0649.
[13] Brady, *Holes in Monitoring System*, supra, at AR 1497 (quoting Linda Lewis-Picket of AAMVA: "We had very strong momentum going at the time the Department of Justice commissioned the cost-benefit analysis," she says, "It certainly slowed down the process, there's no doubt about that.").
[14] AAMVA, NATIONAL MOTOR VEHICLE TITLE INFORMATION SYSTEM PILOT EVALUATION REPORT (2000), at AR 1876.

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

7

**ARGUMENT**

In our system of government, Congress makes the laws and the Executive must "take care" that they are "faithfully executed." U.S. Const. art. II § 3. "Federal courts have come to recognize," however, "that an agency's failure to implement or enforce a statutory scheme with reasonable dispatch can subvert the will of Congress as readily as can improper implementation." *In re American Fed'n of Gov't Employees, AFL-CIO*, 790 F.2d 116, 117 (D.C. Cir. 1986) (internal citations and quotation marks omitted). "When an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect," then "judicial review is in order." *Id.*

This is such a case. It has been sixteen years since Congress first required the establishment of a critical auto-safety information system, and over a decade since Congress passed legislation to expedite the system's implementation, and the government still has not discharged its statutory duty, leaving American consumers at a greater risk of fraud, theft, and injury from unsafe automobiles. To ensure that Congress's will is carried out in cases like this one, the Administrative Procedure Act (APA) provides that courts "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see generally Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187-1191 (10th Cir. 1999) (extensively explaining differences between the two categories of agency inaction).

Whether inaction is "unlawfully withheld" or "unreasonably delayed" under the APA turns on whether Congress has specified a timeline: "[W]hen an entity governed by the APA fails to comply with a statutorily imposed deadline, it has unlawfully withheld agency action and courts, upon proper application, *must* compel the agency to act." *Id.* at 1190 (emphasis added); *see also Ctr. for Biological Diversity v. Brennan*, No. C-06-7062 SBA, 2007 WL 2408901, at *21 (N.D. Cal. Aug. 21, 2007). By contrast, if Congress has not supplied a timeline, courts must consider a variety of factors—such as the length and consequences of delay in light of the overall statute—to determine whether the delay has been unreasonable.

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

8

*See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002); *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). As explained below, the inquiry here is of the former, more straightforward variety: "In this case, Congress has specifically provided a deadline for performance, so no balancing of factors is required or permitted." *Badgley*, 309 F.3d at 1177 n.11.

I.   **The Attorney General's Failure to Establish the NMVTIS Constitutes Agency Action Unlawfully Withheld.**

At issue in this lawsuit are three actions specifically required by the Anti-Car Theft Act of 1992 and the Anti Car-Theft Improvements Act of 1996 that the Attorney General has failed to carry out: (1) the establishment of consumer access to NMVTIS, 49 U.S.C. § 30502(a), (2) the establishment of procedures for information reporting by junk and salvage yards and insurance carriers to NMVTIS, *id.* § 30504(c), and (3) the establishment of a commencement date for reporting by those entities, *id.* § 30504(a). The Attorney General has violated a clear statutory deadline to carry out these duties "not later than December 31, 1997," *id.* § 30502(a), and that ongoing violation constitutes agency action unlawfully withheld under the APA.

The 1996 Act was unambiguous in requiring the Attorney General to implement NMVTIS, including consumer access, by a firm deadline the following year–*i.e.* "not later than December 31, 1997." *Id.* §§ 30502(a) and (e)(C). With respect to reporting by private entities (insurance companies and junk and salvage yards), Congress contemplated that the Attorney General would establish the start date for reporting to precede or coincide with the establishment of the system.[15] And to facilitate the information reporting by private entities, the statute required the Attorney General to issue regulations establishing

---

[15]   49 U.S.C. 30504(a) ("Beginning at a time established by the Attorney General that is *not sooner than the 3d month before* the establishment or designation of the National Motor Vehicle Information System under section 30502 of this title, an individual or entity engaged in the business of operating a junk yard or salvage yard shall file a monthly report with the operator of the System.").

