DEEPAK GUPTA
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Tel.: (202) 588-1000
Fax: (202) 588-7795
Email: dgupta@citizen.org

ERICA L. CRAVEN
LEVY, RAM & OLSON LLP
639 Front Street, 4th Floor
San Francisco, CA 94111
Tel.: (415) 433-4949
Fax: (415) 433-7311
Email: elc@lrolaw.com

*Attorneys for Plaintiffs Public Citizen,
Inc., Consumers for Auto Reliability and
Safety, and Consumer Action*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

_____
                                          )
PUBLIC CITIZEN, INC.,                     )    No. CV 08-0833 (MHP)
CONSUMERS FOR AUTO                        )
RELIABILITY AND SAFETY,                   )
and CONSUMER ACTION,                      )    **PLAINTIFFS' MOTION FOR**
                                          )    **SUMMARY JUDGMENT**
            *Plaintiffs*,                 )
                                          )    Date:      September 22, 2008
      v.                                  )    Time:      2:00 p.m.
                                          )    Place:     Courtroom 15, 18th Floor
MICHAEL MUKASEY,                          )
Attorney General of the United States,    )
                                          )
            *Defendant*.                  )
_____   )

1

## NOTICE OF MOTION AND MOTION

2   PLEASE TAKE NOTICE that on September 22, 2008, at 2:00 p.m., before the

3   Honorable Marilyn Hall Patel in Courtroom 15 of the United States District Court for the

4   Northern District of California, located at 450 Golden Gate Avenue, San Francisco,

5   California, plaintiffs Public Citizen, Inc., Consumers for Auto Reliability and Safety, and

6   Consumer Action will move, and hereby move, for summary judgment in this action under

7   Federal Rule of Civil Procedure 56.  Under the briefing schedule set by the Court, any

8   opposition to this motion is due on September 1, 2008. This motion is based on the

9   memorandum of points and authorities submitted in support thereof; the proposed order

10  submitted herewith; the papers, pleadings and administrative record on file in this action;

11  and upon such further briefs, evidence, and oral argument as may be presented to the Court

12  in connection with this motion.

13  As described in greater detail in the accompanying memorandum, the plaintiffs seek

14  the following relief in this motion: summary judgment in their favor; a declaration that the

15  Attorney General of the United States has violated the Administrative Procedure Act, 5

16  U.S.C. §§ 706(1) and 706(2), by failing to take action required by 49 U.S.C. §§ 30502 and

17  30504; and injunctive relief in the form of a remedial schedule setting concrete deadlines

18  by which the government must complete the actions unlawfully withheld and provide

19  regular status reports on its progress to the plaintiffs and the Court.

20

21

22

23

24

25

26

27

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Plaintiffs' Motion for Summary Judgment

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

     A.    The Anti-Car Theft Act of 1992. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

     B.    The Initial Failure to Implement NMVTIS (1992-96). . . . . . . . . . . . . . . . . .  4

     C.    The Anti-Car Theft Improvements Act of 1996.. . . . . . . . . . . . . . . . . . . . . . . .  5

     D.    The Continuing Failure to Implement NMVTIS (1996-2008). . . . . . . . . . .  6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

     I.     The Attorney General's Failure to Implement NMVTIS
          Constitutes Agency Action Unlawfully Withheld. .. . . . . . . . . . . . . . . . . . . .  9

     II.    This Court Should Set Concrete Deadlines By Which the
          Government Must Meet Its Statutory Obligations. .. . . . . . . . . . . . . . . . .  11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Biodiversity Legal Found. v. Badgley,*
 309 F.3d 1166, 1177 n.11 (9th Cir. 2002)......................................................9, 10, 15

*Center for Biological Diversity v. Brennan,*
 2007 WL 2408901 (N.D. Cal. Aug. 21, 2007)....................................................8, 12

*Center for Biological Diversity v. Kempthorne,*
 2008 WL 1902703 (N.D. Cal. April 28, 2008)........................................................16

*Communities for a Better Environment v. EPA,*
 2008 WL 1994898 (N.D. Cal. May 5, 2008).....................................................15, 16

*Environmental Defense Fund v. EPA,*
 852 F.2d 1316 (D.C. Cir. 1988)................................................................................12

*Environmental Defense Fund v. Thomas,*
 627 F. Supp. 566 (D.D.C. 1986)...................................................................12, 16, 17

*Forest Guardians v. Babbitt,*
 174 F.3d 1178 (10th Cir. 1999) ..........................................................................8, 10, 15

*In re American Federation of Government Employees, AFL-CIO,*
 790 F.2d 116 (D.C. Cir. 1986)....................................................................................8

*In re International Chemical Workers Union,*
 958 F.2d 1144 (D.C. Cir. 1992)..........................................................................11, 14

*In re United Mine Workers of America International Union,*
 190 F.3d 545 (D.C. Cir. 1999)............................................................................11, 16

*Nader v. FCC,*
 520 F.2d 182 (D.C. Cir. 1975)..................................................................................11

*NRDC v. EPA,*
 797 F. Supp. 194 (E.D.N.Y. 1992)......................................................................14, 17

*NRDC v. Ruckelshaus,*
 1984 WL 6092 (D.D.C.  1987) ................................................................................17

*NRDC v. Train,*
 510 F.2d 692 (D.C. Cir. 1975).................................................................................14

*Oil, Chemical & Atomic Workers International Union v. Zegeer,*
 768 F.2d 1480 (D.C. Cir. 1985).................................................................................11

*Santillan v. Gonzales,*
 388 F. Supp. 2d 1065 (N.D. Cal. 2005)..............................................................11, 12

*Sierra Club v. EPA,*
719 F.2d 436 (D.C. Cir. 1983) ...............................................................15

*Sierra Club v. Gorsuch,*
551 F. Supp. 785 (N.D. Cal. 1982)..........................................................16

*Sierra Club v. Thomas,*
658 F.Supp. 165 (N.D. Cal. 1987)...........................................................16

