1  GREGORY G. KATSAS
   Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
   United States Attorney
3  SANDRA M. SCHRAIBMAN
   Assistant Branch Director
4  DIANE KELLEHER
   Senior Counsel
5  PETER D. LEARY
   Trial Attorney
6  United States Department of Justice
   Civil Division, Federal Programs Branch
7  20 Massachusetts Ave., N.W., Room 7318
   P.O. Box 883
8  Washington, DC 20044
   (202) 514-4775
9  (202) 616-8470 (fax)

10 *Attorneys for Michael Mukasey, Attorney*
   *General of the United States*

11

12              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
13               SAN FRANCISCO DIVISION

14 _____
                                      )  No. CV 08-0833 (MHP)
15 PUBLIC CITIZEN, INC.,              )
     et al.,                          )  **OPPOSITION TO PLAINTIFFS'**
16                                    )  **MOTION FOR SUMMARY JUDGMENT**
                    Plaintiffs        )  **AND REPLY IN FURTHER SUPPORT**
17                                    )  **OF DEFENDANT'S NOTICE OF**
          v.                          )  **MOTION AND MOTION FOR**
18                                    )  **JUDGMENT ON THE PLEADINGS, OR**
   MICHAEL MUKASEY, ATTORNEY          )  **IN THE ALTERNATIVE, FOR**
19 GENERAL OF THE UNITED STATES       )  **SUMMARY JUDGMENT**
                                      )
20                  Defendant.        )  Hearing date: September 22, 2008
   _____)  Courtroom 15
21                                       Time: 2:00 p.m.

22

23

24

25

26 Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
   Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27 Support of Defendant's Notice of Motion and Motion for Judgment on the
   Pleadings, or in the Alternative, for Summary Judgment
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.     THE COURT SHOULD EXERCISE ITS DISCRETION
           TO DENY INJUNCTIVE RELIEF EVEN IF IT FINDS A
           STATUTORY VIOLATION HAS OCCURRED . . . . . . . . . . . . . . . . . . . . . . . . 2

          A.     Any Schedule Set by the Court Should Be Guided
                 By What Is Necessary to Effectuate the
                 Congressional Purpose Behind the Anti-car
                 Theft Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          B.     Plaintiffs' Infeasible Rulemaking Schedule
                 Would Ill-Serve Both the Public Interest and
                 Congressional Will . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

          C.     Plaintiffs' Infeasible Consumer Access
                 Schedule Would Ill-Serve Both the Public and
                 Congressional Will . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          D.     The Cases Cited by Plaintiffs Where Courts Found
                 A Statutory Violation and Rejected an Agency's
                 Proposed Remedial Schedule Are Distinguishable . . . . . . . . . . . . . . . . . 13

    II.    THE IMPENDING ISSUANCE OF THE NMVTIS NPRM WILL
           MOOT PLAINTIFFS' CLAIMS FOR UNLAWFUL WITHHOLDING
           AND/OR UNREASONABLE DELAY OF AGENCY ACTION . . . . . . . . . . . 15

    III.   PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS,
           AND THEIR CLAIMS ARE BARRED BY THE STATUTE OF
           LIMITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

-i-

# TABLE OF AUTHORITIES

## CASES                                                                                          PAGES

Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931
    (D.C. Cir. 1986) ................................................................................. 16

Action on Smoking and Health v. Dep't of Labor, 28 F.3d 162
    (D.C. Cir. 1994) ................................................................................. 16

American Medical Ass'n v. Reno, 57 F.3d 1129 (D.C. Cir. 1995) .................. 4

American Rivers v. National Marine Fisheries Service, 126 F.3d 1118
    (9th Cir. 1997) ................................................................................. 17

American Tunaboat Ass'n v. Brown, 67 F.3d 1404 (9th Cir. 1995) ........................ 17

Biodiversity Legal Found. v. Badgley, 309 F.3d 1166 (9th Cir. 2002) ................ passim

Bird v. Lewis & Clark College, 303 F.3d 1015 (9th Cir. 2002),
    cert. denied, 538 U.S. 923, 123 S.Ct. 1583, 155 L.Ed.2d 314 ...................... 17

Center for Biological Diversity v. Brennan, 2007 WL 2408901
    (N.D. Cal. Aug. 21, 2007) ................................................................. 5

Ctr. for Biological Diversity v. Abraham, 218 F. Supp. 2d 1143 (N.D. Cal. 2002) .......... 2

Ctr. for Biological Diversity v. Kempthorne,
    2008 WL 1902703 (N.D. Cal. April 28, 2008) ................................. 5

Envtl. Def. Fund v. Thomas, 627 F. Supp. 566 (D.D.C. 1986) ............................ 15

Forest Guardians v. Babbitt, 174 F.3d 1178 (10th Cir. 1999) ............................ passim

Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377 (9th Cir. 1978) ...................... 17

Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782
    (9th Cir. 2005) ................................................................................. 2

Northwest Environmental Defense Center v. Gordon, 849 F.2d 1241
    (9th Cir. 1988) ................................................................................. 18

PUC v. FERC, 100 F.3d 1451 (9th Cir. 1996) ............................................. 17

Public Citizen v. Brock, 823 F.2d 626 (D.C. Cir. 1987) ................................. 14

Santillan v. Gonzales, 388 F. Supp. 2d 1065 (N.D. Cal. 2005) ............................ passim

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

-ii-

Sierra Club v. Thomas, 658 F. Supp. 165 (N.D. Cal. 1987) ......................................... 3

Sierra Club v. Thomas, 828 F.2d 783 (D.C. Cir. 1987) .............................................. 8

Students for a Conservative America v. Greenwood, 378 F.3d 1129,
    amended by 391 F.3d 978 (9th Cir. 2004) ...................................................... 18

United Steelworkers of America, AFL-CIO-CLC v. Rubber Mfrs. Ass'n,
    783 F.2d 1117 (D.C. Cir. 1986) ................................................................... passim

United Transp. Union Local 418 v. Boardman, 2008 WL 2600176
    (N.D. Iowa June 24, 2008) .......................................................................... 17

## STATUTES

5 U.S.C. § 706 ....................................................................................................... passim

28 U.S.C. § 2401(a) ..................................................................................................... 18

49 U.S.C. § 30502 ....................................................................................................... 11

49 U.S.C. § 30504 .................................................................................................. passim

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

-iii-

**INTRODUCTION**

There are numerous points in this case about which Defendant and Plaintiffs are in agreement.  The parties agree that a comprehensive national vehicle-history database, the National Motor Vehicle Motor Title Information System ("NMVTIS"), with instant and reliable access for potential purchasers of automobiles, will provide considerable benefits for the public.  The parties further agree that Congress set a December 31, 1997 deadline for the establishment of NMVTIS; that NMVTIS does not yet contain all of the necessary information; and that prospective purchasers of automobiles have not yet been able to access its contents, despite the passage of a statutory deadline.

