IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| PUBLIC CITIZEN, INC., ) <br> CONSUMERS FOR AUTO RELIABILITY ) <br> AND SAFETY, and ) <br> CONSUMER ACTION, ) <br>   ) <br> *Plaintiffs,* ) <br>   ) <br> v. ) <br>   ) <br> MICHAEL MUKASEY, ) <br> Attorney General of the United States, ) <br>   ) <br> *Defendant.* ) <br> _____ ) | Case No. CV 08-0833 (MHP) <br><br> **DECLARATION OF** <br> **BERNARD E. BROWN** |

**DECLARATION OF BERNARD E. BROWN**

I, Bernard E. Brown, hereby declare as follows:

1.  I live in Shawnee Mission, Johnson County, Kansas. My office address is at 4350 Shawnee Mission Parkway, Suite 250, Fairway, Kansas 66205.

2.  I am a member of Public Citizen, and have been a member since 1999. I make this declaration in support of Public Citizen's lawsuit, on behalf of itself and its members, to compel the federal government to implement the National Motor Vehicle Title Information System (NMVTIS).

3.  I purchase cars for my personal use, and expect in the future to continue buying cars, both new and used, for my personal use. I also assist family and friends on a fairly regular basis in purchasing vehicles, both new and used, for their personal

DECLARATION OF BERNARD BROWN   Page 1

use.

4. I want to know, with respect to any vehicle I may purchase or assist family or friends in purchasing, whether that vehicle has previously been a wrecked, flooded, or otherwise damaged vehicle, and particularly whether that vehicle has been a salvage vehicle. It is painfully obvious, in my view, that such damage can and often does greatly affect the safety of a vehicle, and that it greatly affects the value of a vehicle.

5. My appreciation of the need for reliable vehicle-title-history information is not only personal, but professional. I am an attorney, and have been in private practice in the Kansas City area since October of 1980. Between the fall of 1983 and 2004 my practice focused almost entirely on "car fraud" cases, particularly cases involving the fraudulent resale of rebuilt wrecked vehicles and vehicles with odometer rollbacks. (Our work on car fraud cases continues to be our primary work, though in the past few years we have also been doing a significant amount of work on mortgage fraud cases for consumers.) I am often consulted by attorneys around the country on auto fraud, and frequently have occasion to assist them with investigation of the histories of vehicles suspected of having previous wreck damage or odometer rollbacks. I have worked regularly with automotive collision/damage repair experts and other auto industry experts throughout these years.

6. I am aware that in 1992 Congress enacted a statute that required the government to establish a database (NMVTIS) containing vehicle-history information gathered from states, junk and salvage yards, and insurance carriers. I am also aware that the government has still not established the database. Based on

DECLARATION OF BERNARD BROWN Page 2

my personal and professional experience, I am deeply concerned that the government's failure to implement the database deprives consumer vehicle purchasers (even including me) of access to important auto-safety information. I am also deeply concerned that the government's continuing inaction with respect to NMVTIS increases the risk to consumer vehicle purchasers (even including me) of purchasing unsafe or unreliable vehicles. The worst of the wrecked and flooded vehicles, which are currently being "rebuilt" into the worst of the fraudulently resold previously-damaged vehicles, are exactly the vehicles that would be reported in the NMVTIS database; it is the public reporting of exactly these vehicles that consumer car buyers desperately need. The public disclosure of these vehicles would not only directly protect consumers by making information on such vehicles available to the consumers before sales; it would also protect consumers by assisting honorable car dealers in avoiding purchases (and resales to consumers) of such vehicles, by causing far fewer of these unsafe vehicles to be rebuilt and put back out on the roads, and by assisting law enforcement agencies in investigating and policing the wholesale car industry.

7. I am aware that there are commercial vehicle-history services, such as CARFAX. However, in my view those services are not even remotely acceptable as substitutes for NMVTIS. To the contrary: it is my opinion that those services collectively, as they have been marketed and with their defective lack of information that would be included in NMVTIS (as discussed more, below), actually increase the likelihood that consumers will be defrauded by unknowingly purchasing rebuilt wrecked or flooded vehicles.

DECLARATION OF BERNARD BROWN   Page 3

8. I have been thoroughly familiar with CARFAX since its inception. I met its founder, Ewin Barnett, at an auto fraud law enforcement conference in 1984, during the time that he was first building and marketing CARFAX, and have had innumerable communications with CARFAX personnel (including taking their depositions) over the years. I have also had extensive contact with law enforcement personnel over these years about CARFAX reports and the uses and operations of the CARFAX database.

9. Over the course of these years, our office has investigated the histories of probably tens of thousands of vehicles. We have run CARFAX reports on large numbers of these vehicles. We have also reviewed CARFAX reports run on many vehicles about which we receive complaints of undisclosed problems in the vehicles' histories. We have received voluminous data about Carfax and its reports from many law enforcement and private attorney sources.

10. Based on that experience and knowledge, it is clear that for the decided majority of rebuilt wrecks and odometer-rollback vehicles that are offered for sale by dealers without disclosure of such damage, those defects do not show up in the CARFAX reports by the time of the sale, and that this is common knowledge inside the car resale industry. I would estimate that the defects with respect to probably 9 out of 10 rebuilt wrecks do not show up in CARFAX reports at the time dealers offer the vehicles for sale. This is so for several reasons, including: (1) the CARFAX database does not get information from many of the most important wreck-damage sources, such as insurance companies' claims databases, salvage car auctions, fleet rental and lease car databases, and many police and other law enforcement sources;

(2) the information CARFAX receives typically arrives late, from months to years after the accident damage occurred; (3) state titling laws provide an extraordinary patchwork quilt of "salvage" and other title "branding" requirements, so that often even clearly "totaled" vehicles are not required under the only applicable state laws to have such brands on their titles, and thus state titling records do not reveal the damage to CARFAX or any other databases; (4) unscrupulous insurance companies, salvage car auctions, and salvage car brokers flagrantly disregard applicable "title branding" laws and fail to obtain required "branded" titles; (5) state law enforcement of title branding laws, particularly in the wholesale realm, is nearly non-existent; (6) unscrupulous wholesale rebuilders carefully manage their rebuilding, titling and resale of wrecked vehicles to evade exposure of such histories on titles, and thus conceal such information from CARFAX and other existing commercial databases; and (7) unscrupulous insurance companies and salvage car brokers move vehicles from state to state to avoid more stringent "branding" requirements (thus evading requirements to have vehicle titles "branded"), and to make it more difficult for ultimate purchasers (and law enforcement investigators) to gather full information on the histories of these vehicles.

11.     NMVTIS, by stark contrast, would 1) obtain salvage car data from the most critical and easily the most comprehensive source – the insurance companies, 2) obtain it quickly, 3) obtain it under a protective, national, standard, 4) impose federal and hence federally-enforceable reporting requirements on the insurance companies, 5) provide far more enforceable reporting salvage reporting requirements than existing state laws, 6) make outright evasion of reporting

requirements far more difficult, and 7) make interstate movement of rebuilt vehicles simply ineffective as a method of avoiding reporting requirements.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at Fairway, Kansas on August 27, 2008.

_____
Bernard Brown

DECLARATION OF BERNARD BROWN   Page 6