DEEPAK GUPTA
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street, NW
Washington, DC 20009
Tel.: (202) 588-1000
Fax: (202) 588-7795
Email: dgupta@citizen.org

ERICA L. CRAVEN
LEVY, RAM & OLSON LLP
639 Front Street, 4th Floor
San Francisco, CA 94111
Tel.: (415) 433-4949
Fax: (415) 433-7311
Email: elc@lrolaw.com

*Attorneys for Plaintiffs Public Citizen,
Inc., Consumers for Auto Reliability and
Safety, and Consumer Action*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| PUBLIC CITIZEN, INC., CONSUMERS FOR AUTO RELIABILITY AND SAFETY, and CONSUMER ACTION, | No. CV 08-0833 (MHP) |
| *Plaintiffs,* | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED ANSWER** |
| v. | |
| MICHAEL MUKASEY, Attorney General of the United States, | Date:       September 22, 2008 Time:       2:00 p.m. Place:      Courtroom 15, 18th Floor |
| *Defendant.* | |

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    I.      The Court Should Set Concrete Deadlines By Which the Government
Must Meet Its Statutory Obligations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    II.    The Plaintiffs Have Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          A.     Plaintiffs' Members Suffer Informational Injury. . . . . . . . . . . . . . . 8

          B.     Plaintiffs' Members Suffer An Increased Risk of Harm. . . . . . . . . 10

    III.   The Government's Statute-of-Limitations Defense Is Meritless. . . . . . . . 13

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

ii

## TABLE OF AUTHORITIES

### Cases

*American Canoe Association, Inc. v. City of Louisa Water & Sewer Commission*, 389 F.3d 536 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*American Canoe Association v. EPA*, 30 F. Supp. 2d 908 (E.D. Va. 1998) . . . . . . . . . . 14

*In re American Federation of Government Employees*, 790 F.2d 116 (D.C. Cir. 1986) . 2

*American Insurance Association v. Selby*, 624 F. Supp. 267 (D.D.C. 1985) . . . . . . . . . 13

*Bensman v. U.S. Forest Service*, 408 F.3d 945 (7th Cir. 2005) . . . . . . . . . . . . . . . . . 9, 10

*Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166 (9th Cir. 2002) . . . . . . . . . . 2

*Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765 (9th Cir. 1997) . . . . . . . . . . . . . 16

*Central Delta Water Agency v. United States*, 306 F.3d 938 (9th Cir. 2002) . . . . . 10, 13

*Communities for a Better Environment v. EPA*, 2008 WL 1994898 (N.D. Cal. 2008) .. 3

*Covington v. Jefferson County*, 358 F.3d 626 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . 12

*Center for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d 1322 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Center for Biological Diversity v. Brennan*, 2007 WL 2408901 (N.D. Cal. 2007) .. . 8, 10

*Cummock v. Gore*, 180 F.3d 282 (D.C. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dugong v. Rumsfeld*, 2005 WL 522106 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Earth Island Institute v. Ruthenbeck*, 490 F.3d 687 (9th Cir. 2007) . . . . . . . . . . . . . . . 9

*Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141 (9th Cir. 2000) . . . . . . 10

*Environmental Defense Fund, Inc. v. Browner*, 1995 WL 91324 (N.D. Cal. 1995) . . . 4, 5

*Environmental Protection Information Center v. Pacific Lumber Co.*, 469 F. Supp. 2d 803 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Federal Election Commission v. Akins*, 524 U.S. 11 (1998) . . . . . . . . . . . . . . . . . . . . 7-10

*Felter v. Kempthorne*, 473 F.3d 1255 (D.C. Cir. 2007) .. . . . . . . . . . . . . . . . . . . . . . . . . 14

*Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 2

*Grant v. Gilbert*, 324 F.3d 383 (5th Cir. 2003) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

iii

1    *Hall v. Norton*, 266 F.3d 969 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

2    *Heartwood v. U.S. Forest Service*, 230 F.3d 947 (7th Cir. 2000) . . . . . . . . . . . . . . . . . 9

3    *Humane Society v. Hodel*, 840 F.2d 45 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 13

4    *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977) . . . . . . 7

5    *In re Barr Labs*, 930 F.2d 72 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6    *In re Bluewater Network*, 234 F.3d 1305 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 14

7    *Institute for Wildlife Protection v. U.S. Fish and Wildlife Service*, 2007 WL 4117978 (D.
8    Or. Nov. 16, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

9    *John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750 (2008) . . . . . . . . . . . . . . . 16

     *Massachusetts v. EPA*, 127 S.Ct. 1438 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12
10
     *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc) . . . . . . . . . . . . . . . . . . . . . . . 16
11
     *Mountain States Legal Foundation v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996) . . . . . . 12
12
     *National Parks Conservation Association v. Tennessee Valley Authority*, 480 F.3d 410
13   (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14   *NRDC v. Fox*, 909 F. Supp. 153 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15   *NRDC v. Ruckelshaus*, 1984 WL 6092 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16   *Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846 (9th Cir. 2005) . . . . 10

17   *Presidio Golf Club v. National Park Service*, 155 F.3d 1153 (9th Cir. 1998) . . . . . . . . . 13

18   *Public Citizen v. Chao* 2003 WL 22158985 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 2

19   *Public Citizen v. Chao*, 314 F.3d 143 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

20   *Public Citizen v. Federal Trade Commission*, 869 F.2d 1541 (D.C. Cir. 1989) . . . . . . 7, 11

21   *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440 (1989) . . . . . . . . . . . . . . 8-10

22   *Public Citizen, Inc. v. National Highway Traffic Safety Administration*, 489 F.3d 1279
23   (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     *Southern Appalachian Biodiversity Project v. U.S. Fish and Wildlife Service*, 181 F.
24   Supp. 2d 883 (E.D. Tenn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

25   *Save the Valley, Inc. v. EPA*, 223 F. Supp. 2d 997 (S.D. Ind. 2002) . . . . . . . . . . . . . . . . 15