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

9

procedures and practices for reporting, an action that logically, as the government has acknowledged, would need to occur before the reporting itself.[16] By contrast, although Congress required the states to report to the system, it recognized that the federal government could not compel the states to action, and thus required the Attorney General to report to Congress, "[n]ot later than October 1, 1998," on the progress of compliance by the states. 49 U.S.C. § 30503(d).

If there is any doubt about whether Congress intended to announce a firm timetable in the 1996 legislation, it is dispelled by the legislative history. Indeed, the express purpose of the 1996 legislation was to "expedite implementation of the motor vehicle titling information system" because the government "was required to establish [NMVTIS] by January 31, 1996" and had "failed to meet its statutory deadline." H.R. REP. NO. 104-618 (1996), at 2-3, *reprinted in* 1996 U.S.C.C.A.N. at 1061. At that point in 1996, the government had been given four years to complete its task and had failed. More than a decade after it was given a second chance, the government has once again "failed to meet its statutory deadline." *Id.*[17]   That failure constitutes agency action unlawfully withheld. *See Forest Guardians*, 174 F.3d at 1190 ("[W]hen an entity governed by the APA fails to comply with a statutorily imposed deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act."); *Badgley*, 309 F.3d at 1177 n.11.[18]

---

[16]   49 U.S.C. 30504(c) ("The Attorney General shall establish by regulation procedures and practices to facilitate reporting in the least burdensome and costly fashion.").

[17]   At the time, the Justice Department itself acknowledged the importance of rapidly implementing NMVTIS: "In our view, an effective motor vehicle titling information system would deter auto theft by reducing the opportunity for car thieves to buy the 'junk,' 'salvage,' 'rebuilt' or other branded titles to wrecked automobiles, switch the VIN plates from the wrecks to similar make/model stolen automobiles, and then obtain apparently clean or 'washed' titles to the stolen vehicles in other jurisdictions. The system also would deter consumer fraud by preventing unscrupulous auto-rebuilders from obtaining clean or 'washed' titles to rebuilt wrecks." *Id.* at 13-14, 1996 U.S.C.C.A.N. at 1072 (Statement of Andrew Fois, Assistant Attorney General, presenting "the Department of Justice's views" on the legislation).

[18]   Indeed, the government's failure to act has been so extreme that it would violate the APA even if there were no statutory deadline and traditional "unreasonable delay" analysis were instead applicable. *See In re United Mine Workers of America Int'l Union*, 190 F.3d 545, 554 (D.C. Cir. 1999) ("Indeed, even (continued...)

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

## II.  The Court Should Set Concrete Deadlines By Which the Government Must Complete Its Statutory Duties.

As this Court recently explained in another case involving action unreasonably delayed by the Attorney General, courts frequently order "detailed remedies, including the imposition of concrete deadlines, in response to unlawful agency action or failures to act." *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1085 (N.D. Cal. 2005); *accord Ctr. for Biological Diversity*, 2007 WL 2408901, at *25-26 (setting deadlines for agency action and "[r]etaining jurisdiction over this action to ensure compliance with the Court's decree").[19] That is what this Court should do here, and it should do so in the context of this summary-judgment motion. An additional round of briefing concerning a remedial plan would only compound the delay.

With respect to the amount of time to be allowed, plaintiffs seek: (1) as to the regulations required by 49 U.S.C. § 30504(c), an order requiring the government to issue a Notice of Proposed Rulemaking (NPRM) within 30 days (if an NPRM has not already been issued by the time the court decides this motion), and, in any event, a final rule within 60 days of the issuance of the NPRM; (2) as to the establishment of the start date required

---

[18] (...continued)
if we were to read the statute not as specifying an express 'timetable' for decision, but as merely providing 'an indication of the speed with which Congress expects the agency to proceed,' it would still be clear that the agency has transgressed congressional expectations," because "[t]he eight-year delay here is simply not in the same ballpark" as the time period contemplated by the statute); *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1085 (N.D. Cal. 2005) (applying traditional six-factor test for unreasonable delay). *See, e.g., In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (characterizing six-year delay in rulemaking as an "extraordinarily long time"); *Oil, Chemical & Atomic Workers Int'l Union v. Zegeer*, 768 F.2d 1480, 1487 (D.C. Cir. 1985) ("reasonable time may encompass months, occasionally a year or two, but not several years or a decade"); *Public Citizen v. FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984) (four-year delay in issuing proposed rule was "unreasonably dilatory"); *Public Citizen v. Auchter*, 702 F.2d 1150 (D.C. Cir. 1983) (three-year delay in rulemaking constituted unreasonable delay); *Nader v. FCC*, 520 F.2d 182, 206 (D.C. Cir. 1975) ("[N]ine years should be enough time for any agency to decide almost any issue.").