*Telecommunications Research & Action Center v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) .....................................................................9

*Public Citizen v. Auchter,*
702 F.2d 1150 (D.C. Cir. 1983)...............................................................12

*Public Citizen v. Brock,*
823 F.3d 626, 627 (D.C. Cir. 1987)....................................................12, 14

*Public Citizen v. FDA,*
740 F.2d 21 (D.C. Cir. 1984) ...................................................................11

## Constitutional and Legislative Materials

U.S. Const. art. II § 3...................................................................................8

5 U.S.C. § 706(1)...........................................................................i, 1, 2, 8, 14

5 U.S.C. § 706(2)..................................................................................i, 1, 2

49 U.S.C. § 30502..................................................................................*passim*

49 U.S.C. § 30503......................................................................................10

49 U.S.C. § 30504..................................................................................*passim*

H.R. Rep. No. 104-618 (1996)......................................................1, 5, 6, 10, 15

## Executive Materials

Executive Order 12,866 (Sept. 30, 1993).........................................................17

# INTRODUCTION

This is an action to compel the Attorney General of the United States to take action that has been mandated by Congress but unlawfully withheld and unreasonably delayed in violation of the Administrative Procedure Act (APA), 5 U.S.C. §§ 706(1) and 706(2).

Sixteen years ago, Congress enacted a statute requiring the federal government to implement the National Motor Vehicle Title Information System (NMVTIS), a single database that would provide public access to vehicle-history information gathered from states, insurance companies, and junk and salvage yards.  Before purchasing a potentially dangerous used car, a consumer using the database would be able to instantly check the validity of the vehicle's title, verify its mileage, and learn whether it had been stolen or deemed a junk or salvage vehicle.  Congress viewed the database as an important solution to the problems of auto theft, auto fraud, and the dangers associated with unsafe or unreliable vehicles, and set a deadline of January 31, 1996 for establishment of the system.

After that initial deadline came and went, Congress took the unusual step of again enacting legislation to "expedite implementation of the motor vehicle titling information system," because the government "was required to establish [it] by January 31, 1996," and had "failed to meet its statutory deadline." H.R. REP. NO. 104-618, at 2-3 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1061. Congress reiterated the importance of prompt "implementation of the much-needed national titling information system, which would prevent thieves from obtaining legitimate vehicle ownership documentation and deter other serious consumer fraud related to transfer of motor vehicle ownership," and concluded that the "costs imposed on society" by theft and fraud "remain unacceptably high, due in part to the failure to implement [NMVTIS]." *Id.*  The new legislation required the Attorney General to establish the database "not later than December 31, 1997." 49 U.S.C. § 30502(a).

It has now been more than a decade since the second deadline and the government still has not discharged its statutory obligations to establish NMVTIS.  The facts are not in

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

1    dispute.  The government concedes that it has not carried out any of the three statutorily-

2    required actions that the plaintiffs seek to compel—(1) instant and reliable consumer access

3    to a national vehicle-history database, (2) regulations for reporting of vehicle information

4    by insurance carriers and junk and salvage yards, and (3) a start date for the reporting of

5    that information.  Because there are no genuine issues of material fact, this Court should

6    grant summary judgment for the plaintiffs and order the government to adhere to a

7    remedial schedule with concrete deadlines by which it must complete each of these actions.

8

9                          **STATEMENT OF THE ISSUES**

10    _____I.    ***Actions Unlawfully Withheld*:**  The Attorney General concedes that he

11    has failed to: (1) establish an information system that provides prospective purchasers of

12    automobiles with instant and reliable access to vehicle-history information, as required by

13    49 U.S.C. §§ 30502(a) and (e); (2) establish regulations concerning the reporting of vehicle-

14    history information by insurance carriers and junk and salvage yards, as required by 49

15    U.S.C. §§ 30504(c); and (3) establish a commencement date for the reporting of

16    information by insurance carriers and junk and salvage yards, as required by 49 U.S.C. §

17    30504(a) and (b).

18         Do these failures constitute agency action unlawfully withheld or unreasonably

19    delayed in violation of the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and 706(2)?

20

21         **II.    ***Remedy with Concrete Deadlines*:**  To remedy the Attorney General's

22    statutory violations, should this Court set a remedial schedule with concrete deadlines by

23    which the Attorney General must complete specific tasks, and retain jurisdiction to enforce

24    its orders?

25

26

27

28    *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
      Plaintiffs' Motion for Summary Judgment

1

2

3

**STATEMENT OF FACTS**

*"Every day that information goes uncollected 'is a day in which fraudulent resellers and fraudulent re-conditioners and re-builders of vehicles can perpetuate fraud.'"*[1]/

4

\* \* \*

5

6

*"There is an absolute need for the system.*
*The federal government must take control."*[2]/

7

## A.    The Anti-Car Theft Act of 1992

8    In 1992, Congress sought to combat the growing problems of auto theft and auto

9    fraud by requiring the federal government to establish the National Motor Vehicle Title

10    Information System (NMVTIS), a database that would provide public access to critical

11    information about the reliability and safety of used automobiles.  The Anti-Car Theft Act

12    of 1992, P.L. 102-519, §§ 202-04, 106 Stat. 3390-93, required the Secretary of

13    Transportation to establish the NMVTIS "not later than January 31, 1996."  The Act

14    provides that the database shall permit consumers to instantly and reliably establish not

15    only the validity of a vehicle's title, but also its mileage and theft or damage history, which

16    would indicate whether a vehicle had been branded as a junk or salvage vehicle. 49 U.S.C.

17    § 30502(d).  Among other things, the database would prevent and deter the practice of

18    "title-washing," whereby damaged or stolen cars from one state are re-titled in other states

19    and sold to unsuspecting consumers.