The parties disagree, however, on whether Plaintiffs have standing to sue Defendant and whether their claims are time-barred.  Assuming Plaintiffs have jurisdiction to sue, the parties also disagree with regard to what remedy, if any, this Court should impose to ensure that NMVTIS is fully realized.  Quite simply, no court intervention is necessary.  As set forth in Defendant's initial motion, and in the accompanying second declarations from Eric T. Gormsen and James H. Burch, II, the Department of Justice ("DOJ") has undertaken substantial actions to effectuate NMVTIS and is presently pursuing the proper course of action to ensure its full implementation.  Access to NMVTIS for potential purchasers of automobiles will be available in the next few months, and all that remains before the NMVTIS rule can be proposed are final reviews by the two highest officials within DOJ – the Deputy Attorney General and the Attorney General.  In contrast, Plaintiffs' proposed timetable would actually subvert the Congressional purpose behind the Anti-Car Theft Act.  This Court should not enter Plaintiffs' proposed order but instead enter judgment for Defendant, permitting DOJ to complete the work it has already begun, on the rule requiring insurance carriers and junk and salvage yards to report data to NMVTIS and access for potential purchasers of automobiles to the contents of NMVTIS.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

1

**ARGUMENT**

2

**I.    THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY
INJUNCTIVE RELIEF EVEN IF IT FINDS A STATUTORY VIOLATION
HAS OCCURRED**

3

4        Under 5 U.S.C. § 706(1), a court "shall . . . compel agency action unlawfully withheld or

5    unreasonably delayed."  However a circuit split has developed about whether "shall means shall."

6    The seminal case in the Ninth Circuit regarding whether a district court, having found an agency

7    action unlawfully withheld, has discretion to refrain from granting injunctive relief is

8    Biodiversity Legal Foundation v. Badgley, 309 F.3d 1166 (9th Cir. 2002).  In Badgley, the Ninth

9    Circuit held a district court does have such discretion, concluding "a statutory violation does not

10   always lead to the automatic issuance of an injunction."  Id. at 1177; see also Nat'l Wildlife

11   Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782, 795 (9th Cir. 2005) ("[N]ot every statutory

12   violation leads to the 'automatic' issuance of an injunction . . . .").  In so holding, the Ninth

13   Circuit joined the D.C. Circuit, which had previously concluded that courts maintain discretion

14   not to compel action even where mandatory statutory deadlines are violated, see In re Barr Labs.,

15   Inc., 930 F.2d 72, 74 (D.C. Cir. 1991), and expressly rejected the Tenth Circuit's contrary

16   conclusion in Forest Guardians v. Babbitt, 174 F.3d 1178 (10th Cir. 1999).[1/]  Instead of requiring

17   an automatic injunction, the Ninth Circuit held that "when federal statutes are violated, the test

18   for determining if equitable relief is appropriate is whether an injunction is necessary to

19   effectuate the congressional purpose behind the statute."  Badgley, 309 F.3d at 1177; see, e.g.,

20   Ctr. for Biological Diversity v. Abraham, 218 F. Supp. 2d 1143, 1161 (N.D. Cal. 2002) (finding a

21   statutory violation but denying injunctive relief because "[s]uch relief would detract from, rather

22   than serve, the Act's purposes").  Accordingly, the Court should engage in a three part analysis:

23

24   [1/]      It is important to recognize the Ninth Circuit's rejection of the Tenth Circuit's mandatory
     injunction approach, given the confluence of the two circuits' standards in Plaintiffs' Motion for
25   Summary Judgment.

26   Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
     Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27   Support of Defendant's Notice of Motion and Motion for Judgment on the
     Pleadings, or in the Alternative, for Summary Judgment

28
                                            - 2 -

1

2

3

4

(1) was an agency action unlawfully withheld, (2) if yes, then is equitable relief necessary to effectuate the congressional purpose behind the statute, and (3) if yes again, then exactly *what* relief should be compelled and if a schedule for compliance must be set, what is a feasible one? Each of these are matters for separate and careful consideration.

5

6

**A.      Any Schedule Set By the Court Should Be Guided By What Is Necessary To Effectuate the Congressional Purpose Behind the Anti-Car Theft Act**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

As this Court has previously recognized, "[o]ther courts have ordered detailed remedies, including the imposition of concrete deadlines, in response to unlawful agency action or failures to act." Santillan v. Gonzales, 388 F. Supp. 2d 1065, 1085 (N.D. Cal. 2005) (Patel, J.). However, no interested party in this case – not Plaintiffs, not Defendant and not the public at large – would be well served by concrete deadlines that will produce an unworkable schedule, infeasible deadlines, or substandard regulations. The standard in the Ninth Circuit, which directs that injunctions are only appropriate when they are "necessary" to effectuate Congressional intent, reflects this reality. Faced with a finding of unlawful withholding, another judge in this district both acknowledged the "paramount importance" of the public interest and stated that "[s]ince the public interest would be ill-served by unworkable . . . regulations which would not survive judicial review, it would be inappropriate to set an infeasible schedule in order to punish a delinquent agency." Sierra Club v. Thomas, 658 F. Supp. 165, 171 (N.D. Cal. 1987). Other circuit courts have adopted a similar commonsense approach. See, e.g., United Steelworkers of America, AFL-CIO-CLC v. Rubber Mfrs. Ass'n, 783 F.2d 1117, 1120 (D.C. Cir. 1986) ("[J]udicial imposition of an overly hasty timetable at this stage would ill serve the public interest. The rule ultimately promulgated by the agency, not to mention the agency's rationale for the rule, must be constructed carefully and thoroughly . . . .").

24

25

26

27

28

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 3 -

1
2
3
4
5
6
7

Accordingly, even if this Court it has jurisdiction, and it finds that agency action has been unlawfully withheld and/or unreasonably delayed and court intervention is required, any schedule it sets for the issuance of regulations or implementation of consumer access must be reasonable. The Court should decline to punish DOJ for any past failings and instead focus on crafting a solution that will effectuate the Congressional intent underlying the Anti-Car Theft Act – creating a comprehensive national vehicle history database with instant and reliable consumer access.

8
9

**B.    Plaintiffs' Infeasible Rulemaking Schedule Would Ill-Serve Both the Public Interest and Congressional Will**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

In their motion, Plaintiffs seek an order from this Court requiring a final rule within 60 days of the publication of a notice of proposed rulemaking ("NPRM") and for the final rule to be effective within 30 days. Both deadlines will create significant problems for the successful completion of the NMVTIS rulemaking and the implementation of a useful, comprehensive system. First, the 60-day post-NPRM period for promulgating a final rule does not provide the agency with enough time to complete the process required by the Administrative Procedure Act ("APA") in a substantive and meaningful way. The period between the NPRM and the final rule needs to provide enough time for comments to be submitted, considered, and addressed; DOJ "has a responsibility to the members of the public who submitted comments to give due consideration to what they have to say, and to make such revisions to the proposed regulations that are warranted." See August 12, 2008 Declaration of Eric T. Gormsen, at ¶ 22 (hereinafter "First Gormsen Decl."). See also Am. Med. Ass'n v. Reno, 57 F.3d 1129, 1134 (D.C. Cir. 1995) ("The notice-and-comment requirement helps to ensure that the rule is subjected to thoroughgoing analysis and critique by interested parties and the agency."). That process is not a short one, particularly in this case, which will be the first time regulations implementing the NMVTIS reporting requirement for insurance carriers and junk and salvage yards will be

26
27

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

28

proposed.  As such, this rulemaking is very different from the ones at issue in several of the cases

cited by Plaintiffs, which involve the Endangered Species Act ("ESA").

The ESA was signed into law in 1973.  Given its thirty five-year history, and the more

than 1350 listings of U.S. species that have occurred during that period, the views of many of

those interested in the issue of endangered species have been extensively developed over time.