26   *Schoeffler v. Kempthorne*, 493 F. Supp. 2d 805 (W.D. La. 2007) . . . . . . . . . . . . . . . . . . . 15

27

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

*Sierra Club v. Thomas*, 658 F. Supp. 165 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United Food and Commercial Workers v. Brown Group*, 517 U.S. 544 (1996) . . . . . . . 13

*Village of Elk Grove v. Evans*, 997 F.2d 328 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 12

*Wilderness Soc'y v. Norton*, 434 F.3d 584 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL STATUTES**

5 U.S.C. § 706(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 15

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

49 U.S.C. § 30502(e)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

49 U.S.C. § 33109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**FEDERAL REGULATIONS**

67 Fed. Reg. 17027 (April 9, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

72 Fed. Reg. 22811-01 (April 30, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**OTHER AUTHORITIES**

Jacob Gerson and Anne O'Connell, *Deadlines in Administrative Law*, 156 U. Pa. L. Rev. 923 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Maria Heckel, *Finding the Line Between Action and Inaction*, 2004 Utah L. Rev. 789 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Thomas O. McGarity, *Some Thoguhts on "Deossifying" the Rulemaking Process*, 41 Duke L. J. 1385 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Alan B. Morrison, *OMB Interference with Agency Rulemaking: The Wrong Way to Write a Regulation*, 99 Harv. L. Rev. 1059 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Richard J. Pierce, Jr., *Seven Ways To Deossify Agency Rulemaking*, 47 Admin. L. Rev. 59 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Richard B. Stewart, *Administrative Law in the Twenty-First Century*, 78 N.Y.U. L. Rev. 437 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cass R. Sunstein, *Informational Regulation and Informational Standing: Akins and Beyond*, 147 U. Penn. L. Rev. 613 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Catherine Zaller, *The Case for Strict Statutory Construction of Mandatory Agency Deadlines Under Section 706(1)*, 42 Wm. & Mary L. Rev. 1545 (2001) . . . . . . . . . . . . . . 3

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## STATEMENT OF THE ISSUES

**I.     Remedial Schedule with Concrete Deadlines:** Should the Court set a remedial schedule with concrete deadlines and retain jurisdiction to ensure compliance?

**II.     Standing:** Do the plaintiffs have standing based on their members' inability to access information and increased risk of physical and economic injury?

**II.     Statute of Limitations:**  Is this suit—which seeks "to compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1)—barred by the statute of limitations, even though the government is violating an ongoing duty to act?

## ARGUMENT

### I.     THE COURT SHOULD SET CONCRETE DEADLINES BY WHICH THE GOVERNMENT MUST MEET ITS STATUTORY OBLIGATIONS.

Because the government's motion does not deny that its ongoing failure to implement the National Motor Vehicle Title Information System (NMVTIS) constitutes "agency action unlawfully withheld," 5 U.S.C. § 706(1), the principal question before the Court is one of remedy. The plaintiffs ask the Court to issue an injunction necessary to effectuate the congressional purpose behind the Anti-Car Theft Improvements Act of 1996: to "expedite implementation of the motor vehicle titling information system" by setting an accelerated timeline in light of the government's failure to meet its original statutory deadline. H.R. REP. NO. 104-618, at 2-3 (1996). That legislation, passed in June of 1996, required the Attorney General to implement the database no later than December 31, 1997.

The government, on the other hand, asks this Court to grant no relief at all. The reason it gives is that now, after over a decade of yet more foot-dragging, it is finally taking steps to comply with the law. Specifically, the government says that it is "making significant progress," that consumer access to NMVTIS will be available "by the end of this year," and that it is "preparing to publish a proposed rule" but needs an indefinite amount of time to

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

1

finalize the rule and set a commencement date for the reporting of information to the system. Govt. Mtn. at 21.

To support this argument, the government cites a handful of D.C. Circuit decisions (Govt. Mtn. at 23-24), none of which address the mandatory nature of the deadline here, the specific congressional intent of the 1996 Act, or the approach to statutory-deadline cases employed by the Ninth and Tenth Circuits.[1/]  Although the D.C. Circuit employs a relaxed equitable balancing test even in statutory-deadline cases, *see In re Barr Labs*, 930 F.2d 72 (D.C. Cir. 1991), the Ninth and Tenth Circuits do not. Under Ninth Circuit law, where "Congress has specifically provided a deadline for performance . . . no balancing of factors is required or permitted." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1177 n.11 (9th Cir. 2002); *accord Forest Guardians v. Babbit*, 174 F.3d 1178, 1187-1191 (10th Cir. 1999). Moreover, as we explained in our motion for summary judgment (at 15), injunctive relief *must* be granted where it is necessary to effectuate the purpose behind the statutory deadline and where, as here, "the clear objectives and language of Congress" have "removed

---

[1/]    In *Sierra Club v. Thomas*, for example, Congress had accorded no "special priority" to the rulemakings at issue, "[n]o statutory deadline" had been imposed, and the court could not "perceive in the Act a generalized congressional mandate for EPA to expedite these particular rulemakings." 828 F.2d 783, 797 (D.C. Cir. 1987). In *United Mineworkers*, the court found that the agency had unreasonably delayed in the absence of a statutory deadline and criticized agency's failure to offer a definite remedial schedule. 190 F.3d 545, 556 (D.C. Cir. 1999) ("To advise us that regulations will not issue until 'at least December 2001' is to provide no end-date at all. It is unresponsive to our order to provide a 'definite schedule,' and it offers no assurance that the agency will remedy its continuing violation of the Mine Act."). And in *American Federation of Government Employees*, the court found that the agency had delayed but declined to impose a mandamus remedy because the suit involved the agency's processing of appeals generally, not a single rulemaking or discrete action, and because the agency had published a firm timetable by which the cases would be resolved. 790 F.2d 116, 119 (D.C. Cir. 1986). The government also inexplicably cites *Public Citizen v. Chao*, 314 F.3d 143, 159 (3d Cir. 2002), but there the court found unreasonable delay, "grant[ed] Public Citizen's petition to compel OSHA to proceed expeditiously with its hexavalent chromium rulemaking" and ruled that if the parties failed to reach a "mutually satisfactory timetable, we will order one of our own." In its subsequent order, which the government fails to cite, the court *did* set a timetable with concrete deadlines for agency action. *Public Citizen v. Chao* 2003 WL 22158985 (3d Cir. 2003).