[19] *Public Citizen Health Research Group v. Auchter*, 702 F.2d 1150, 1157 (D.C. Cir. 1983) (per curiam) (ordering OSHA to issue notice of proposed rulemaking within 30 days of delay of only three years); *Env'l Defense Fund v. EPA*, 852 F.2d 1316 (D.C. Cir. 1988) (ordering agency to issue proposed rule within two and one-half months and final rule three months later); *Env'l Defense Fund v. Thomas*, 627 F. Supp. 566 (D.D.C. 1986) (ordering agency to promulgate regulations within six months, which was one year from date regulations were proposed and 16 months after congressional deadline).

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

11

by 49 U.S.C. § 30504(a), an order requiring the government to establish a start date within 30 days of the issuance of a final rule; and (3) as to the consumer access required by 49 U.S.C. §§ 30502(a) and (e), an order requiring the government to begin providing "instant and reliable" public access to all information in the system within 60 days of the court's order.

In both statutory-deadline and unreasonable-delay cases, the government invariably argues that it should simply be trusted to carry out its responsibilities on its own, without fixed deadlines. At a certain point, however, promises of future action are insufficient and, as one court has put it, "enough is enough." *Public Citizen v. Brock*, 823 F.3d 626, 627 (D.C. Cir. 1987) ("We understand, because we have seen it happen time and time again, that action Congress has ordered for the protection of the public health all too easily becomes hostage to bureaucratic recalcitrance, factional infighting, and special interest politics. At some point, we must lean forward from the bench to let an agency know, in no uncertain terms, that enough is enough."). At various points over the past decade, the Department of Justice has repeatedly issued identical statements in its regulatory agenda stating that it is in the process of drafting regulations to implement NMVTIS, but the promised regulations have never materialized.[20] Only in response to this lawsuit, on the very eve of the Case Management Conference before this Court, did the Department forward draft proposed regulations for review to the Office of Management Budget. To the extent that the Department issues a Notice of Proposed Rulemaking in the next few months (and there is no reason it should not be able to do so), that is evidence that the threat of judicial action results in action, not that the government should be left to its own devices.

---

[20] *See, e.g.,* 65 Fed. Reg. 22973 (Apr. 24, 2000) (stating that the Department of Justice "will issue . . . regulation to implement the National Motor Vehicle Title Information System"); 67 Fed. Reg. 33251-02 (May 13, 2002) (same); 67 Fed. Reg. 74691-03 (Dec. 9, 2002) (same); 69 Fed. Reg. 37772-01 (June 28, 2004) (same); 69 Fed. Reg. 73438-02 (Dec. 13, 2004) (same); 70 Fed Reg. 27151-01 (May 16, 2005) (same); 71 Fed. Reg. 22882-01 (Apr. 24, 2006) (same); 71 Fed. Reg. 73527-01 (Dec. 11, 2006) (same); 72 Fed. Reg. 22811-01 (Apr. 30, 2007) (same).

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

1       Moreover, in attempting to excuse its delay in implementing NMVTIS, the Justice
2 Department has spoken out of both sides of its mouth. In its statements to this Court, the
3 government has assigned the blame to the unwillingness of states to participate in the
4 system. *See* Joint Case Management Statement (Doc. 13) at 4. But in other forums, the
5 Justice Department has more candidly acknowledged that is the federal government's
6 failure to issue regulations concerning reporting by private entities has inhibited state
7 participation too. *See* Bureau of Justice Assistance Presentation to Law Enforcement
8 Working Group on NMVTIS, September 19-20, 2006 (AR 0036) ("Regulations requiring
9 states and salvage/junk yard operators to participate have never been issued and states
10 claim absen[t] the requirement, NMVTIS participation must compete with other
11 priorities.").[21]