20    NMVTIS's data is to be provided by states, junk yards, salvage yards, and insurance

21    carriers. Among other things, the 1992 Act requires junk yards and salvage yards to file

22    monthly reports consisting of an inventory of automobiles obtained and their condition. *Id.*

23

24    ──────────────

[1]/    Jeff Brady, *Holes in Monitoring System Let Lemons Get Resold,* National Public Radio, March 5, 2007, (quoting David Regan, National Automobile Dealers Association) (AR 1497).  Citations to the Administrative Record in this case (Doc. #22) are designated by "AR," followed by the page number.

25

26

[2]/    Presentation on National Motor Vehicle Title Information System by James H. Burch III, Deputy Director, Bureau of Justice Assistance, U.S. Department of Justice, Sept. 19-20, 2006 (AR 0076).

27

28    *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

1    §§ 30502(d), 30504(a).  Similarly, the Act requires insurance carriers to file monthly

2    reports with an inventory of vehicles they have obtained. *Id*. § 30504(b). With respect to

3    both junk yards and insurance carriers, the Act requires that the federal government "shall

4    establish by regulation procedures and practices to facilitate reporting in the least

5    burdensome and costly fashion," *id*. § 30504(c), and establish a start date for the reporting

6    "that is not sooner than the 3d month before the establishment or designation of [NMVTIS]

7    under section 30502 of this title[.]" *Id*. § 30504(c).  The government has not yet issued the

8    required regulations or established the required start date.

9    　　　The Act provides that the database may be operated by a third party operator, which

10   is permitted to collect user fees to cover the cost of operating the system, thereby making

11   NMVTIS "self-sufficient and not dependent on amounts from the United States

12   Government." *Id*. § 30502(b), (c).  After the statute was enacted, the government

13   designated the American Association of Motor Vehicle Administrators (AAMVA) as the

14   system operator.

15   **B.    The Initial Failure to Implement NMVTIS (1992-96)**

16   　　　After the 1992 Act was passed, the Department of Transportation delegated

17   responsibility for implementing the database to the National Highway Traffic Safety

18   Administration (NHTSA), which established a task force representing the industries that

19   would be affected by the 1992 legislation, including junk yards and insurance companies.

20   In February 1994, the task force recommended additional legislation to promote nationally

21   uniform methods of titling vehicles,[3/] and in May 1994, the government sent proposed

22   legislation to Congress that would extend the deadline for implementation of NMVTIS from

23   January 1996 to October 1997.[4/]  According to the government, the delay was required

24   because AAMVA was conducting a pilot study of NMVTIS and NHTSA wanted to evaluate

25

26   [3/]    AR 0429; *see also* AR 1456.

27   [4/]    AR 1457.

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Motion for Summary Judgment

the study results. In December 1994, however, NHTSA denied AAMVA's request for funding of the pilot program on the grounds that such a study would be premature.[5]  In response, Congress provided $890,000 for the pilot study as part of the Department of Transportation's appropriation for fiscal year 1996.[6]  On November 29, 1995, then-U.S. Representative Charles Schumer of New York, a supporter of the original legislation, asked the Government Accounting Office (GAO) to look into the anticipated delays in implementing NMVTIS. The GAO's report, issued in April 1996, identified several concerns about the implementation of NMVTIS, but could not identify any reason why the government had not yet issued regulations concerning reporting of information by insurance carriers or junk and salvage yards, set a start date for reporting of that information, or made that information accessible to consumers.[7]

## C.    The Anti-Car Theft Improvements Act of 1996

When the statutory deadline of January 31, 1996 came and went without implementation of NMVTIS, Congress reacted promptly to this delay by passing legislation to "expedite implementation of the motor vehicle titling information system." H.R. REP. NO. 104-618 (1996), at 2-3, *reprinted in* 1996 U.S.C.C.A.N. 1060, 1061-61. Known as the Anti-Car Theft Improvements Act of 1996, Pub. L. 104-152, § 2-3, 110 Stat. 1384, the legislation made two amendments to the 1992 legislation relevant here: (1) it transferred responsibility for NMVTIS from the Secretary of Transportation to the Attorney General, and (2) it extended the deadline for implementation of the system from January 31, 1996 to December 31, 1997. The House Report accompanying the legislation observed that the

---

[5]      *Id.*

[6]      *Department of Transportation and Related Agencies Appropriations Act of 1996*, P.L. 104-50; and Conference Report, H.R. REP. NO. 104-286 (1995); *see also* AR 1457.

[7]      GAO, ANTI-CAR THEFT ACT: IMPLEMENTATION STATUS OF CERTAIN PROVISIONS OF THE 1992 ACT (1996) (AR 1450-79).

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

government "was required to establish [NMVTIS] by January 31, 1996," and had "failed to meet its statutory deadline." *Id.* The Report also reiterated the importance of prompt "implementation of the much-needed national titling information system, which would prevent thieves from obtaining legitimate vehicle ownership documentation and deter other serious consumer fraud related to transfer of motor vehicle ownership." *Id.* at 3, 1996 U.S.C.C.A.N. at 1062. The Report concluded that the "costs imposed on society" by such auto theft and fraud "remain unacceptably high, due in part to the failure to implement [NMVTIS]." *Id.*

## D.    The Continuing Failure to Implement NMVTIS (1996-2008)

Despite this unusually forceful action by Congress, the government's foot-dragging continued. Missouri-based CARFax, a for-profit corporation that sells vehicle-history data and thus has "a commercial interest in stopping the program," met with then-Senator John Ashcroft of Missouri.[8] On July 23, 1998, Ashcroft wrote to the GAO to express concern about the slow pace of NMVTIS's implementation and, possibly at the behest of private industry opponents of NMVTIS, to request that the GAO determine the need for an analysis of the system's costs and benefits.[9] In response, the GAO issued a report in August 1999, concluding that a cost-benefit analysis of the system by DOJ was warranted.[10] The DOJ cost-benefit analysis, conducted by the Logistics Management Institute, was completed in June 2001, at which time Ashcroft had become Attorney General.[11] The analysis concluded

---

[8]    Brady, *Holes in Monitoring System*, *supra*, at AR 1497 (noting that "NMVTIS would be a publicly funded competitor to CARFax").