See http://ecos.fws.gov/tess_public/pub/Boxscore.do (last visited August 28, 2008).  As a result,

when the federal government acts with respect to an endangered species, it is not writing on a

blank slate.  Plaintiffs cite numerous cases involving ESA challenges.  See, e.g., Badgley, 309

F.3d at 1170 (failure to list the Spalding's Catchfly as an endangered species); Forest Guardians,

174 F.3d at 1181 (failure to designate silvery minnow's "critical habitat"); Ctr. for Biological

Diversity v. Kempthorne, 2008 WL 1902703, at *1 (N.D. Cal. April 28, 2008) (failure to publish

final listing of polar bear as an endangered species.[2/]  While these cases may involve the same

legal provisions of the APA, the regulatory issues are quite different from those in the present

case.  For example, while the court in Kempthorne was not persuaded by the "general

complexity" associated with listing the polar bear as an endangered species, the situation here is

very different.  As explained in Defendant's opening brief and further herein, the NMVTIS

rulemaking will be the first time any regulations associated with the reporting requirements of 49

U.S.C. § 30504 have been promulgated, and there are a significant number of interested

stakeholders, including states, insurance carriers, junk and salvage yards, consumers, advocacy

groups, and private sector companies, that have established vehicle information databases as

well.  All of these groups will want to be heard on the issue of the proposed rule (both in terms of

---

[2/]    Another similar case cited by Plaintiffs, Center for Biological Diversity v. Brennan, 2007
WL 2408901, at *2 (N.D. Cal. Aug. 21, 2007), involved a challenge to an agency's failure to
prepare a "Research Plan and Scientific Assessment," as required by the Global Change Research
Act of 1990.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 5 -

submitting comments and having their comments addressed), and a schedule should include sufficient time for this interactive process to occur. There is more than just "general complexity" associated with this rulemaking; there is a collaborative process that must be allowed run its full course.

Plaintiffs' proposed schedule would unduly short-circuit this vital process. Indeed, although E.O. 12866 establishes a preference for a 60-day comment period – rather than the APA minimum of 30 days – adopting Plaintiffs' schedule would make a 60-day comment period impossible. Under Plaintiffs' proposal, DOJ would be expected to publish the rule, obtain responsive comments, review those comments, draft responses to them, revise the proposed rule in accordance with the comments, and then decide upon a final rule – all within 60 days. Thus, Plaintiffs' schedule implies that DOJ would not take public comments seriously, since it has already determined how soon it will take final action, even though the comments may require substantial revisions to the rule.

Second, setting a 30-day effective date period similarly puts the cart before the horse. The NMVTIS rule will be the first time the affected entities – insurance carriers, junk and salvage yards – will be required to report information into NMVTIS. The NMVTIS operator, the American Association of American Motor Vehicle Administrators ("AAMVA"), is likely to provide comments in response to the NPRM as to how quickly it will be able to add the new information into the existing system. See Second Declaration of James H. Burch, II, dated August 29, 2008, at ¶ 3 (attached hereto as Exhibit 1) (hereinafter "Second Burch Decl."). Unlike participating states – which have established connections to AAMVA so that their information can be reported – insurance carriers and junk and salvage yards have no "existing connections to AAMVA's network, so a mechanism for the reporting of their data will need to be established." Id. Since this regulation will be the first time this reporting is required, the

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 6 -

"establishment of those mechanisms is something that will be raised during the comment period." Id.  In addition, AAMVA has not yet "established the specific technical requirements for reporting the data and junk and salvage yards collect inconsistent information on the vehicles they procure and maintain this information in different formats - some in a non-automated form." Id.  AAMVA will need to "define the technical requirements *after reviewing comments on the proposed rule* and will need to work with DOJ and industry associations to educate the businesses on what is needed, in what format, and which methods (specific web addresses, etc.)." Id. (emphasis added).  Setting a 30-day effective date now, without allowing enough time to give the relevant comments the time and attention they deserve, "would deprive DOJ of the ability to consider and incorporate the likely comments on this issue and lead to an infeasible deadline for compliance which could itself engender litigation." Id.

The Second Burch Declaration further demonstrates that the entities primarily affected by the NMVTIS rule are also expected to provide comments on the effective date of the final rule for the reporting requirements.  In his "extensive experience" with NMVTIS, Mr. Burch has held numerous conversations with insurance carriers, junk and salvage yards, and, as a result, he expects that many of the comments in response to the NPRM rule by these entities "will address the reporting itself, such as how difficult or easy it will be, how quickly it should begin, and in what manner it should occur." Id. at ¶ 4.  Some of the affected entities will require training and education to maximize their compliance with the NMVTIS reporting requirement. Id.  "The period between the final rule publication and effective date will provide an opportunity for this kind of education and training to occur, and for AAMVA to develop and finalize its processes and providing merely 30 days for this process will be a disservice to the goal of comprehensive reporting by these newly effected entities." Id.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 7 -

1    Plaintiffs' proposed schedule for a final rule and an effective date takes no account of

2    these factors.  Indeed, Plaintiffs apparently see no need to do so.  In their view, since the

3    government has missed the statutory deadline, there is nothing more to say.  It is hardly

4    surprising that Plaintiffs, who do not represent the entities that will bear the reporting burden

5    imposed by the NMVTIS rulemaking, would argue that the Court should not consider why these

6    entities would benefit from a timeframe allowing for full participation and responses.  But as has

7    been noted by other courts, "by decreasing the risk of later judicial invalidation" of a rule as

8    arbitrary and capricious, the "additional time spent reviewing a rulemaking proposal before it is

9    adopted may well ensure earlier, not later, implementation of any eventual regulatory scheme."

10   Sierra Club v. Thomas, 828 F.2d 783, 798-99 (D.C. Cir. 1987).  The same is true in this case.

11   Moreover, while the government cannot provide a fixed schedule at this time, the

12   proposed rule will contain a timeframe for compliance.  See Second Declaration of Eric T.

13   Gormsen, dated September 2, 2008, at ¶¶ 2-3 (attached hereto as Exhibit 2) (hereinafter "Second

14   Gormsen Decl.") (noting that pursuant to 49 U.S.C. §§ 30504(a) and (b), the Attorney General is

15   "required to establish a time for junk and salvage yard operators and insurance carriers to begin

16   filing month reports with the operator of NMVTIS" and noting that the NPRM "will include such

17   a timeframe").  Accordingly, there will be a schedule set for when the reporting requirement will

18   become effective, but with the government's plan, that schedule will be informed by the

19   comments that are submitted in response to the proposed rule.

20   Plaintiffs likewise suggest that this Court should take no account of the need for

21   executive branch coordination because the Office of Management and Budget ("OMB") has "no

22   authority" to review a rulemaking beyond a statutory deadline.  Pls. Mot. at 16.  But this

23   argument misses the point of the OMB review – whether or not it is within a statutory deadline, it

24   exists to coordinate national policy and conduct analyses that are required by other congressional

25

26   Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
     Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27   Support of Defendant's Notice of Motion and Motion for Judgment on the
     Pleadings, or in the Alternative, for Summary Judgment
28
                                        - 8 -

1  statutes or executive orders.  See First Gormsen Decl., ¶¶ 5-8.  The OMB review – of both the

2  proposed rule and the draft final rule – is not a meaningless obstacle the government places in the

3  way of proposed rulemakings to take up time.  Quite to the contrary, the entire executive branch

4  review process – as detailed in the First Gormsen Declaration – is aimed at developing sound

5  public policy.  This same goal underlies the need for the next Administration to review the

6  rulemaking before it is finalized.  See id. at ¶ 24.  While it is not a legal requirement, it reflects

7  the practice of good government – a value Plaintiffs espouse.[3/]  The imposition of a schedule

8  which does not permit executive branch reviews serves neither the public nor public policy.

9  Accordingly, DOJ's inability to provide a fixed schedule for this rulemaking at this time is not a

10  result of government incompetence or lassitude, as Plaintiffs may suggest, but rather the result of

11  a rational view of the imperatives of the policymaking process.