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

1    the traditional discretion of courts in balancing the equities before awarding injunctive

2    relief." *Badgley*, 309 F.3d at 1177-78.[2/]

3        The government's position should be rejected because it has not met its "heavy

4    burden of proving impossibility as a defense to non-compliance with the statutory

5    deadline." *Communities for a Better Environment v. EPA*, 2008 WL 1994898, at *2 (N.D.

6    Cal. 2008). That burden "is especially heavy where, as here [the agency] has in fact ignored

7    that duty for several years." *Id.* at *3. Courts "must carefully scrutinize an agency's claims

8    of impossibility or infeasability." *Id.* "Not surprisingly, courts are typically hesitant to find

9    impossibility or infeasibility in the face of clear congressional desires." Jacob Gersen and

10    Anne O'Connell, *Deadlines in Administrative Law*, 156 U. Pa. L. Rev. 923, 965 n.151

11    (2008).

12        With respect to consumer access, the government does not appear to make any claim

13    of impossibility.  To the contrary, the government maintains that it will provide consumer

14    access "by the end of this year." Govt. Mtn. at 21.  That estimate is not far off from the

15    schedule proposed by the plaintiffs–*i.e.* that the government be required to provide

16    consumer access consistent with the statutory requirements within 60 days of the Court's

17    order. Assuming that the Court is able to issue an injunction one month after the hearing,

18    the deadline proposed by the plaintiffs would be within a week of the government's

19    promised completion date.  The government has been under the same statutory obligation

20    to provide consumer access to NMVTIS since 1992. There is simply no excuse for not

21

22

23    [2/]    *See generally* Catherine Zaller, *The Case for Strict Statutory Construction of Mandatory Agency*
24    *Deadlines Under Section 706(1)*, 42 Wm. & Mary L. Rev. 1545, 1554 (2001) (extensively discussing
      differences between D.C. Circuit case law and approach followed by the Ninth and Tenth Circuits;
25    "Although the Circuit Court for the District of Columbia has allowed agency discretion in the face of
      blatant violations of a statutory deadline, the Ninth and Tenth Circuits have recently decided that if there
26    is a mandatory deadline, the agency must abide by it."); Maria Heckel, *Finding the Line Between Action*
      *and Inaction*, 2004 Utah L. Rev. 789, 791-92 (2004) (discussing divergent approaches of the D.C. Circuit,
27    on the one hand, and Ninth and Tenth Circuits, on the other hand).

28    *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
      Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

requiring compliance with that obligation by a firm deadline. Even when judged by the government's own estimates, the deadline proposed by the plaintiffs is a reasonable one.

With respect to the required rulemaking and commencement date, the government makes no showing of impossibility and proposes no specific time frame. Instead, the government argues that it should be given an indefinite amount of time to complete the rulemaking process based on declarations by Justice Department officials who contend that an unspecified amount of time is required to study comments and go through several rounds of internal review. Here, as in other delay cases, "the thrust of the declaration[s] is really no more than 'further study always makes everything better.'" *Envt'l Defense Fund, Inc. v. Browner*, 1995 WL 91324, at *9 (N.D. Cal. 1995) (Henderson, J.) (quoting *Sierra Club v. Ruckelshaus*, 602 F.Supp. 892, 899 (N.D. Cal. 1984)). A declaration "pointing out that promulgating regulations will be a complex process requiring consultation with other agencies and allocations of time from already busy staff" is not enough to show impossibility. *Id.*

In addition to generalized statements about the supposed complexity of the rule and the need for study, one specific reason that the government gives is the alleged need for review by the White House Office of Management and Budget (OMB) under Executive Order 12,866. Gov't Mtn. at 21-22. As explained in our motion for summary judgment (at 16-17), courts have consistently refused to grant the government additional time for OMB review where the agency is in ongoing violation of a statutory deadline: "OMB review is not only unnecessary, but in contravention of applicable law." *NRDC v. Ruckelshaus,* 1984 WL 6092, at *4 (D.D.C. 1987).

Indeed, even in cases in which the agency has not already withheld action required by law, OMB review "imposes costly delays that are paid for through the decreased health and safety of the American public." Alan B. Morrison, *OMB Interference with Agency Rulemaking: The Wrong Way to Write a Regulation*, 99 Harv. L. Rev. 1059, 1064 (1986).

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

4

1  "While OMB ponders the validity of a proposed rule, or the agency's responses to public

2  comments, the failure to issue health and safety rules is certain to mean deaths and injuries

3  that could be avoided." *Id*. at 1065; *see also* Richard B. Stewart, *Administrative Law in the*

4  *Twenty-First Century*, 78 N.Y.U. L. Rev. 437, 447 (2003) (noting that "OMB regulatory

5  analysis" causes "paralysis by analysis"); Richard J. Pierce, Jr., *Seven Ways To Deossify*

6  *Agency Rulemaking*, 47 Admin. L. Rev. 59, 62 (1995) ("OMB review of major rules has had

7  three direct effects on agency rulemaking: increased costs, increased delay, and increased

8  inter-branch friction."); Thomas O. McGarity, *Some Thoughts on "Deossifying" the*

9  *Rulemaking Process*, 41 Duke L.J. 1385, 1428-36 (1992) (describing incidents of regulatory

10  delay as a result of OMB review). Because it is not required by law and often serves only as

11  a justification for delay and political interference, OMB review provides no legitimate

12  excuse for noncompliance with the government's legal obligations.

13        Once the government's excuses are swept aside, we are left with the long-ignored

14  timetable set by Congress. *See Sierra Club v. Thomas*, 658 F.Supp. 165, 171 (N.D. Cal.