12       As the D.C. Circuit explained in the leading case on point: "Requiring the courts to
13 rely on mere exhortation to move with expedition toward compliance within a 'reasonable
14 time' would undercut their ability to spur reticent defendants to dender the performance
15 to which the plaintiff[s] and the public are entitled." *NRDC v. Train*, 510 F.2d 692, 705
16 (D.C. Cir. 1975). Accordingly, courts have "[t]he authority to set enforceable deadlines both
17 of an ultimate and an intermediate nature." To the extent that this lawsuit has already
18 spurred the agency to action (and particularly if the agency is able to issue a Notice of
19 Proposed Rulemaking while this motion is pending), that is all the more reason to hold the
20 agency to an accelerated remedial schedule that takes into account the work that has
21 already been done. *See, e.g.,* 797 F. Supp. 194, 198 (E.D.N.Y. 1992) ("EPA is sufficiently far
22 along in the process of devising regulations to comply with the schedule plaintiff
23 proposes"); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) ("The

---

[21]   *Factors Contributing to NMVTIS Implementation Failure*, Briefing for the National Governors' Association, July 2007 (AR 0251) ("NMVTIS is missing salvage and junk yard data which is critical for states and others to know the disposition of vehicles where those business are located."); see also Letter from James H. Burch III, Deputy Director, Bureau of Justice Assistance to Robert M. Byrant, National Insurance Crime Bureau (AR 0005) ("[T]his data (insurance total loss and recycler inventories) is important to the successful implementation of the Act and would be tremendously helpful to law enforcement, States, and prospective purchasers.").

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

13

agency is now in the concluding phase of the rulemaking; it predicts final issuance of the rule in five months from now. . . [W]e have great concern that if we do not insist on a deadline now, some new impediment will be pleaded five months hence. OSHA's asserted justifications for the delay become less persuasive the longer the delay continues. . . . There is a point when the court must 'let the agency know, in no uncertain terms, that enough is enough'") (quoting *Brock*, 823 F.3d at 627).

Moreover, the APA provides that the court "shall" compel agency action that has been unlawfully withheld, 5 U.S.C. § 706(1), and courts have interpreted this to mean that the Court cannot look the other way when the government has failed to meet a statutory deadline. *See Forest Guardians*, 174 F.3d at 1187 ("'Shall' means 'shall'"). In fashioning relief in such cases, courts are to issue injunctions "necessary to effectuate the congressional purpose behind the statute." *Badgley*, 309 F.3d at 1177. In the case of the Anti-Car Theft Improvements Act of 1996, we know precisely what the congressional purpose behind the statute was: to "expedite implementation of the motor vehicle titling information system," because the government had "failed to meet its statutory deadline." H.R. Rep. 104-618, at 2-3 (1996), *reprinted in* 1996 U.S.C.C.A.N. at 1061. And we know that Congress wanted the implementation to occur rapidly, and in no event later than 1997. Under these circumstances, "the clear objectives and language of Congress . . . [have] removed the traditional discretion of courts in balancing the equities before awarding injunctive relief." *Badgley*, 309 F.3d at 1177 (discussing Endangered Species Act and holding that "[t]he Service's failure to complete the [action] within the mandated time frame compelled the court to grant injunctive relief. The court had no discretion to consider the Service's stated priorities."); *Forest Guardians*, 174 F.3d at 1192 ("[T]he Secretary's inadequate resource argument must fail with respect to the appropriate remedy. Section 706 requires us to compel the unlawfully withheld agency action."). Thus, the government cannot seek additional time based on traditional equitable defenses, such as competing

*Public Citizen v. Mukasey,* No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

14

1  priorities or resources, or even based on promises that it is finally taking voluntary action
2  in response to this lawsuit after a decade of delay.