[9]    AR 2918-AR2919 ("The NMVTIS, authorized as part of the Anti Cart Theft Act of 1992, was intended to prevent car theft, motor vehicle title washing, and odometer fraud. However, even now, six years after Congress authorized the NMVTIS, the system is still is not operational . . . ").

[10]    GAO, Anti-Car Theft Act: Issues Concerning Additional Federal Funding of Vehicle Title System (1999) (AR 0706-AR 728); see also David Goldstein, *GAO urges further review of national car title system*, Kansas City Star, Sept. 20, 1999.

[11]    Logistics Management Institute, National Motor Vehicle Title Information System Cost-

(continued...)

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

1   that NMVTIS was a huge bargain: With an initial annual investment in the range of $10

2   million, the fully implemented system could "achieve benefits in the range of $4 billion to

3   $11.3 billion annually," including significant benefits to consumers of automobiles.[12] The

4   cost-benefit analysis process, however, greatly delayed the implementation of NMVTIS.[13]

5       In the meantime, AAMVA had conducted a pilot test of its NMVTIS system, finding

6   that the pilot "fulfills the requirements of the Anti Car Theft Act in a way that is technically

7   feasible, and that it also reduces fraud and deters titling of stolen vehicles."[14] AAMVA

8   concluded that although funding was a barrier to full participation by the states, the system

9   was ready to receive and process reports from insurance carriers and junk and salvage

10  yards, as required by Congress. The report concluded that the one thing standing in the way

11  of reporting by insurance carriers and junk and salvage yards was the Justice Department's

12  continued failure to issue the reporting regulations required by the statute.[15]

13      More than a decade after the latest statutory deadline, and nearly sixteen years after

14  Congress first required the establishment of the NMVTIS, the federal government has yet

15  to carry out its obligations to (1) provide instant and reliable access to vehicle-history

16  information to consumers; (2) issue regulations to facilitate reporting by insurance carriers

17  and junk and salvage yards; (2) or set a start date for the reporting of such information.

18

19

20
_____

21  [11]    (...continued)
    BENEFIT ANALYSIS (2001) (AR 0584-AR 0651).

22  [12]    *Id.* at AR 0649.

23  [13]    Brady, *Holes in Monitoring System*, *supra*, at AR 1497 (quoting Linda Lewis-Picket of AAMVA:

24  "We had very strong momentum going at the time the Department of Justice commissioned the cost-
    benefit analysis," she says, "It certainly slowed down the process, there's no doubt about that.").

25  [14]    AAMVA, NATIONAL MOTOR VEHICLE TITLE INFORMATION SYSTEM PILOT EVALUATION REPORT

26  (2000), at AR 1876.

27  [15]    *Id.*

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Plaintiffs' Motion for Summary Judgment

**ARGUMENT**

In our system of government, Congress makes the laws and the Executive must "take care" that they are "faithfully executed." U.S. Const. art. II § 3. "Federal courts have come to recognize," however, "that an agency's failure to implement or enforce a statutory scheme with reasonable dispatch can subvert the will of Congress as readily as can improper implementation." *In re American Fed'n of Gov't Employees, AFL-CIO*, 790 F.2d 116, 117 (D.C. Cir. 1986) (internal citations and quotation marks omitted). "When an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect," then "judicial review is in order." *Id.*

This is such a case. It has been sixteen years since Congress first required the establishment of a critical auto-safety information system, and over a decade since Congress passed legislation to expedite the system's implementation, and the government still has not discharged its statutory duty, leaving American consumers at a greater risk of fraud, theft, and injury from unsafe automobiles. To ensure that Congress's will is carried out in cases like this one, the Administrative Procedure Act (APA) provides that courts "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see generally Forest Guardians v. Babbitt*, 174 F.3d 1178, 1187-1191 (10th Cir. 1999) (extensively explaining differences between the two categories of agency inaction).

Whether inaction is "unlawfully withheld" as opposed to "unreasonably delayed" under the APA turns on whether Congress has specified a timeline: "[W]hen an entity governed by the APA fails to comply with a statutorily imposed deadline, it has unlawfully withheld agency action and courts, upon proper application, *must* compel the agency to act." *Id.* at 1190 (emphasis added); *see also Ctr. for Biological Diversity v. Brennan*, 2007 WL 2408901, at *21 (N.D. Cal. Aug. 21, 2007) (Armstrong, J.). By contrast, if Congress has not supplied a timeline, courts must consider a variety of factors—such as the length and consequence of delay in light of the overall statute—to determine whether the delay has

been unreasonable. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002); *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting out so-called *TRAC* factors). As explained below, the inquiry here is of the former, more straightforward variety: "In this case, Congress has specifically provided a deadline for performance, so no balancing of factors is required or permitted." *Badgley*, 309 F.3d at 1177 n.11.

## I. The Attorney General's Failure to Implement NMVTIS Constitutes Agency Action Unlawfully Withheld.

At issue in this lawsuit are three actions specifically required by the Anti-Car Theft Act of 1992 and the Anti Car-Theft Improvements Act of 1996 that the Attorney General has failed to carry out: (1) the establishment of consumer access to NMVTIS, 49 U.S.C. § 30502(a), (2) the establishment of procedures for information reporting by junk and salvage yards and insurance carriers to NMVTIS, *id.* § 30504(c), and (3) the establishment of a commencement date for reporting by those entities, *id.* §§ 30504(a) and (b). The Attorney General has violated a clear statutory deadline to carry out these duties "not later than December 31, 1997," *id.* § 30502(a), and that ongoing violation constitutes agency action unlawfully withheld under the APA.