12  **C.    Plaintiffs' Infeasible Consumer Access Schedule Would Ill-
       Serve Both the Public and Congressional Will**

13  This Court should decline to order consumer access under the schedule Plaintiffs have

14  proposed – within 60 days of a court order.  Such relief may be impossible to provide, is

15  unnecessary in light of Defendant's expected compliance schedule, and if ordered, may diminish

16  the quality of the consumer access that is provided.  The Second Burch Declaration explains that

17  "DOJ is currently working with the operator of NMVTIS, AAMVA, to provide access to

18  prospective purchasers of automobiles, but AAMVA has advised that the soonest such access is

19  expected to be available is the end of 2008.  I do not believe that consumer access could be

---

22  [3/]    See http://www.facebook.com/pages/Public-Citizen/9785626650/ (last visited on
23  September 2, 2008) ("Founded in 1971, Public Citizen is a multidisciplinary progressive
    non-profit, meaning your support funds multiple public interest research and advocacy efforts:
24  safe and effective health care, auto safety, *good government*, safe and sustainable energy,
    consumer safety, and fair, equitable trade and globalization.  Why focus on a single issue?  We
25  do it all!") (emphasis added).

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
    Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27  Support of Defendant's Notice of Motion and Motion for Judgment on the
    Pleadings, or in the Alternative, for Summary Judgment

28                                    - 9 -

provided within 60 days, even though DOJ has authorized AAMVA to utilize existing federal

funds to support an expedited consumer access mechanism." Second Burch Decl., ¶ 8. DOJ,

cognizant of these restraints, has proposed a workable schedule that is not much longer than

Plaintiffs' proposal. The argument on this motion is set for September 22, 2008; even if the

Court enters an order that same day, under Plaintiffs' proposed order, consumer access would be

required by November 22, 2008. DOJ currently estimates that such access will be provided by

December 31, 2008 – approximately five weeks later.[4/] It would serve neither the public interest

nor congressional will to insist on an arbitrary 60-day deadline when a workable solution should

be implemented a little over a month later.

There are also other advantages to adhering to the approach DOJ is currently pursuing,

which are explained in more detail in the Second Declaration of James Burch. First, to "provide

access to NMVTIS in 60 days would likely require DOJ to pursue an alternate approach to the

option suggested by AAMVA, and DOJ has already determined that following AAMVA's

approach is the optimal course." Id. at ¶ 9. Under AAMVA's approach, a state will be the first

provider of consumer access. Id. "Not only does this make financial sense, as described in

paragraph 10 and because it may 'incentivize' state participation, but it is also the best

---

[4/]    In addition, Plaintiffs proposed order on consumer access makes no provision for the fact
that not all of the information listed in the Anti-Car Theft Act is in NMVTIS. See Second Burch
Decl., ¶ 7 ("The information from insurance carriers and junk and salvage yards is not yet
contained in the system  Even once regulations are issued, I expect the affected entities will
comply at different times and over a period of time due to the issues identified in paragraphs 3
and 4 above. Another concern is that the states that do provide data to NMVTIS do not
necessarily provide all of the data listed in paragraph 2. In addition, while total loss brands may
exist on some vehicles, insurance and junk/salvage operators are not required to report if already
reported to a state. Unfortunately, many states are not currently participating and some have
indicated that they will not participate even once the rules are issued in final. All of this means
that for some vehicle identification numbers ('VINs'), there may initially be little to no data
available through NMVTIS when a prospective purchaser conducts a search."). DOJ's approach
will take account of the fact that this information will be provided over time.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 10 -

technological option and provides the quickest consumer access, because the connection between AAMVA and the state already exists." Id. Any other provider of consumer access to NMVTIS information would have to connect to AAMVA's network, and AAMVA would have to configure the system to accept inquiries from the provider and share responses back appropriately – all of which would take a significant amount of time. Id.[5]

Second, AAMVA's approach involves the creation of a funding stream that will help to sustain the system as the law contemplates. "Using a state as the initial provider of data to prospective purchasers of automobiles may also aid DOJ in showing states that there are benefits to participating in NMVTIS, both in terms of information that can be provided to state citizens, and in terms of fee-generating opportunities for states." Id. at ¶ 10. The fees associated with access by prospective purchasers will also help to create an economic model to sustain the system, as Congress instructed in 49 U.S.C. § 30502(c), that "[t]he amount of fees the operator collects and keeps under this subsection subject to annual appropriation laws, excluding fees the operator collects and pays to an entity providing information to the operator, may be not more than the costs of operating the System."

Third, "there are restrictions on the amount of data that AAMVA is permitted to share with prospective purchasers of automobiles." Second Burch Decl., ¶ 11. Some of the states that have agreed to provide information to NMVTIS have not agreed to have their data shared with prospective purchasers. Id. DOJ is not a party to these agreements and neither drafted nor approved them, but the fact remains that "AAMVA has told DOJ that it is not authorized to share

---

[5]     DOJ did inquire as to whether AAMVA was willing to provide the access to NMVTIS directly for potential purchasers of automobiles, but AAMVA advised that it did not have the resources to support such an operation, particularly in light of the consumer support issues that were likely to arise as purchasers searched for information but were not able to find it. Second Burch Decl., ¶ 9 n.2.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 11 -

1    the state data with consumers or with anyone else outside of government." Id.[6/]

2          Fourth, and perhaps most importantly, "AAMVA has advised DOJ that if NMVTIS

3    access to prospective purchasers of automobiles is provided via a DOJ website (without fees),

4    some states would not be willing to have their data shared in this manner." Id. at ¶ 12. "Any

5    other manner of consumer access would also have to be discussed with AAMVA, since at this

6    time, the data in NMVTIS is state data, and the states would need to be consulted on how that

7    information will be shared." Id.

8          Were DOJ to pursue ways to provide access to NMVTIS to prospective purchasers of

9    automobiles in a manner to which participating states objected, there would be nothing to stop a

10   state from deciding to pull its data from NMVTIS – a result which would benefit no party in this

11   litigation. See id. The states are crucial players in NMVITS, and using an approach into which

12   they have had input represents the best way to fulfill the requirements of the Anti-Car Theft Act.

13   If states withdraw from NMVTIS, it would detrimentally impact the program since the data is

14   what enables states to "prevent fraud by verifying the motor vehicle and title information,

15   information on brands applied to a motor vehicle, and information on whether the motor vehicle

16   has been reported stolen." See August 11, 2008 Declaration of James H. Burch, II, at ¶ 4

17   (hereinafter "First Burch Decl."). Even when the data from insurance carriers, and junk and

18   salvage yards is included in NMVTIS, state data will still be crucial because the Anti-Car Theft

19   Act "allows insurance, junk and salvage operators to not report to NMVTIS if their relevant

20   inventories are already reported to the states." Id. at ¶ 15. "Therefore, the worst case scenario in

21   granting Plaintiffs' proposed order is not just providing access to an incomplete universe of data

22   currently contained in NMVTIS but instead, causing states to rethink their participation in

23

24          [6/]      "The restriction apparently stems from some states' concern that they may lose income
     they currently derive from private sector companies which also provide vehicle information and
25   to whom the states sell the data." Second Burch Decl., ¶ 11 n.3.

26   Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
     Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27   Support of Defendant's Notice of Motion and Motion for Judgment on the
     Pleadings, or in the Alternative, for Summary Judgment

28                                                - 12 -

1  NMVTIS and possibly withdrawing their information from the system, resulting in even more

2  narrow consumer access." Second Burch Decl., ¶ 12. All of these factors – as well as the very

3  small difference in the Plaintiffs' and Defendant's schedules – demonstrate that the Court should

4  not order that consumer access be provided within 60 days of a court order.