15  1987) ("[I]f the statutory deadline has passed by the time the court issues its decree, the

16  [agency] remains obligated to issue regulations within the time frame mandated by

17  Congress."); *Browner*, 1995 WL 91324, at *9 ("As a starting point for setting a compliance

18  timetable, courts have first turned to the time frame mandated by Congress . . . Unless the

19  [agency] can show that compliance with its statutory obligations within that time is

20  impossible or infeasible, it is obligated to issue regulations within that period."). In 1996,

21  when the government failed to meet its statutory deadline, Congress gave the agency one

22  year—until the end of 1997—to undertake every one of the actions at issue in this lawsuit:

23  issue regulations, set a commencement date for information reporting to the database, and

24  provide consumer access.  It has now been more than ten years since that deadline and six

25  months since this lawsuit was filed. Moreover, as explained in our motion for summary

26  judgment (at 13 n.20), the government has repeatedly stated that it has been in the process

27

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

of examining the issue and drafting rules over the past decade, and thus has had more than enough time to study every aspect of the problem. Under those circumstances, the schedule proposed by the plaintiffs is quite reasonable and in fact provides more time for notice and comment that is required under the APA. Factoring in the additional time necessary to hold a hearing on these motions and for the Court to issue a decision, the government would likely have at least four additional months between now and the ultimate commencement date for information reporting under the new regulations.

Finally, in assessing the government's arguments concerning the proposed timetable, this Court should consider the example of the related National Stolen Passenger Motor Vehicle Information System (NSPMVIS), a database of stolen-vehicle information that the government was required to establish under the Anti-Car Theft Act of 1992 within one year of the Act. *See* 49 U.S.C. § 33109 (requiring Attorney General to establish "[n]ot later than July 25, 1993," a database containing "vehicle identification numbers of stolen passenger motor vehicles and stolen passenger motor vehicle parts"). Despite its July 1993 deadline, the Attorney General did not issue a Notice of Proposed Rulemaking regarding the NSPMVIS until 2002. *See* 67 Fed. Reg. 17027 (April 9, 2002). The NPRM, issued in April of that year, requested comments by June 10, 2002. *Id.* Six years later, the Attorney General still has not issued a final version of the rule. As with NMVTIS, the government has simply listed the NSPMVIS rulemaking on its regulatory agenda and has stated that it plans to eventually complete the rulemaking. *See, e.g.,* 72 Fed. Reg. 22811-01 (April 30, 2007). Given the Attorney General's long history of delay, this Court should not defer to promises of future compliance but should instead compel the agency action that has been unlawfully withheld by setting firm deadlines based on the clear intent of Congress to expedite implementation.

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

6

1

2    ## II.    THE PLAINTIFFS HAVE STANDING.

3        As the government correctly acknowledges, an organization has standing to sue on

4    behalf of its members when (a) "at least one" of its members would have standing to sue in

5    his or her own right; (b) the interest the organization seeks to protect is germane to its

6    purposes; and (c) the claims made and relief sought do not require the individual

7    participation of the members. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S.

8    333, 343 (1977).  Focusing on the first prong of the *Hunt* test, the government contends that

9    Public Citizen, CARS, and Consumer Action all lack standing because they have not suffered

10   a sufficiently concrete injury. But the government overlooks the nature of the injury to the

11   plaintiffs' members, which "consists of their inability to obtain information." *FEC v. Akins*,

12   524 U.S. 11, 21 (1998). As a result of the government's ongoing failure to implement

13   NMVTIS, consumers are denied access to critical auto-safety information that the

14   government is required by statute to compile and disclose to the car-buying public. "[A]

15   plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must

16   be publicly disclosed pursuant to a statute." *Id.* The government also overlooks the fact that

17   both Congress and the Justice Department have repeatedly concluded that the failure to

18   implement NMVTIS creates a serious and unacceptable increased risk of physical and

19   economic harm to consumers due to unsafe automobiles.

20       In this case, both types of injuries—informational injury and increased risk of

21   harm—satisfy the traditional Article III requirements that the plaintiffs demonstrate a

22   concrete and particularized injury that is either actual or imminent, is fairly traceable to the

23   defendant, and is redressable by a favorable decision. *Massachusetts v. EPA*, 127 S.Ct. 1438,

24   1453 (2007). "Only one of the [organizations] needs to have standing," *id.*, and "it is not

25   necessary for us to know the names of injured persons in order to be assured beyond any

26   reasonable doubt that they exist, and that the organizations to which they belong may

27   pursue this action on their behalf." *Public Citizen v. FTC*, 869 F.2d 1541, 1551-52 (D.C. Cir.

28

1   1989). Plaintiffs have filed declarations demonstrating that all three organizations have the

2   requisite standing, both on behalf of their members and themselves.[3]

3   **A.    Plaintiffs' Members Suffer Informational Injury.**

4        "It is well settled that plaintiffs may suffer injury as a result of a denial of

5   information to which they are statutorily entitled." *Ctr. for Biological Diversity v. Brennan*,

6   2007 WL 2408901, at *7 (N.D. Cal. 2007) (holding that environmental groups had standing

7   to sue the federal government, under APA § 706(1), for failure to meet a statutory deadline

8   to compile and release information on climate-change research).  For example, in *Public*

9   *Citizen v. U.S. Department of Justice*, the Supreme Court held that Public Citizen had

10  standing to challenge the Justice Department's failure to provide access to information, the

11  disclosure of which was allegedly required by the Federal Advisory Committee Act, because

12  the inability to obtain such information "constitutes a sufficiently distinct injury to provide

13  standing to sue." 491 U.S. 440, 449 (1989). The Court expanded on that holding in *FEC v.*

14  *Akins*, concluding that individual voters had standing to sue the FEC because the agency's

15  determination that an interest group was not a "political committee" under the Federal

16  Election Campaign Act potentially deprived voters of information that would otherwise

17  have to be disclosed under the Act. 524 U.S. at 24-25; *see generally* Cass R. Sunstein,

18  *Informational Regulation and Informational Standing: Akins and Beyond*, 147 U. Penn.