3  Instead, the relevant standard is that of "impossibility"; an agency "may avoid
4  implementing a statute *only* by showing that attainment of the statutory objectives is
5  *impossible.*" *Sierra Club v. EPA*, 719 F.2d 436, 463 (D.C. Cir. 1983). The government
6  "bears a 'heavy burden of proving impossibility as a defense to non-compliance' with the
7  statutory deadline," and courts must carefully scrutinize an agency's claims of impossibility
8  or infeasibility." *Communities for a Better Environment v. EPA*, 2008 WL 1994898, at *2-
9  *3 (N.D. Cal. May 5, 2008) (quoting *Maine Ass'n of Handicapped v. Dole*, 623 F. Supp.
10  920, 926 (D. Me. 1985)); *see also Sierra Club v. Gorsuch*, 551 F. Supp. 785, 787 (N.D. Cal.
11  1982). That burden "is especially heavy where, as here, the [government] has failed to
12  demonstrate any diligence whatsoever in discharging its statutory duty . . . and has in fact
13  ignored that duty for several years." *Communities for a Better Environment*, 2008 WL
14  1994898, at *3 (quoting *Thomas*, 658 F. Supp. at 172). "Where, as here, Congress has
15  established a clear time frame for regulatory action, deferring to the agency is
16  inappropriate." *Sierra Club v. Thomas*, 658 F.Supp. 165, 171 n.6 (N.D.Cal. 1987)
17  (Schwarzer, J.).

18  Agencies typically argue that they cannot comply with an accelerated schedule to
19  remedy delay because of "the legal and factual complexity of the rule," or "the number and
20  variety of public comments" to be taken into account, or "the amount of internal review
21  required." *Center for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 1902703,
22  at *3 (N.D. Cal. April 28, 2008) (Wilken, J.). But in the face of a history of delay, and
23  particularly in the face of a long unheeded statutory deadline, those generalized excuses will
24  not suffice. *Id*. ("Other than the general complexity of finalizing the rule, the Defendants
25  offer no specific facts that would justify the existing delay, much less further delay.").

26  Finally, there is no basis for the government to seek additional time within the

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Plaintiffs' Motion for Summary Judgment

15

1  proposed remedial schedule for review of the Attorney General's activities by the Office of
2  Management and Budget (OMB) or any other entity in the Executive Branch. OMB lacks
3  any authority to review regulations beyond the date of a statutory deadline. *See In re United*
4  *Mine Workers of America Int'l Union*, 190 F.3d 545, 551 (D.C. Cir. 1999). ("Needless to
5  say, the President is without authority to set aside congressional legislation by executive
6  order, and the 1993 executive order does not purport to do so.") (rejecting agency's
7  argument that executive order "requiring agencies to submit their rules for up to ninety
8  days of pre-publication review by the Office Management Budget" excused compliance with
9  deadlines); *accord Envt'l Defense Fund v. Thomas*, 627 F. Supp. 566, 571 (D.D.C. 1986)
10 ("[I]f a deadline has already expired, OMB has no authority to delay regulations subject to
11 the deadline in order order review under the Executive Order."); *NRDC v. Ruckelshaus*,
12 1984 WL 6092, at *4 (D.D.C. 1987) ("OMB review is not only unnecessary, but in
13 contravention to applicable law."); *NRDC v. EPA*, 797 F. Supp. 194, 198 (E.D.N.Y. 1992)
14 ("OMB's review of regulations does not apply where it would conflict with statutory
15 deadlines."); *see also* Executive Order 12866 § 10 (Sept. 30, 1993) ("Nothing in this
16 Executive order shall affect any otherwise available judicial review of agency action."). Thus,
17 this Court should not include any additional time in its remedial schedule for OMB review.
18 Rather, it should order the Attorney General to undertake the mandatory actions according
19 to the schedule proposed by the plaintiffs, which leaves sufficient time for the comment
20 period required by the APA.

28 *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

**CONCLUSION**

For the foregoing reasons, the Attorney General should be declared to have violated the Anti-Car Theft Act of 1992, the Anti-Car Theft Improvements Act of 1996, and the Administrative Procedure Act in withholding the actions necessary to establish the National Motor Vehicle Title Information System within the time frame mandated by Congress. The Court should order the Attorney General to complete its responsbilities according to the remedial schedule proposed by the plaintiffs, as set forth in the accompanying proposed order.

Dated: August 12, 2008                    Respectfully submitted,

_____
DEEPAK GUPTA
Public Citizen Litigation Group
1600 20th Street, NW
(202) 588-1000
(202) 588-7795 (fax)
Email: dgupta@citizen.org

ERICA L. CRAVEN
Levy, Ram & Olson LLP
639 Front Street
4th Floor
San Francisco, CA 94111
(415) 433-4949
(415) 433-7311 (fax)
Email: elc@lrolaw.com