The 1996 Act was unambiguous in requiring the Attorney General to implement NMVTIS, including consumer access, by a firm deadline the following year—*i.e.* "not later than December 31, 1997." *Id.* §§ 30502(a) and (e)(C). With respect to reporting by private entities (insurance companies and junk and salvage yards), Congress clearly contemplated that the Attorney General would establish the start date for reporting to precede or coincide with the overall "establishment" of the system.[16] And to facilitate the information reporting by private entities, the statute required the Attorney General to issue regulations

---

[16]    49 U.S.C. 30504(a) ("Beginning at a time established by the Attorney General that is *not sooner than the 3d month before* the establishment or designation of the National Motor Vehicle Information System under section 30502 of this title, an individual or entity engaged in the business of operating a junk yard or salvage yard shall file a monthly report with the operator of the System.").

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

1    establishing procedures and practices for reporting, an action that logically, as the

2    government has acknowledged, would need to occur before the reporting itself.[17/] By

3    contrast, although Congress required the states to report to the system, it recognized that

4    the federal government could not compel the states to action, and thus required the

5    Attorney General to report to Congress, "[n]ot later than October 1, 1998," on the progress

6    of compliance by the states. 49 U.S.C. § 30503(d).

7          If there is any doubt about whether Congress intended to announce a firm timetable

8    in the 1996 legislation, it is dispelled by the legislative history. Indeed, the express purpose

9    of the 1996 legislation was to "expedite implementation of the motor vehicle titling

10   information system" because the government "was required to establish [NMVTIS] by

11   January 31, 1996" and had "failed to meet its statutory deadline." H.R. REP. No. 104-618

12   (1996), at 2-3, *reprinted in* 1996 U.S.C.C.A.N. at 1061. At that point in 1996, the

13   government had been given four years to complete its task and had failed. More than a

14   decade after it was given a second chance, the government has once again "failed to meet

15   its statutory deadline." *Id.*[18/]   That failure constitutes agency action unlawfully withheld.

16   *See Forest Guardians*, 174 F.3d at 1190 ("[W]hen an entity governed by the APA fails to

17   comply with a statutorily imposed deadline, it has unlawfully withheld agency action and

18   courts, upon proper application, must compel the agency to act."); *Badgley*, 309 F.3d at

19   1177 n.11.

20

21   _____
     [17/]    49 U.S.C. 30504(c) ("The Attorney General shall establish by regulation procedures and practices
22   to facilitate reporting in the least burdensome and costly fashion.").

23   [18/]    At the time, the Justice Department itself acknowledged the importance of rapidly implementing
     NMVTIS: "In our view, an effective motor vehicle titling information system would deter auto theft by
24   reducing the opportunity for car thieves to buy the 'junk,' 'salvage,' 'rebuilt' or other branded titles to
     wrecked automobiles, switch the VIN plates from the wrecks to similar make/model stolen automobiles,
25   and then obtain apparently clean or 'washed' titles to the stolen vehicles in other jurisdictions. The system
     also would deter consumer fraud by preventing unscrupulous auto-rebuilders from obtaining clean or
26   'washed' titles to rebuilt wrecks." *Id.* at 13-14, 1996 U.S.C.C.A.N. at 1072 (Statement of Andrew Fois,
     Assistant Attorney General, presenting "the Department of Justice's views" on the legislation).

27

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Motion for Summary Judgment

1    In any event, the government's decade-long failure to act in this case would violate

2    the APA even if there had been no statutory deadline at all, because its delay has been

3    manifestly unreasonable by any measure. *See In re United Mine Workers of America Int'l*

4    *Union*, 190 F.3d 545, 554 (D.C. Cir. 1999) ("Indeed, even if we were to read the statute not

5    as specifying an express 'timetable' for decision, but as merely providing 'an indication of

6    the speed with which Congress expects the agency to proceed,' it would still be clear that the

7    agency has transgressed congressional expectations," because "[t]he eight-year delay here

8    is simply not in the same ballpark" as the time period contemplated by the statute);

9    *Santillan v. Gonzales*, 388 F. Supp. 2d 1065, 1085 (N.D. Cal. 2005) (Patel, J.) (applying

10   traditional six-factor test for unreasonable delay); *see, e.g., In re Int'l Chem. Workers*

11   *Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (characterizing six-year delay in rulemaking as

12   an "extraordinarily long time"); *Oil, Chemical & Atomic Workers Int'l Union v. Zegeer,* 768

13   F.2d 1480, 1487 (D.C. Cir. 1985) ("reasonable time may encompass months, occasionally

14   a year or two, but not several years or a decade"); *Public Citizen v. FDA*, 740 F.2d 21, 34

15   (D.C. Cir. 1984) (four-year delay in issuing proposed rule was "unreasonably dilatory");

16   *Public Citizen v. Auchter*, 702 F.2d 1150 (D.C. Cir. 1983) (per curiam) (three-year delay in

17   rulemaking constituted unreasonable delay); *Nader v. FCC*, 520 F.2d 182, 206 (D.C. Cir.

18   1975) ("[N]ine years should be enough time for any agency to decide almost any issue.").

19   Needless to say, the delay here is certainly "not in the same ballpark," *United Mine*

20   *Workers*, 190 F.3d at 554, as the additional one-year period in which Congress expected the

21   government to implement NMVTIS on an expedited basis.

22

23   **II.    The Court Should Set Concrete Deadlines By Which the Government**
         **Must Carry Out Its Statutory Obligations.**

24   As this Court recently explained in another case involving action unreasonably

25   delayed by the Attorney General, courts frequently order "detailed remedies, including the

26   imposition of concrete deadlines, in response to unlawful agency action or failures to act."

27

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Motion for Summary Judgment

1    *Santillan v. Gonzales*, 388 F. Supp. 2d at 1085; *accord Brennan*, 2007 WL 2408901, at

2    *25-26 (setting deadlines for agency action and "[r]etaining jurisdiction over this action to

3    ensure compliance with the Court's decree").[19] That is what this Court should do here, and

4    it should do so in the context of this summary-judgment motion.  An additional round of

5    briefing concerning a remedial plan would only compound the delay.