5      **D.    The Cases Cited By Plaintiffs Where Courts Found a Statutory
          Violation and Rejected an Agency's Proposed Remedial Schedule Are
6          Distinguishable**

7          Plaintiffs' Motion is rife with rhetoric taken from court orders where agency actions were

8  found unlawfully withheld or unreasonably delayed. However, Plaintiffs repeatedly fail to tell

9  the whole story from these cases. First, it is important to distinguish between "unlawfully

10  withheld" cases where courts found no agency action whatsoever despite a statutory deadline

11  having passed and the present case, where at most, the agency action could be found incomplete.

12  For example, in Forest Guardians the Secretary of the Interior missed a statutorily-imposed

13  mandatory deadline to designate critical habitat for an endangered species. 174 F.3d at 1181.

14  But the Secretary had not just missed the deadline to complete the designation process by more

15  than three-and-one-half years when the case was heard. Id. at 1182. More damningly, he had

16  done nothing to pursue the habitat designation during that time, pleading impossibility and fiscal

17  constraints, and he proposed no future action. Id. at 1182-84. Under such circumstances, the

18  court was properly compelled to jumpstart a stalled process. The instant case does not involve a

19  complete failure to act, but rather with unfinished agency work. By contrast to the agency in

20  Forest Guardians, and as set forth in Defendant's declarations, significant progress has been

21  made towards creating NMVTIS and providing customer access, and DOJ is committed to and

22  working towards completing the process.

23          Second, in many of the cases from which Plaintiffs draw their strongest rhetoric, the

24  courts nevertheless adopted the schedule proposed by the defendant agency. For example, in

25

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
    Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27  Support of Defendant's Notice of Motion and Motion for Judgment on the
    Pleadings, or in the Alternative, for Summary Judgment

28                                          - 13 -

1   Public Citizen v. Brock, 823 F.2d 626, 628 (D.C. Cir. 1987), the D.C. Circuit found the lengthy

2   inaction by Defendant Occupational Safety and Health Administration ("OSHA") in

3   promulgating a toxin rule, inaction which lasted over six years while "lives [were] hanging in the

4   balance," rendered it a "troubling case."  In the face of such a disheartening history, the Court

5   found the rulemaking schedule proposed by OSHA, which called for a further eight-month delay,

6   "treads at the very lip of the abyss of unreasonable delay."  Id. at 629.  Yet the Court still adopted

7   OSHA's proposed schedule.  Despite opining, as Plaintiffs' Motion quoted, that "[a]t some point,

8   we must lean forward from the bench to let an agency know, in no uncertain terms, that enough is

9   enough," id. at 627, the D.C. Circuit in fact leaned forward from the bench only far enough to

10  accept the agency's proposal.  The Court in Brock found that even when judicial frustration with

11  a protracted delay nears a boiling point, and the time for agency action has been reached, "the

12  court's proper role within the constitutional system counsels caution in fashioning a remedy."  Id.

13       Similarly, the very first case cited in Plaintiffs' Motion, In re American Federation of

14  Government Employees, AFL-CIO, 790 F.2d 116 (D.C. Cir. 1986), is filled with strong language

15  criticizing agency delay which Plaintiffs chose to quote, but the Court's holding, unmentioned by

16  Plaintiffs, actually endorsed the agency's position.  In that case, the D.C. Circuit, finding delays

17  by the Federal Labor Relations Authority ("FLRA" or "the Authority") to be "intolerable,"

18  berated the FLRA, declaring that "[w]hen an agency's recalcitrance, inertia, laggard pace or

19  inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect . . .

20  judicial review . . . is in order."  Id. at 117 (citation and quotation omitted).  However, after

21  completing that judicial review, the D.C. Circuit failed to grant injunctive relief or issue a court

22  order compelling agency action.  Instead, the Court dismissed Plaintiff's petition "without

23  prejudice to renewal, and expedited consideration, should circumstances so warrant."  Id. at 119.

24  The Court's sound decision rested on its finding that:

25

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
    Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further

27  Support of Defendant's Notice of Motion and Motion for Judgment on the
    Pleadings, or in the Alternative, for Summary Judgment

28
                                        - 14 -

1  the FLRA's submissions in response to AFGE's petition satisfy us that the agency
2  has determined to end its history of unjustifiable delay.  It now appears that the
   Authority is proceeding successfully to achieve effective management and timely
3  disposition of the cases Congress charged it with responsibility to decide.  We
   therefore find it unnecessary, at this time, to issue a writ of mandamus ordering
4  the Authority to quicken its pace.

5  Id. at 117.

6       Indeed, many of the cases contained in Plaintiffs' Motion follow this admonish-the-

7  agency-while-adopting-its-proposed-schedule pattern.  See, e.g., Envtl. Def. Fund v. Thomas,

8  627 F. Supp. 566, 569-70 (D.D.C. 1986) ("Promulgation of regulations 16 months after a

9  Congressional deadline is highly irresponsible . . . . Now that the damage is done, however, this

10 court must fashion an equitable remedy that best achieves the Congressional purpose . . . . After

11 reviewing the proposed schedule set forth by [the agency] in this case, it appears that the

12 [agency's proposed] deadline is reasonable . . . . Therefore, it is ordered that the regulations be

13 promulgated by that time.").  Just as numerous courts before it have done, this Court should "turn

14 from the [agency's] years of 'sad performance' to the efforts lately launched by the [agency]" and

15 fashion an equitable remedy that best achieves the Congressional purpose.  See In re Am. Fed. of

16 Government Employees, AFL-CIO, 790 F.2d at 118.  Regarding NMVTIS, the proper remedy is

17 clear – the Court should permit Defendant to continue with its rulemaking efforts and not enter

18 the unworkable schedule Plaintiffs have proposed.

**II.    THE IMPENDING ISSUANCE OF THE NMVTIS NPRM WILL MOOT
        PLAINTIFFS' CLAIMS FOR UNLAWFUL WITHHOLDING AND/OR
19      UNREASONABLE DELAY OF AGENCY ACTION**

20      Another reason to deny Plaintiffs' summary judgment motion is that the impending

21 issuance of the NMVTIS rule as an NPRM will moot the delay preceding its publication.  DOJ

22 expects that the NPRM for the NMVTIS will be published shortly; the only steps remaining

23 before the rule can be published are final reviews by the Deputy Attorney General and Attorney

24 General.  See Second Gormsen Decl. at ¶¶ 2-4.  This is the last stage of DOJ review before the

25

26 Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
   Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27 Support of Defendant's Notice of Motion and Motion for Judgment on the
   Pleadings, or in the Alternative, for Summary Judgment

28
                                    - 15 -

proposed rule can be published in the Federal Register.[7/]  Id.  Its publication will moot Plaintiffs' claims insofar as they are based on the time elapsed before the date of publication.  See In re Int'l Union, United Mine Workers of Am., 231 F.3d 51, 54 (D.C. Cir. 2000) ("It is unnecessary for us to reach the merits of petitioner's claim that MSHA has unreasonably delayed rulemaking on respirable coal mine dust. An agency's notice of proposed rulemaking necessarily moots a petitioner's claim of unreasonable delay if that claim is based upon (1) a period of delay occurring prior to the agency's issuance of a notice of proposed rulemaking, and (2) a matter that the agency proposes to regulate in that rulemaking."); Action on Smoking and Health v. Dep't of Labor, 28 F.3d 162, 164 (D.C. Cir. 1994) ("Although petitioner's allegation that OSHA unreasonably delayed issuing health and safety standards for ETS qualifies for this exception, we do not reach the merits of this claim.  Petitioner based its claim upon the period of delay prior to the agency's April 5, 1994 issuance of a Notice of Proposed Rulemaking on Indoor Air Quality Contaminants.  Because ETS is among the contaminants that OSHA proposes to regulate in that rulemaking, petitioner's unreasonable delay claim is moot.").[8/]

---

[7/]    Because the NPRM will likely be published shortly after the parties' oppositions are filed, Defendant has included this argument here since the Court ordered that if the parties filed cross-motions, there would be no reply briefs, and Defendant did not want to leave this argument out of its opposition/reply.