19  L. Rev. 613 (1999).  Following *Public Citizen* and *Akins*, the federal circuits have identified

20  informational injuries sufficient to confer standing in a wide variety of statutory contexts,

21

22

23

24  [3]      *See* Declarations of Mary and Robert Ellsworth (CARS members); Julia Graff (Public Citizen
25  member); Ricardo T. Perez (Consumer Action member); Mark H. Steinbach (Public Citizen and CARS
    member); Bernard E. Brown (Public Citizen member); Steven Taterka (CARS member); Joan Claybrook
26  (President of Public Citizen); Rosemary Shahan (President of CARS); Joseph Ridout (Consumer Services
    Manager of Consumer Action).  Also submitted herewith is the Declaration of William Brauch, Director of
27  the Consumer Protection Division of the Iowa Attorney General's Office.

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

1  from government-sunshine and election law to health, safety, and environmental

2  regulation.[4/]

3       In this case, the informational standing inquiry is easy. *See id.* at 654 ("After *Akins*,

4  there are, with respect to information, many easy cases."). The plaintiffs have submitted

5  declarations from several of plaintiffs' members who are prospective automobile

6  purchasers. *See, e.g.,*. Ellsworth Decl., Graff Decl., Perez Decl., Steinbach Decl., Brown Decl.

7  The Attorney General is required by the Anti-Car Theft Act to compile vehicle-history

8  information from insurers and junk and salvage yards and to release that information to

9  such consumers. *See* 49 U.S.C. § 30502(e)(C) (providing that the Attorney General or

10  designated system operator "shall make available . . . to a prospective purchaser of an

11  automobile on request of that purchaser . . . information in the System about that

12  automobile."). The statute constitutes a legal entitlement to information because it

13  "affirmatively obligates the Government to provide access" to the information identified by

14  the statute. *Cummock v. Gore*, 180 F.3d 282, 289 (D.C. Cir. 1999). Here, as in *Akins*, the

15  injury in fact that plaintiffs have suffered "consists of their inability to obtain information"

16  that, on plaintiffs' view of the law, the statute requires the Attorney General "make public."

17  *Id.* at 21. That this harm may be "widely shared" by prospective automobile purchasers does

18

---

19  [4/]    *See, e.g., American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542

20  (6th Cir. 2004) (ongoing failure to comply with monitoring and reporting requirements of the Clean Water Act created informational injury); *Heartwood v. U.S. Forest Service*, 230 F.3d 947, 952 n.5 (7th Cir.

21  2000) (because the National Environmental Policy Act requires environmental assessments "to provide stakeholders with information necessary to monitor agency activity," failure to perform an assessment

22  creates "a cognizable injury-in-fact for plaintiffs who are deprived of this information"); *Public Citizen v. FTC*, 869 F.2d at 1543 (plaintiffs have standing where "they are being deprived of information and

23  warnings that will be of substantial value to them and to which they are legally entitled" under the Comprehensive Smokeless Tobacco Health Education Act). The circuits have uniformly held that "[t]he

24  inability to obtain information required to be disclosed by statute constitutes a sufficiently concrete and palpable injury to qualify as an Article III injury-in-fact." G*rant v. Gilbert*, 324 F.3d 383, 387 (5th Cir.

25  2003); *see Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 693 (9th Cir. 2007) (recognizing that "informational injuries may be the basis for injury in fact for standing purposes"), *cert. granted on other*

26  *grounds,* 28 S. Ct. 1118 (2008); *Bensman v. U.S. Forest Service*, 408 F.3d 945, 955 (7th Cir. 2005) (finding "ample authority" for view that "informational injury" is "sufficiently concrete harm to satisfy the

27  constitutional standing inquiry.").

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

1    not defeat standing. *Id.* at 23-24; *see also Public Citizen v. DOJ*, 491 U.S. at 449-450 ("fact

2    that other citizens or groups of citizens might make the same complaint" does not diminish

3    the injury).

4        The plaintiffs' informational injuries also easily satisfy the elements of traceability

5    and redressibility. *See Akins*, 524 U.S. at 25 (plaintiffs "readily satisf[y] the standing

6    requirements" where they suffer an injury  because they are deprived of information to

7    which they are entitled, that injury is "directly caused" by the government's failure to

8    implement NMVTIS, and the injury is "redressable by the relief [sought]—namely, access

9    to" the information); *American Canoe*, 389 F.3d at 543 ("because the injury itself is lack of

10   information, it necessarily follows that the defendants' actions in failing to follow its

11   monitoring and reporting obligations, which deprived Kash of information, 'caused' or is

12   'fairly traceable' to the alleged injury."); *Brennan*, 2007 WL 2408901, at *11-12.

13   **B.    Plaintiffs' Members Suffer An Increased Risk of Harm.**

14       In addition to their informational injury, the plaintiffs' members also have standing

15   in this case for another, independent reason: The government's failure to implement

16   NMVTIS exposes them to an increased risk of harm of physical and economic injury

17   associated with unsafe and unreliable automobiles. *See Ocean Advocates v. U.S. Army

18   Corps of Engineers*, 402 F.3d 846, 859-60 (9th Cir. 2005) ("[A]n increased risk of harm

19   can itself be injury in fact sufficient for standing.").[5/]   That risk encompasses both the

20   dangers caused by future car purchases and the risks associated with deferring future

21

22

23   [5/]    *See Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1151 (9th Cir. 2000) ("It is not
         necessary for a plaintiff challenging violations of rules designed to reduce the *risk* of pollution to show the

24   presence of *actual* pollution in order to obtain standing.") (citing *Friends of the Earth v. Laidlaw Envtl.
         Servs.*, 528 U.S. 167, 180 (2000); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d

25   149, 155-61 (4th Cir. 2000) (en banc)); *Cent. Delta Water Agency v. United States*, 306 F.3d 938, 943-45,
         947-51 (9th Cir. 2002) ("[T]he possibility of future injury may be sufficient to confer standing on plaintiffs;

26   threatened injury constitutes 'injury in fact.'"); *Hall v. Norton*, 266 F.3d 969, 973-74, 976-77 (9th Cir.
         2001) ("[E]vidence of a credible threat to the plaintiff's physical well-being from airborne pollutants falls

27   well within the range of injuries to cognizable interests that may confer standing.").