6        With respect to the amount of time to be allowed, plaintiffs seek: (1) as to the

7    regulations required by 49 U.S.C. § 30504(c), an order requiring the government to issue

8    a Notice of Proposed Rulemaking (NPRM) within 30 days (if an NPRM has not already

9    been issued by the time the court decides this motion), and, in any event, a final rule within

10   60 days of the issuance of the NPRM; (2) as to the establishment of the start date for

11   reporting required by 49 U.S.C. §§ 30504(a) and (b), an order requiring the government to

12   establish a start date within 30 days of the issuance of a final rule; and (3) as to the

13   consumer access required by 49 U.S.C. §§ 30502(a) and (e), an order requiring the

14   government to begin providing "instant and reliable" public access to all information in the

15   system within 60 days of the court's order.

16       As it invariably does in both statutory-deadline and unreasonable-delay cases, the

17   government will likely argue that it should simply be trusted to carry out its responsibilities

18   on its own, without fixed deadlines.  At a certain point, however,  promises of future action

19   are insufficient and, as one court has put it, "enough is enough." *Public Citizen v. Brock*,

20   823 F.3d 626, 627 (D.C. Cir. 1987) ("We understand, because we have seen it happen time

21   and time again, that action Congress has ordered for the protection of the public health all

22   too easily becomes hostage to bureaucratic recalcitrance, factional infighting, and special

23   interest politics.  At some point, we must lean forward from the bench to let an agency

24   _____

25   [19]    *Public Citizen v. Auchter*, 702 F.2d at 1157 (ordering OSHA to issue notice of proposed
     rulemaking within 30 days of delay of only three years);  *Env'l Defense Fund v. EPA*, 852 F.2d 1316 (D.C.

26   Cir. 1988) (ordering agency to issue proposed rule within two and one-half months and final rule three
     months later); *Env'l Defense Fund v. Thomas*, 627 F. Supp. 566 (D.D.C. 1986) (ordering agency to

27   promulgate regulations within six months, which was one year from date regulations were proposed and
     16 months after congressional deadline).

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Motion for Summary Judgment

1    know, in no uncertain terms, that enough is enough."). At various points over the past

2    decade, the Department of Justice has repeatedly issued identical statements in its

3    regulatory agenda stating that it is in the process of drafting regulations to implement

4    NMVTIS, but the promised regulations have never materialized.[20] Only in response to this

5    lawsuit, on the very eve of the Case Management Conference before this Court, did the

6    Department forward draft proposed regulations for review to the Office of Management

7    Budget. To the extent that the Department issues a Notice of Proposed Rulemaking in the

8    next few months (and there is no reason it should not be able to do so), that is evidence that

9    the very possibility of judicial oversight can result in action, not proof that the government

10   should be left to its own devices.

11        Moreover, in attempting to excuse its delay in implementing NMVTIS, the Justice

12   Department has spoken out of both sides of its mouth. In its statements to this Court, the

13   government has blamed the slow pace of implementation on the unwillingness of states to

14   participate in the system, and has suggested that the agency has prioritized state

15   participation over the required rulemaking. *See* Joint Case Management Statement (Doc.

16   13) at 4. But in other forums, the Justice Department has more candidly acknowledged that

17   the situation is just the opposite–that it is the federal government's failure to issue the

18   regulations concerning reporting by private entities that has inhibited state participation.

19   *See* Bureau of Justice Assistance Presentation to Law Enforcement Working Group on

20   NMVTIS, September 19-20, 2006 (AR 0036) ("Regulations requiring states and

21   salvage/junk yard operators to participate have never been issued and states claim absen[t]

22

23

24   [20]    *See, e.g.,* 65 Fed. Reg. 22973 (Apr. 24, 2000) (stating that the Department of Justice "will issue . . .
     regulations to implement the National Motor Vehicle Title Information System"); 67 Fed. Reg. 33251-02
25   (May 13, 2002) (same); 67 Fed. Reg. 74691-03 (Dec. 9, 2002) (same); 69 Fed. Reg. 37772-01 (June 28,
     2004) (same); 69 Fed. Reg. 73438-02 (Dec. 13, 2004) (same); 70 Fed Reg. 27151-01 (May 16, 2005)
26   (same); 71 Fed. Reg. 22882-01 (Apr. 24, 2006) (same); 71 Fed. Reg. 73527-01 (Dec. 11, 2006) (same); 72
     Fed. Reg. 22811-01 (Apr. 30, 2007) (same).

27

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Motion for Summary Judgment

1  the requirement, NMVTIS participation must compete with other priorities.").[21] Whatever

2  the real story, the priorities here have been set by Congress, by means of a mandatory

3  deadline, and the agency does not have discretion to deviate from that command.

4     In any event, as the D.C. Circuit explained in the leading case on point: "Requiring

5  the courts to rely on mere exhortation to move with expedition toward compliance within

6  a 'reasonable time' would undercut their ability to spur reticent defendants to tender the

7  performance to which the plaintiff[s] and the public are entitled." *NRDC v. Train*, 510 F.2d

8  692, 705 (D.C. Cir. 1975). Accordingly, courts have "[t]he authority to set enforceable

9  deadlines both of an ultimate and an intermediate nature." *Id.* To the extent that this

10 lawsuit has already spurred the agency to action (and particularly if the agency is able to

11 issue a Notice of Proposed Rulemaking while this motion is pending), that is all the more

12 reason to hold the agency to an accelerated remedial schedule that takes into account the

13 work that has already been done. *See, e.g., NRDC v. EPA*, 797 F. Supp. 194, 198 (E.D.N.Y.