[8/]    See also In re City of Fall River, Massachusetts, 470 F.3d 30, 32-33 (1st Cir. 2006) (petitioner's request "to compel the agency to act on the petition for rulemaking" was moot because the "DOT finally acted on the petition by denying it.") Action Alliance of Senior Citizens v. Heckler, 789 F.2d 931, 943 n.15 (D.C. Cir. 1986) (where injunctive and declaratory relief, rather than damages, is sought, and the harm has been addressed by defendant's actions and is not likely to recur, "any equitable claims concerning past delay are moot"); United Steelworkers of Am., 783 F.2d at 1118-20 (where issue of prior delay was mooted by publication of the proposed standard, court "decline[d] . . . to 'punish' OSHA for its past delay" by "judicial imposition of an overly hasty timetable [that] would ill serve the public interest" by denying OSHA needed time to "construct[] carefully and thoroughly" a final rule that would "pass

(continued...)

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 16 -

When DOJ promulgates the proposed criteria and guidelines for implementing the reporting requirements for NMVTIS, it will have already largely answered Plaintiffs' prayer for relief and "eradicated" any harm allegedly caused by delay in issuing the proposed regulations. See Action Alliance, 789 F.2d at 943 & n.15. Plaintiffs may argue in response that these cases cited above are unreasonable delay cases and are thus not relevant to a case in which a plaintiff has pled an agency action "unlawfully withheld" theory of liability. But this assertion would ignore the fundamental nature of mootness, which is based not on the legal theory of the claim that is asserted but on the Court's inability to redress the alleged injury.[9/] This Court has explained the concept of mootness as follows:

> The jurisdiction of federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. PUC v. FERC, 100 F.3d 1451, 1458 (9th Cir. 1996). "A claim is moot if it has lost its character as a present, live controversy." American Rivers v. National Marine Fisheries Service, 126 F.3d 1118, 1123 (9th Cir. 1997) (citing American Tunaboat Ass'n v. Brown, 67 F.3d 1404, 1407 (9th Cir. 1995)). "In the context of declaratory and injunctive relief, [a plaintiff] must demonstrate that she has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that she will again be wronged in a similar way." Bird v. Lewis & Clark College, 303 F.3d 1015, 1019 (9th Cir. 2002) (internal quotation marks and citation omitted), cert. denied, 538 U.S. 923, 123 S.Ct. 1583, 155 L.Ed.2d 314. Where the activities sought to be enjoined have already occurred and the courts "cannot undo what has already been done, the action is moot." Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir. 1978). "The burden of demonstrating mootness is a heavy one." Northwest Environmental Defense Center v. Gordon, 849 F.2d 1241, 1243 (9th Cir. 1988).

Santillan, 388 F. Supp. 2d at 1072. The Court went on to note that a "defendant's voluntary

---

[8/]    (...continued)
judicial scrutiny."); United Transp. Union Local 418 v. Boardman, 2008 WL 2600176, at *7 (N.D. Iowa June 24, 2008) ("Plaintiffs filed their complaint asking the court to order the FRA to grant or deny the rulemaking petitions. It is undisputed that Defendants have ruled on each of the three petitions, and the court is not aware of any effective relief that the court can grant.").

[9/]    Even if there is any claim left for declaratory relief, it is clear there is no need for an injunction to issue, given the impending publication of the NPRM. Moreover, Plaintiffs pled their case under both theories of liability. See Compl. at p. 11.

Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
Support of Defendant's Notice of Motion and Motion for Judgment on the
Pleadings, or in the Alternative, for Summary Judgment

- 17 -

1  cessation of a challenged practice does not render a case moot unless the party asserting

2  mootness meets the 'heavy burden' of showing that it is 'absolutely clear the allegedly wrongful

3  behavior could not reasonably be expected to recur.'" Id. (quoting Students for a Conservative

4  Am. v. Greenwood, 378 F.3d 1129, 1131, amended by 391 F.3d 978 (9th Cir. 2004)).

5      When it issues the NPRM, DOJ will be able to satisfy the "heavy burden" of having

6  mooted Plaintiffs' rulemaking claim.  Plaintiffs claim is not capable of recurring, unlike in some

7  ESA cases where a particular animal was listed, albeit after a deadline had passed, but plaintiffs

8  showed that they had "reasonable expectation that they will again litigate the issue of the extent

9  of the Service's discretion to delay making a twelve-month finding" – again related to the listing

10  of future animals.  Badgley, 309 F.3d at 1174-75.[10/]

11      Here, DOJ is working diligently to promulgate and finalize the regulations to implement

12  the reporting requirements for insurance carriers, and junk and salvage yards.  The agency has

13  been forthcoming about the administrative process it needs to follow for this rulemaking.  Once

14  the rule is published as an NPRM, the agency will proceed to follow that process.  Accordingly,

15  there is no need for the Court to issue an injunction along the lines Plaintiffs have proposed.

16  **III.  PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS, AND**
    **THEIR CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

17      As discussed at length in Defendant's initial motion, Plaintiffs lack standing to pursue

18  their claims.  Plaintiffs lack standing to sue on behalf of their members or in their own right, so

19  this Court should dismiss their Complaint.  In addition, because the six-year statute of limitations

20  applicable to APA actions, 28 U.S.C. § 2401(a), is jurisdictional, and Plaintiffs did not sue

21

22  [10/]    The relevant prayer for relief in Plaintiffs' Complaint underscores why their alleged

23  injury will not recur once the NMVTIS NPRM is issued.  See Compl., pg. 11 at B (requesting

24  the Court to "Order the Attorney General to *issue regulations*, as required by 49 U.S.C. §
    30504(c), within 30 days of declaring the Attorney General's failure to act to be unlawful")

25  (emphasis added).