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

purchases.[6/] "In this case, the concreteness of the asserted injury is evident: Injuries from car accidents—including death, physical injuries, and property damage—are plainly concrete harms under the Supreme Court's precedents." *Public Citizen, Inc. v. National Highway Traffic Safety Admin*., 489 F.3d 1279, 1292 (D.C. Cir. 2007). "Injuries from car accidents are particularized—each person who is in an accident is harmed personally and distinctly. The Supreme Court has made clear, moreover, that the fact that a number of people could be similarly injured does not render the claim an impermissible generalized grievance.'" *Id.*

This leaves only the question of the likelihood of the increased harm, an issue on which the administrative record provides ample evidence because Congress and the Justice Department have both spoken directly on it. When it enacted legislation requiring the government to expedite its implementation of NMVTIS, Congress made a judgment that timely implementation "would prevent thieves from obtaining legitimate vehicle ownership documentation and deter other serious consumer fraud related to transfer of motor vehicle ownership" and concluded that the costs of such fraud for consumers "remain unacceptably high, due in part to the failure to implement [NMVTIS]." H.R. REP. NO. 104-618, at 2-3 (1996). Congress's judgment on that question of predictive fact is entitled to deference. *See Public Citizen v. FTC*, 869 F.2d at 1550 n.16 ("In analyzing questions of standing, we have frequently noted the propriety of judicial deference to congressional judgments of likely cause-and-effect relationships."); *cf. Ctr. for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d 1322, 1334-35 (D.C. Cir. 1986) ("If setting a higher

---

[6/]    *Compare* Ellsworth Decl. ¶ 4-8 (describing their teenage son's death in a car crash due to undisclosed vehicle history and stating: "We have another son. Before we purchase a vehicle for him, we want to know its complete history and particularly whether it was ever totaled in a crash, flood, or other incident."), *and* Graff Decl. ¶ 4 (expressing concern "that the government's failure to establish the database makes it more likely that I will be exposed to title-washing and similar types of auto fraud and that the car I purchase might actually end up being worth less than it seems"); *with* Taterka Decl. ¶ 10 (expressing "reluctan[ce] to make a purchase" given lack of reliable vehicle-history information; "Consequently I continue to drive vehicles which may be nearing the end of their useful lives."); *see also* Brauch Decl. ¶ 6-7.

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

1   standard cannot result in vehicles with increased fuel efficiency, then the entire regulatory

2   scheme is pointless."). The Justice Department's own cost-benefit analysis of NMVTIS,

3   which examined in detail the likely benefits in terms of reduced consumer fraud, confirms

4   Congress's empirical assessment of the increased risks to consumers caused by the

5   government's failure to implement NMVTIS, risks that would relieved if NMVTIS were

6   implemented. *See* Logistics Management Institute, NATIONAL MOTOR VEHICLE TITLE

7   INFORMATION SYSTEM COST-BENEFIT ANALYSIS (2001) at AR 621-627 (quantifying benefits

8   to consumers in the form of "safer vehicles" and "greater value for their money if they are

9   paying fair market value for a clean vehicle."). This evidence is sufficient to show that the

10  plaintiffs' members have injuries in fact that are fairly traceable to the government's

11  inaction and that may be redressed by a favorable judgment. *See Ctr. for Auto Safety*, 793

12  F.3d at 1334 (consumers had standing to challenge regulations reducing fuel economy

13  standards "because the vehicles available for purchase will likely be less fuel efficient than

14  if the fuel economy standards were more demanding").[7]

15                                   * * *

16          Because the plaintiffs' members have standing to sue in their own right, because the

17  plaintiffs' aim of furthering consumer protection and safety with respect to automobiles is

18  clearly related to the subject of the litigation (*see* Claybrook Decl., Shahan Decl., Ridout

19  Decl.), and because plaintiffs seek only injunctive relief that does not require the

20

21

22  _____

    [7]     Although courts have adopted divergent standards for the requisite risk of harm based on the

23  nature and severity of the injury, the showing here would be sufficient under any standard. *Compare Hall
    v. Norton*, 266 F.3d 969, 976 (9th Cir. 2001) ("evidence of a credible threat to the plaintiff's physical well-

24  being" is sufficient); *Village of Elk Grove v. Evans*, 997 F.2d 328, 329 (7th Cir. 1993) ("The injury is of
    course probabilistic, but even a small probability of injury is sufficient to create a case or controversy—to

25  take a suit out of the category of the hypothetical—provided of course that the relief sought would, if
    granted, reduce the probability."); *Massachusetts v. EPA*, 127 S. Ct. at 1458 n.23; *and Covington v.

26  Jefferson County*, 358 F.3d 626, 652-53 (9th Cir. 2004) (Gould, concurring) *with Mountain States Legal
    Found. v. Glickman*, 92 F.3d 1228, 1234 (D.C. Cir. 1996) (requiring proof of "substantial" increased risk,

27  based on record evidence or experts); *and Public Citizen v. NHTSA*, 489 F.3d at 1292 (same).