14 1992) ("EPA is sufficiently far along in the process of devising regulations to comply with

15 the schedule plaintiff proposes"); *In re Int'l Chem. Workers Union*, 958 F.2d at 1150 ("The

16 agency is now in the concluding phase of the rulemaking; it predicts final issuance of the

17 rule in five months from now. . . . [W]e have great concern that if we do not insist on a

18 deadline now, some new impediment will be pleaded five months hence. OSHA's asserted

19 justifications for the delay become less persuasive the longer the delay continues. . . . There

20 is a point when the court must 'let the agency know, in no uncertain terms, that enough is

21 enough.'") (quoting *Public Citizen v. Brock*, 823 F.3d at 627).

22    More to the point, the APA provides that the court "shall" compel agency action that

23 has been unlawfully withheld, 5 U.S.C. § 706(1), and this has been interpreted to mean that

24 _____

[21]    *See also Factors Contributing to NMVTIS Implementation Failure*, Briefing for the National
25 Governors' Association, July 2007 (AR 0251) ("NMVTIS is missing salvage and junk yard data which is
critical for states and others to know the disposition of vehicles where those business are located."); see
26 also Letter from James H. Burch III, Deputy Director, Bureau of Justice Assistance to Robert M. Byrant,
National Insurance Crime Bureau (AR 0005) ("[T]his data (insurance total loss and recycler inventories)
27 is important to the successful implementation of the Act and would be tremendously helpful to law
enforcement, States, and prospective purchasers.").

28 *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

1   the federal courts cannot look the other way where, as here, the government has failed to

2   meet a statutory deadline. *See Forest Guardians*, 174 F.3d at 1187 ("'Shall' means 'shall'").

3   In fashioning relief in such cases, courts are to issue injunctions "necessary to effectuate the

4   congressional purpose behind the statute." *Badgley*, 309 F.3d at 1177. In the case of the

5   Anti-Car Theft Improvements Act of 1996, we know precisely what the congressional

6   purpose behind the statute was: to "expedite implementation of the motor vehicle titling

7   information system," because the government had "failed to meet its statutory deadline."

8   H.R. Rep. 104-618, at 2-3 (1996), *reprinted in* 1996 U.S.C.C.A.N. at 1061. And we know that

9   Congress wanted the implementation to occur rapidly, and in no event later than 1997.

10  Under these circumstances, "the clear objectives and language of Congress . . . [have]

11  removed the traditional discretion of courts in balancing the equities before awarding

12  injunctive relief." *Badgley*, 309 F.3d at 1177 (discussing Endangered Species Act and

13  holding that "[t]he Service's failure to complete the [action] within the mandated time

14  frame compelled the court to grant injunctive relief. The court had no discretion to consider

15  the Service's stated priorities."); *Forest Guardians*, 174 F.3d at 1192 ("[T]he Secretary's

16  inadequate resource argument must fail with respect to the appropriate remedy. Section

17  706 requires us to compel the unlawfully withheld agency action."). Thus, the government

18  cannot seek additional time based on traditional equitable defenses, such as competing

19  priorities or resources, or even based on promises that it is finally taking voluntary action

20  in response to this lawsuit after a decade of delay.

21       Instead, the relevant standard is that of "impossibility"; an agency "may avoid

22  implementing a statute *only* by showing that attainment of the statutory objectives is

23  *impossible*." *Sierra Club v. EPA*, 719 F.2d 436, 463 (D.C. Cir. 1983) (emphasis added). The

24  government "bears a 'heavy burden of proving impossibility as a defense to non-compliance'

25  with the statutory deadline," and "courts must carefully scrutinize an agency's claims of

26  impossibility or infeasibility." *Communities for a Better Environment v. EPA*, 2008 WL

27

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Plaintiffs' Motion for Summary Judgment

1994898, at *2-*3 (N.D. Cal. May 5, 2008) (quoting *Maine Ass'n of Handicapped v. Dole*, 623 F. Supp. 920, 926 (D. Me. 1985)); *see also Sierra Club v. Gorsuch*, 551 F. Supp. 785, 787 (N.D. Cal. 1982). That burden "is especially heavy where, as here, the [government] has failed to demonstrate any diligence whatsoever in discharging its statutory duty . . . and has in fact ignored that duty for several years." *Communities for a Better Environment*, 2008 WL 1994898, at *3. "Where, as here, Congress has established a clear time frame for regulatory action, deferring to the agency is inappropriate." *Sierra Club v. Thomas*, 658 F.Supp. 165, 171 n.6 (N.D.Cal. 1987) (Schwarzer, J.).

Agencies typically argue that they cannot comply with an accelerated schedule to remedy delay because of "the legal and factual complexity of the rule," or "the number and variety of public comments" to be taken into account, or "the amount of internal review required." *Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 1902703, at *3 (N.D. Cal. April 28, 2008) (Wilken, J.). But in the face of a history of delay, and particularly in the face of a long unheeded statutory deadline, those generalized excuses will not suffice. *Id.* ("Other than the general complexity of finalizing the rule, the Defendants offer no specific facts that would justify the existing delay, much less further delay.") (ordering publication of listing at issue within 17 days of the court's order).

Finally, there is no basis for the government to seek additional time within the proposed remedial schedule for review of the Attorney General's activities by the Office of Management and Budget (OMB) or any other entity in the Executive Branch. OMB lacks any authority to review regulations beyond the date of a statutory deadline. *See United Mine Workers*, 190 F.3d at 551. ("Needless to say, the President is without authority to set aside congressional legislation by executive order, and the 1993 executive order does not purport to do so.") (rejecting agency's argument that executive order "requiring agencies to submit their rules for up to ninety days of pre-publication review by the Office Management Budget" excused compliance with deadlines); *accord Envt'l Defense Fund v.*

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Motion for Summary Judgment

*Thomas*, 627 F. Supp. at 571 ("[I]f a deadline has already expired, OMB has no authority to delay regulations subject to the deadline in order order review under the Executive Order."); *NRDC v. Ruckelshaus*, 1984 WL 6092, at *4 (D.D.C. 1987) ("OMB review is not only unnecessary, but in contravention to applicable law."); *NRDC v. EPA*, 797 F. Supp. at 198 ("OMB's review of regulations does not apply where it would conflict with statutory deadlines."); *see also* Executive Order 12,866 § 10 (Sept. 30, 1993) ("Nothing in this Executive order shall affect any otherwise available judicial review of agency action."). Thus, this Court should not include any additional time in its remedial schedule for OMB review in addition to the time already contemplated for notice and comment under the APA. Rather, it should order the Attorney General to undertake the mandatory actions according to the schedule proposed by the plaintiffs.