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
    Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further

27  Support of Defendant's Notice of Motion and Motion for Judgment on the
    Pleadings, or in the Alternative, for Summary Judgment

28                                          - 18 -

1  within six years of the NMVTIS deadline they point to – December 31, 1997 – their claims are

2  time-barred.  Plaintiffs' own  repeated references to the "sixteen" years of delay and "decade" of

3  delay in implementing NMVTIS underscore the lateness of their claims  See, e.g., Pls. Mot. at 1,

4  7, 8, 10, 11, 13, 15.  Plaintiffs could have sued the government long ago for these alleged

5  failures, but they chose not do so.  As a result, their claims are precluded by the statute of

6  limitations.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
    Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27  Support of Defendant's Notice of Motion and Motion for Judgment on the
    Pleadings, or in the Alternative, for Summary Judgment

28
                                                - 19 -

1

## CONCLUSION

2      For the reasons set forth in Defendant's Motion, and for the reasons stated herein, the

3 Court should dismiss, or, in the alternative, enter summary judgment for Defendant.

4   Dated: September 2, 2008                    Respectfully submitted,

5                                              JOSEPH P. RUSSONIELLO
                                              United States Attorney
6
                                              GREGORY G. KATSAS
7                                             Assistant Attorney General

8                                             SANDRA M. SCHRAIBMAN
                                              Assistant Branch Director
9
                                              \s\ *Diane Kelleher*
10                                            _____
11                                            DIANE KELLEHER
                                              Senior Counsel
                                              PETER LEARY
12                                            Trial Attorney

13                                            Department of Justice
                                              Civil Division, Federal Programs Branch
14                                            E-mail address:  Diane.Kelleher@usdoj.gov

15                                            Courier Address:
                                              20 Massachusetts Ave., NW, Room 7318
16                                            Washington, D.C. 20004

17                                            *Attorneys for Attorney General Michael Mukasey*

18

19

20

21

22

23

24

25

26   Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
     Opposition to Plaintiffs' Motion for Summary Judgment And Reply in Further
27   Support of Defendant's Notice of Motion and Motion for Judgment on the
     Pleadings, or in the Alternative, for Summary Judgment
28
                                    - 20 -

**EXHIBIT  1**

1    GREGORY G. KATSAS
     Assistant Attorney General
2    SANDRA M. SCHRAIBMAN
     Assistant Branch Director
3    DIANE KELLEHER
     Senior Counsel
4    PETER D. LEARY
     Trial Attorney
5    United States Department of Justice
     Civil Division, Federal Programs Branch
6    20 Massachusetts Ave., N.W., Room 7318
     P.O. Box 883
7    Washington, DC 20044
     (202) 514-4775
8    (202) 616-8470 (fax)

9    *Attorneys for Michael Mukasey, Attorney*
     *General of the United States*

10

11                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
12                      SAN FRANCISCO DIVISION

13   _____ )    No. CV 08-0833 (MHP)
     PUBLIC CITIZEN, INC.,            )
14     et al.,                        )
                                      )
15              Plaintiffs            )
                                      )
16         v.                         )    **SECOND DECLARATION OF**
                                      )    **JAMES H. BURCH, II**
17   MICHAEL MUKASEY, ATTORNEY        )
     GENERAL OF THE UNITED STATES     )
18                                    )
                Defendant.            )
19   _____ )

20              **SECOND DECLARATION OF JAMES H. BURCH, II**

21          I, JAMES H. BURCH, II, hereby declare as follows:

22   1.     I am a Deputy Director of the Bureau of Justice Assistance ("BJA") within the

23   Department of Justice ("DOJ").  I make this Declaration in further support of Defendant's

24   Motion for Summary Judgment and in opposition to Plaintiffs' Motion for Summary Judgment.

25   2.     Plaintiffs have asked this Court to order that DOJ promulgate a final rule for

26   implementing the Anti-Car Theft Act's reporting requirement for insurance carriers, junk and

27   salvage yards within 90 days of a Court order, and for the final rule to be effective 30 days

28

1    thereafter.  I am concerned that a 30-day effective date for any final rule both cannot and should

2    not be set.

3    3.    It is my belief, based on my extensive experience with NMVTIS and after direct dialogue

4    with those businesses required to report to NMVTIS and the current operator, that the 30-day

5    effective date may prove unreasonable for several reasons.  First, it is likely that the NMVTIS

6    operator, the American Association of American Motor Vehicle Administrators ("AAMVA"),

7    will provide comments in response to the Notice of Proposed Rulemaking ("NPRM") as to how

8    quickly it will be able to add the new information into the existing system.  Second, unlike the

9    participating states   which have established connections to AAMVA's network so that their

10   information can be reported   insurance carriers and junk and salvage yards do not have existing

11   connections to AAMVA's network, so a mechanism for the reporting of their data will need to be

12   established by the operator.  Third, the operator has not as of yet established the specific

13   technical requirements for reporting the data and junk and salvage yards collect inconsistent

14   information on the vehicles they procure and maintain this information in different formats -

15   some in a non-automated form.  The NMVTIS operator will need to define the technical

16   requirements after reviewing comments on the proposed rule and will need to work with DOJ

17   and industry associations to educate the businesses on what is needed, in what format, and which

18   methods (specific web addresses, etc.).  Such comments will, in turn, inform DOJ's decision

19   about how soon an effective date may be set for the final rule.  Setting a 30-day effective date

20   now would deprive DOJ of the ability to consider and incorporate the likely comments on this

21   issue and lead to an infeasible deadline for compliance which could itself engender litigation.

22   4.    There are additional compelling reasons why the 30-day effective date should not be set.

23   Based on the conversations I have had with insurance carriers, junk and salvage yards over the

24   past six years that I have worked on NMVTIS issues, I expect that many of the comments in

25   response to the NPRM will address the reporting itself, such as how difficult or easy such it will

26

27   Public Citizen v. Mukasey, No. CV 08 0833 (MHP),
     Second Declaration of James H. Burch, II

28
                                        - 2 -

1  be, how quickly it should begin, and in what manner it should occur.  In the case of junk/salvage

2  yards for example, I have met with the operators of these businesses who indicate that there are

3  some small businesses (<100 cars per year) that are unlicensed and not linked to any particular

4  association,  whom it may take some time to reach and to educate on the need to comply with the

5  Anti-Car Theft Act and report data to NMVTIS.  The period between the final rule publication

6  and effective date will provide an opportunity for this kind of education and training to occur,

7  and for AAMVA to develop and finalize its processes and providing merely 30 days for this

8  process will be a disservice to the goal of comprehensive reporting by these newly affected

9  entities.

10  5.      I also see that Plaintiffs have submitted a Proposed Order and asked the Court to direct

11  Defendant to:

12      ensure that the NMVTIS is capable of making available to any prospective
        purchaser of an automobile, upon request, information in the system about any
13      automobile, as required by 49 U.S.C. §§ 30502(d) and (e)(C) [sic][1/], not later than
        60 days from the date of this order.  As required by the statute, NMVTIS system
14      shall permit a consumer to establish instantly and reliably: (a) the validity and
        status of a document purporting to be a certificate of title; (b) whether an
15      automobile bearing a known vehicle identification number is titled in a particular
        State; (c) whether an automobile known to be titled in a particular State is or has
16      been a junk automobile or a salvage automobile; (d) for an automobile known to
        be title [sic] in a particular State, the odometer mileage disclosure required under
17      49 U.S.C. § 32705 for that automobile on the date the certificate of title for that
        automobile was issued and any later mileage information, if noted by the State;
18      and (e) whether an automobile bearing a known vehicle identification number has
        been reported under 49 U.S.C. § 30504 as a junk automobile or a salvage
19      automobile by a junk or salvage yard or insurance carrier.

20  6.      There are several problems with the relief Plaintiffs have requested.

21  7.      First, the information listed above is not all in NMVTIS.  The information from insurance

22  carriers and junk and salvage yards is not yet contained in the system  Even once regulations are

23  issued, I expect the affected entities will comply at different times and over a period of time due

24

25  [1/]      There is no 49 U.S.C. § 30502(e)(C).  I believe Plaintiffs' citation to it was a scrivener's
26  error, and I assume Plaintiffs meant to cite 49 U.S.C. § 30502(e)(1)(C).

27  Public Citizen v. Mukasey, No. CV 08 0833 (MHP),
    Second Declaration of James H. Burch, II

28                                            - 3 -

to the issues identified in paragraphs 3 and 4 above.  Another concern is that the states that do provide data to NMVTIS do not necessarily provide all of the data listed in paragraph 2.  In addition, while total loss brands may exist on some vehicles, insurance and junk/salvage operators are not required to report if already reported to a state.  Unfortunately, many states are not currently participating and some have indicated that they will not participate even once the rules are issued in final.  All of this means that for some vehicle identification numbers ("VINs"), there may initially be little to no data available through NMVTIS when a prospective purchaser conducts a search.