28  *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
    Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

                                        12

participation of individual members, all three prongs of the *Hunt* test for associational standing are satisfied.[8]

## II. The Government's Statute-of-Limitations Defense is Meritless.

Both in its motion for judgment on the pleadings and in its motion for leave to amend, the government raises yet another procedural obstacle: the statute of limitations. Although, for reasons that may be obvious, there is no limitations period specifically applicable to unreasonable-delay claims under the APA, the government asks this Court to mechanically apply the general six-year limitations period for actions against the federal government, 28 U.S.C. § 2401(a), and conclude that this action is time-barred. The government, in other words, asks the Court to rule in its favor not because it has delayed too little, but *because it has delayed too long*. Under the government's theory, an agency may inform the public that it plans to comply with its statutory obligations (whether in good faith or not) and then, as soon as six years have gone by, evade those ongoing legal

---

[8] The second prong of the *Hunt* test is "undemanding," requiring no more than "mere pertinence between litigation subject and organizational purpose." *Presidio Golf Club v. Nat'l Park Serv.*, 155 F.3d 1153, 1159 (9th Cir. 1998) (citing *Humane Soc'y v. Hodel*, 840 F.2d 45, 58 (D.C. Cir. 1988)); *see Am. Ins. Ass'n v. Selby*, 624 F. Supp. 267, 271 (D.D.C. 1985) ("[A]n association's litigation interests must be truly unrelated to its organizational interests before a court will declare that those interests are not germane."). The government (at 11 n.6) does not challenge the germaneness of Public Citizen's and CARS' organizational purposes  and because a single plaintiff's standing is sufficient, there is no need to go no further. But the government bizarrely singles out Consumer Action, claiming (at 11:14-12:2) that its "interest in protecting its members from auto fraud" is "incidental." That argument is not only extraneous, but wrong. See Ridout Decl. ¶ 3 ("Since Consumer Action's inception in 1971, helping individuals navigate the used-car buying process has been integral to our mission.").

As for the third prong, the introduction to the government's brief (at 2:7-9) suggests it will be contested, but the suggestion is never followed up. In any event, the individual-participation prong is "merely prudential," and is "designed to promote efficiency," mainly by weeding out suits that require individual proof of damages. *Cent. Delta Water Agency v. United States,* 306 F.3d 938, 951 n.9 (9th Cir. 2002). "[I]ndividual participation is not normally necessary when an association seeks prospective or injunctive relief for its members," *United Food and Commercial Workers v. Brown Group*, 517 U.S. 544, 535-37, 546 (1996), and "the declaratory and injunctive relief requested" in this case "is clearly not of a type that requires the participation of any individual member." *Humane Soc'y*, 840 F.2d at 53.

Finally, the government also challenges the plaintiffs' organizational standing—the groups' ability to sue on behalf of themselves—but the Court need not reach that issue. *See Envt'l Protection Info. Ctr. v. Pacific Lumber Co.*, 469 F. Supp. 2d 803, 814 (N.D. Cal. 2007) (Patel, J.) ("Because EPIC need only demonstrate that it has standing on behalf of its members and has done so adequately, the court will not address PALCO's organizational standing arguments.").

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

1    obligations and remain free of judicial oversight. Even leaving aside thorny problems that

2    would arise concerning when exactly a claim begins to accrue, that is a startling result—one

3    that appears to directly contradict the intent of section 706(1) of the APA.

4    The first problem for the government is that its defense—which it did not raise in its

5    answer to the complaint or at the case management conference, *see* Answer at 1 (Doc. # 6);

6    Joint Case Management Statement at 6 (Doc. # 13)—fails as a matter of law, and so the

7    government's motion to amend should be denied on the basis of futility. *See Bonin v.*

8    *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the

9    denial of a motion for leave to amend."); *California ex rel. Cal. Dept. of Toxic Substances*

10   *Control v. Neville Chem. Co.*, 358 F.3d 661, 673 (9th Cir. 2004); ("Futility includes the

11   inevitability of a claim's defeat on summary judgment."). The government acknowledges

12   that "courts have criticized the assertion of a limitations defense in a delay case" as "grossly

13   inappropriate," in part because such a defense would allow a federal agency to "immunize

14   its allegedly unreasonable delay from judicial review." Govt. Mtn. for Judg. at 21-22. That

15   is an understatement. In fact, the federal courts have overwhelmingly rejected the

16   suggestion that federal agencies may shield themselves from judicial review of failures to

17   meet ongoing statutory obligations by asserting statute-of-limitations defenses to claims

18   that agency action has been unreasonably delayed or unlawfully withheld.[9]

19   ────────────

20   [9]    **Courts of Appeals:** *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007) ("This court has
     repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) to 'compel agency action

21   unlawfully withheld or unreasonably delayed' are time-barred if initiated more than six years after an
     agency fails to meet a statutory deadline."); *Nat'l Parks Conservation Ass'n v. Tennessee Valley Auth.*,

22   480 F.3d 410, 416-17 (6th Cir. 2007) ("[W]e conclude this case presents a series of discrete violations
     rather than a single violation that may or may not be 'continuing' in nature. Courts have long

23   distinguished continuing violations, which toll the applicable statutes of limitations, from repetitive
     discrete violations, which constitute independently actionable individual causes of action."); *Wilderness*

24   *Soc'y v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006) ("The Society's complaint alleges continuing
     violations by the Government. It does not complain about what the agency has done but rather about what

25   the agency has yet to do."); *In re United Mine Workers of America Intern. Union*, 190 F.3d 545, 549 (D.C.
     Cir. 1999) ("Because the UMWA does not complain about what the agency has done but rather about what

26   the agency has yet to do, we reject the suggestion that its petition is untimely and move to a consideration
     of the merits."); *In re Bluewater Network*, 234 F.3d 1305, 1314 (D.C. Cir. 2000) ("faced with a clear

27                                                                                         (continued...)

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

These courts have reached that conclusion for three independent, complementary reasons. First, they have held that, given the nature of the government's ongoing violation of the law, the statute of limitations is not triggered at all. *See, e.g., Nat'l Parks Conservation Ass'n v. Tennessee Valley Auth.*, 480 F.3d at 416-17; *S. Appalachian Biodiversity Project v*, 181 F. Supp. 2d at 887 ("In short, the statute of limitations has never commenced to run."). Second, they have held that even if the statute has begun to run, the continuing-violations doctrine precludes its application. *See, e.g., Am. Canoe Ass'n*, 30 F. Supp. 2d at 925 ("EPA's delay is better understood as a continuing violation, which plaintiffs may challenge at any time provided the delay continues."); *Schoeffler*, 493 F. Supp. 2d at 817-21. And third, based on the policies behind statutes of limitations generally, the APA, and the specific statutes at issue, the courts have declined to read a general statute of limitations in a manner that would eviscerate a specific ongoing statutory obligation and thus immunize illegal conduct. *See, e.g., NRDC v. Fox*, 909 F. Supp. at 159-60.