## CONCLUSION

For the foregoing reasons, the Attorney General should be declared to have violated the Anti-Car Theft Act of 1992, the Anti-Car Theft Improvements Act of 1996, and the Administrative Procedure Act in withholding the actions necessary to establish the National Motor Vehicle Title Information System within the time frame mandated by Congress. The Court should order the Attorney General to complete its responsibilities according to the remedial schedule proposed by the plaintiffs, as set forth in the accompanying proposed order.

Dated: August 12, 2008

Respectfully submitted,

/s/ Deepak Gupta

_____

DEEPAK GUPTA
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-1000
(202) 588-7795 (fax)
Email: dgupta@citizen.org

ERICA L. CRAVEN
Levy, Ram & Olson LLP
639 Front Street, 4th Floor
San Francisco, CA 94111
(415) 433-4949
(415) 433-7311 (fax)
Email: elc@lrolaw.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

_____
                                                          )    No. CV 08-0833 (MHP)
PUBLIC CITIZEN, INC.,                          )
CONSUMERS FOR AUTO                       )
RELIABILITY AND SAFETY,                   )    **[PROPOSED] ORDER GRANTING**
and CONSUMER ACTION,                     )    **PLAINTIFFS' MOTION FOR**
                                                          )    **SUMMARY JUDGMENT**
                        *Plaintiffs*,                )
                                                          )
            v.                                           )
                                                          )
MICHAEL MUKASEY,                           )
Attorney General of the United States,   )
                                                          )
                        *Defendant*.              )
_____)

Upon consideration of the plaintiffs' motion for summary judgment, the defendants'
opposition thereto, and all papers and pleadings filed in this action, the Court hereby
GRANTS the motion and ORDERS as follows:

1.      The court declares that Attorney General of the United States has violated,
and is continuing to violate, the Administrative Procedure Act, 5 U.S.C. §§ 706(1) and
706(2), and the Anti-Car Theft Act and Anti-Car Theft Improvements Act, 49 U.S.C. §§
30502 and 30504, by failing to (1) establish by regulation procedures and practices to
facilitate reporting to the National Motor Vehicle Title Information System (NMVTIS) of
vehicle information by insurance carriers and junk and salvage yards, (2) establish a
commencement date for the monthly reporting of such information to NMVTIS, and (3)
provide instant and reliable access to NMVTIS to prospective automobile purchasers. Such
inaction constitutes agency action unlawfully withheld under the APA.

2.      Defendant shall publish in the Federal Register a final rule establishing
procedures and practices to facilitate the reporting of information to NMVTIS by insurance
carriers and individuals or entities engaged in the business of operating junk yards or
salvage yards, as required by 49 U.S.C. § 30504(c), no later than 60 days from the date of

1   the notice of proposed rulemaking with respect to that rule, and in no event later than 90

2   days from the date of the Court's order.  The effective date of the rule shall be no later than

3   30 days after the date of publication. If the Defendant has not already done so, he shall

4   publish in the Federal Register an NPRM, in accordance with the requirements of the

5   Administrative Procedure Act, with regard to this rule no later than 30 days from the date

6   of the Court's approval of this agreement.

7        3.    Defendant shall establish a commencement date for the monthly reporting

8   of information to NMVTIS by insurance carriers and individuals or entities engaged in the

9   business of operating junk yards or salvage yards, as required by 49 U.S.C. §§ 30504(a) and

10  (b).  Such date shall be no later than 30 days of the publication of the final rule discussed

11  in paragraph 2 above.

12       4.    Defendant shall ensure that the NMVTIS is capable of making available to any

13  prospective purchaser of an automobile, upon request, information in the system about any

14  automobile, as required by 49 U.S.C. §§ 30502(d) and (e)(C), not later than 60 days from

15  the date of this order.  As required by the statute, NMVTIS system shall permit a consumer

16  to establish instantly and reliably: (a) the validity and status of a document purporting to

17  be a certificate of title; (b) whether an automobile bearing a known vehicle identification

18  number is titled in a particular State; (c) whether an automobile known to be titled in a

19  particular State is or has been a junk automobile or a salvage automobile; (d) for an

20  automobile known to be title in a particular State, the odometer mileage disclosure required

21  under 49 U.S.C. § 32705 for that automobile on the date the certificate of title for that

22  automobile was issued and any later mileage information, if noted by the State; and (e)

23  whether an automobile bearing a known vehicle identification number has been reported

24  under 49 U.S.C. § 30504 as a junk automobile or a salvage automobile by a junk or salvage

25  yard or insurance carrier.

26       5.    Defendant shall file with the Court, and serve on the plaintiffs, detailed

27

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Proposed Order Granting Plaintiffs' Motion for Summary Judgment

1   reports concerning the progress that he has made in taking the actions described in

2   paragraphs (2)-(4) above. These progress reports shall be issued beginning 30 days from

3   the date of the Court's order and every 60 days thereafter, and must, at a minimum, include

4   the specific steps that defendant intends to take to carry out his obligations and the dates

5   by which defendant expects to complete those actions. In addition, these reports shall set

6   forth any matter known to defendant that will likely significantly affect defendant's

7   compliance with the deadlines set forth in paragraphs (2)-(4), above.

8       6.      The Court shall retain jurisdiction of this action to enforce the terms of this

9   order.

10  IT IS SO ORDERED.

11

12  DATED: _____        _____

13                                         The Honorable Marilyn Hall Patel,
                                           United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Proposed Order Granting Plaintiffs' Motion for Summary Judgment