8.    Second, even if the information to be provided was limited to the information currently contained in NMVTIS, DOJ cannot guarantee access within 60 days.  DOJ is currently working with the operator of NMVTIS, AAMVA, to provide access to prospective purchasers of automobiles, but AAMVA has advised that the soonest such access is expected to be available is the end of 2008.  I do not believe that consumer access could be provided within 60 days, even though DOJ has authorized AAMVA to utilize existing federal funds to support an expedited consumer access mechanism.

9.    To attempt to provide access to NMVTIS in 60 days would likely require DOJ to pursue an alternate approach to the option suggested by AAMVA, and DOJ has already determined that following AAMVA's approach is the optimal course.  Under AAMVA's approach, a state will be the first provider of consumer access.  Not only does this make financial sense, as described in paragraph 10 and because it may "incentivize" state participation, but it is also the best technological option and provides the quickest consumer access, because the connection between AAMVA and the state already exists.  Any other provider of consumer access to NMVTIS information would have to establish the connections to AAMVA's network and AAMVA would have to configure the NMVTIS files to accept inquiries from the provider and share responses

Public Citizen v. Mukasey, No. CV 08 0833 (MHP),
Second Declaration of James H. Burch, II

- 4 -

1   back appropriately, which would take a significant amount of time.[2/]

2   10.    It is important to recognize that AAMVA's approach involves the creation of a funding

3   stream that will help to sustain the system as the law contemplates.  Using a state as the initial

4   provider of data to prospective purchasers of automobiles may also aid DOJ in showing states

5   that there are benefits to participating in NMVTIS, both in terms of information that can be

6   provided to state citizens, and in terms of fee-generating opportunities for states.  The fees

7   associated with access by prospective purchasers will also help to create an economic model to

8   sustain the system, as Congress instructed in 49 U.S.C. § 30502(c), that "[t]he amount of fees the

9   operator collects and keeps under this subsection subject to annual appropriation laws, excluding

10  fees the operator collects and pays to an entity providing information to the operator, may be not

11  more than the costs of operating the System."

12  11.    There are restrictions on the amount of data that AAMVA is permitted to share with

13  prospective purchasers of automobiles.  Some of the states that have agreed to provide

14  information to NMVTIS have not agreed to have their data shared with prospective purchasers.

15  DOJ is not a party to these agreements and neither drafted nor approved them.  But the fact

16  remains that for these states, AAMVA has told DOJ that it is not authorized to share the state

17  data with consumers or with anyone else outside of government.[3/]  Although DOJ has suggested

18  to AAMVA that these contracts may need to be amended in the future, AAMVA has indicated

19  that the relevant states made this restriction a requirement of their participation with NMVTIS.

20  AAMVA has agreed to re-raise this issue with the affected states to try and persuade them to

---

[2/]    DOJ did inquire as to whether AAMVA was willing to provide the access to NMVTIS
directly for potential purchasers of automobiles, but AAMVA advised that it did not have the
resources to support such an operation, particularly the consumer support issues that were likely
to arise as purchasers searched for information but were not able to find it.

[3/]    The restriction apparently stems from the states' concern that they may lose income they
currently derive from private sector companies which also provide vehicle information and to
whom the states sell the data.

1    eliminate the restrictions on sharing data with prospective purchasers.

2    12.    Third, and perhaps most importantly, AAMVA has advised DOJ that if NMVTIS access

3    to prospective purchasers of automobiles is provided via a DOJ website (without fees), some

4    states would not be willing to have their data shared in this manner.  Any other manner of

5    consumer access would also have to be discussed with AAMVA, since at this time, the data in

6    NMVTIS is state data, and the states would need to be consulted on how that information will be

7    shared.  Therefore, the worst case scenario in granting Plaintiffs' proposed order is not just

8    providing access to an incomplete universe of data currently contained in NMVTIS but instead,

9    causing states to rethink their participation in NMVTIS and possible withdrawing their

10   information from the system, resulting in even more narrow consumer access.

1

2          I declare under penalty of perjury that the foregoing is true and correct.

3

4     Executed on: August 29, 2008

5     Washington D.C.

6

7

8                                    JAMES H. BURCH, II

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    Public Citizen v. Mukasey, No. CV 08-0833 (MHP),
      Second Declaration of James H. Burch, II

28

**EXHIBIT  2**

1    GREGORY G. KATSAS
     Assistant Attorney General
2    SANDRA M. SCHRAIBMAN
     Assistant Branch Director
3    DIANE KELLEHER
     Senior Counsel
4    United States Department of Justice
     Civil Division, Federal Programs Branch
5    20 Massachusetts Ave., N.W., Room 7318
     P.O. Box 883
6    Washington, DC 20044
     (202) 514-4775
7    (202) 616-8470 (fax)

8    *Attorneys for Michael Mukasey, Attorney*
     *General of the United States*

9

10                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
11                      SAN FRANCISCO DIVISION

12   _____
                                             )
13   PUBLIC CITIZEN, INC.,                   )
       et al.,                               )
14                                           )    No. CV 08-0833 (MHP)
                          Plaintiffs         )
15                                           )
            v.                               )    **SECOND DECLARATION OF**
16                                           )    **ERIC T. GORMSEN**
     MICHAEL MUKASEY, ATTORNEY               )
17   GENERAL OF THE UNITED STATES            )
                                             )
18                        Defendant.         )
     _____)

19              **SECOND DECLARATION OF ERIC T. GORMSEN**

20          I, ERIC T. GORMSEN, hereby declare as follows:

21   1.      I am a Senior Counsel in the Office of Legal Policy ("OLP").  I make this Declaration in

22   further support of Defendant's Motion for Summary Judgment and in opposition to Plaintiffs'

23   Motion for Summary Judgment.  OLP is the office within the Department of Justice ("DOJ") that

24   is responsible for developing and implementing DOJ's significant policy initiatives.  OLP also

25   reviews certain regulations promulgated by DOJ.  As a Senior Counsel, I am responsible, in part,

26   for reviewing regulations concerning the National Motor Vehicle Title Information System

27   ("NMVTIS"), in particular, the requirement that insurance carriers, and junk and salvage yards

28   report data to NMVTIS.

1   2.     Pursuant to 49 U.S.C. §§ 30504(a) and (b), the Attorney General is required to establish a

2  time for junk and salvage yard operators and insurance carriers to begin filing monthly reports

3  with the operator of NMVTIS.

4   3.     Consistent with that requirement, I anticipate that the forthcoming Notice of Proposed

5  Rulemaking ("NPRM") will include such a timeframe.

6   4.     At this time, the draft of the NPRM is with the Deputy Attorney General; after that it will

7  be sent to the Office of the Attorney General for his review. Once the NPRM is signed by the

8  Attorney General, it will be logged by the Office of Legal Counsel and then sent to the

9  Government Printing Office for publication in the Federal Register.

10

11        I declare under penalty of perjury that the foregoing is true and correct.

12

13  Executed on: August **27**, 2008

14  Washington D.C.

15

16

17                           _Eric T. Gormsen_

18                           ERIC T. GORMSEN

19

20

21

22

23

24

25

26

27  <u>Public Citizen v. Mukasey</u>, No. CV 08-0833 (MHP),
Second Declaration of Eric Gormsen

28                     - 2 -