Without analyzing these cases, the government asks this Court to reject the consensus approach, pointing to "a district court in this Circuit [that] has refused to be swayed by such logic." Govt. Mtn. for Judg. at 21-22 (citing *Inst. For Wildlife Prot. v. U.S. Fish and Wildlife Serv.*, 4118136, at *8 (D. Or. July 25, 2007). But what the government doesn't disclose is that the decision it cites is a magistrate's report that was subsequently

---

⁹/    (...continued)
statutory mandate, a deadline nine-years ignored, and an agency that has admitted its continuing recalcitrance," challenge was timely).

**District Courts:** *Schoeffler v. Kempthorne*, 493 F.Supp.2d 805, 814-22 (W.D. La. 2007) ("The Secretary's obligation to follow the law . . . did not cease simply because the proscribed deadline for compliance passed."); *Save the Valley, Inc. v. EPA*, 223 F. Supp. 2d 997, 1001 n.1 (S.D. Ind. 2002) ("[A] failure to act cannot logically ever trigger a statute of limitations."); *S. Appalachian Biodiversity Project v. U.S. Fish and Wildlife Serv.*, 181 F.Supp.2d 883, 887 (E.D. Tenn. 2001) ("The statute of limitations commences to run anew each and every day that the Service does not fulfill the affirmative duty required of it."); *Am. Canoe Ass'n v. EPA*, 30 F. Supp. 2d 908, 925 (E.D. Va. 1998) ("Plaintiffs' § 706(1) claim of unreasonable or unlawful delay is not time-barred, however, since application of a statute of limitations to a claim of unreasonable delay is grossly inappropriate, in that it would mean that EPA could immunize its allegedly unreasonable delay from judicial review simply by extending that delay for six years."); *NRDC v. Fox*, 909 F. Supp. 153, 159-60 (S.D.N.Y. 1995) ("The practical effect of imposing a statute of limitations in a suit such as this is to repeal the mandatory duties established by Congress.")

*Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

1    *overruled* by the district court. *See Institute for Wildlife Protection v. U.S. Fish and*

2    *Wildlife Service*, 2007 WL 4117978 (D. Or. Nov. 16, 2007) (Brown, J.). Both the district

3    judge, in a particularly thorough opinion, and the magistrate judge recognized that "the

4    weight of authority supports Plaintiff's contention that either the statute of limitations is

5    not applicable to cases of agency inaction or that each day's inaction by [the agency] is a

6    separate violation that triggers the statute of limitations anew. *Id*. at *4 (citing cases).

7          The second problem for the government  is that § 2401(a) cannot be characterized

8    as "jurisdictional" under binding Ninth Circuit precedent, and thus does not foreclose

9    application of the continuing violations doctrine. *See Cedars-Sinai Med. Ctr. v. Shalala*, 125

10   F.3d 765 (9th Cir. 1997) ("[W]e hold that § 2401(a)'s six-year statute of limitations is not

11   jurisdictional, but is subject to waiver.") (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S.

12   89, 95 (1990)); *see Dugong v. Rumsfeld*, 2005 WL 522106, at *5 (N.D. Cal. 2006) (Patel,

13   J.).   The government claims that a new decision, *John R. Sand & Gravel Co. v. United*

14   *States*, 128 S. Ct. 750 (2008), "casts doubt on the continued viability" of *Cedars-Sinai*.

15   Govt. Mtn. for Judg. at 19. But mere "doubt" is not enough; district courts may only depart

16   from Ninth Circuit precedent when intervening authority is "clearly irreconcilable," *Miller*

17   *v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), a standard the government does

18   not even attempt to satisfy. In any event, the two decisions are fully compatible: the

19   Supreme Court in *Sand* actually *reaffirmed* the "general rule," announced in *Irwin* and

20   followed in *Cedar-Sinai*, that limitations periods applicable to the government are

21   presumptively subject to equitable tolling. *Sand*, 128 S. Ct. at 755. The Court held only that

22   this presumption gives way in the face of "a definitive earlier interpretation of the

23   statute"—in that case, the special statute governing the Court of Federal Claims, which had

24   been strictly interpreted since 1883. *Id*. (explaining that the statute in *Irwin*, "while similar

25   to the present statute in language, is unlike the present statute in the key respect that the

26   Court had not previously provided a definitive interpretation."). Here, the only applicable

27

28   *Public Citizen v. Mukasey*, No. CV 08-0833 (MHP)
     Plaintiffs' Opposition to Defendant's Motions for Judgment on the Pleadings and to Amend

"definitive interpretation" of § 2401(a) is the Ninth Circuit's, which holds that the limitations period is *not* jurisdictional.

## CONCLUSION

For the foregoing reasons, the Attorney General should be declared to have violated the Anti-Car Theft Act of 1992, the Anti-Car Theft Improvements Act of 1996, and the Administrative Procedure Act in withholding the actions necessary to establish the National Motor Vehicle Title Information System within the time frame mandated by Congress. The Court should order the Attorney General to complete its responsibilities according to the remedial schedule proposed by the plaintiffs.

Dated: September 2, 2008                    Respectfully submitted,

*/s/ Deepak Gupta*

_____
DEEPAK GUPTA
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-1000
(202) 588-7795 (fax)
Email: dgupta@citizen.org

ERICA L. CRAVEN
Levy, Ram & Olson LLP
639 Front Street, 4th Floor
San Francisco, CA 94111
(415) 433-4949
(415) 433-7311 (fax)
Email: elc@lrolaw.com

*Counsel for Plaintiffs*