United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PUBLIC CITIZEN, INC. et al., | No. C 08-0833 MHP |
| Plaintiffs, | |
| v. | **MEMORANDUM & ORDER** |
| MICHAEL MUKASEY, | Re: Cross Motions for Summary Judgment; Defendant's Motion to File an Amended Answer |
| Defendant. | |

Plaintiffs, Public Citizen, Inc., Consumers for Auto Reliability and Safety, and Consumer Action, filed the present action on behalf of themselves and their members to compel the Attorney General to implement the National Motor Vehicle Title Information System ("NMVTIS") as Congress mandated in 49 U.S.C. § 30502(a). On September 30, 2008, the court granted plaintiffs' motion for summary judgment and issued a time line for the government's compliance. This memorandum and order follows that order, which was expedited given the time constraints imposed on the government. The court addresses both plaintiffs' and defendant's arguments and submissions in their cross motions for summary judgment and defendant's motion to file an amended answer herein. For the reasons set forth below, the court provides this supplemental ruling as follows.

BACKGROUND

In 1992 Congress passed the Anti-Car Theft Act to create a national public electronic database of vehicle history including information gathered from States, insurance companies, and junk and salvage yards called the National Motor Vehicle Title Information System (NMVTIS).

Pub. L. 102-519, §§ 202-04, 106 Stat. 3390-93. The goal of NMVTIS is to provide individuals, States, law-enforcement officials, prospective purchasers of automobiles, and insurers with "instant and reliable access" to motor vehicle history information. Complaint ¶ 14. Such motor vehicle history information includes not only the validity of a vehicle's title, but also its mileage and theft or damage history, which would indicate whether the vehicle has been branded as a junk or salvage vehicle. Complaint ¶ 15; 49 U.S.C. § 30502(a). NMVTIS is meant to protect the public from being "placed at risk by purchasing an unsafe motor vehicle." See Burch Dec. ¶¶ 7, 8.

The deadline for the implementation of this database by the Secretary of Transportation was January 31, 1996. Complaint ¶ 2; Pub. L. 102-519 §§ 202-04, 106 Stat. 3390-93. The NMVTIS was not implemented by that deadline. Complaint ¶¶ 3, 23 (citing H.R. Rep. No. 104-618, at 2-3 (1996)). Congress responded to this failure to act on the part of the Department of Transportation by passing new legislation, the Anti-Car Theft Improvements Act of 1996. Complaint ¶ 22. The Anti-Car Theft Improvements Act transferred responsibility for the database from the Secretary of Transportation to the Attorney General and extended the deadline for establishing the NMVTIS. Complaint ¶¶ 3, 24 (citing the Anti-Car Theft Improvements Act, Pub L. 104-152, 49 U.S.C. §§ 30501-30505). The NMVTIS was to be implemented "no later than December 31, 1997." 49 U.S.C. § 30502(a).

Under the statute, the Attorney General is required to "establish by regulation procedures and practices to facilitate reporting [of vehicle information by insurance carriers and junk and salvage yards] in the least burdensome and costly fashion;" establish a commencement date for the monthly reporting of that information for insurance carriers; and provide access to NMVTIS to prospective purchasers. 49 U.S.C. §§ 30504(a)(b) & (c); 49 U.S.C. § 30502(e)(C). The information is to be made available to assist with efforts to prevent the introduction of stolen vehicles and parts into interstate commerce. 49 U.S.C. § 30502(a)(2). As of the filing of this action, the Attorney General had not established the regulations to facilitate the reporting of that vehicle information, nor the commencement date, and prospective purchasers of automobiles do not have access to NMVTIS. Joint Case Management Statement at 1:1-2:3. Since the filing of this action, however, defendant has made some progress. Specifically, the Attorney General has "invited states to apply for funds to

participate in NMVTIS," "organized and held meetings with various NMVTIS stakeholders," and most recently has published a proposed rule in the Federal Register. Burch Dec. ¶¶ 11-14; Gormsen Dec. ¶¶ 17-18; National Motor Vehicle Title Information System (NMVTIS), 73 Fed. Reg. 54544 (proposed September 22, 2008) (to be codified at 28 C.F.R. pt. 25).

The process for implementing NMVTIS is potentially lengthy. Before any proposed regulation is finalized, it must go through various stages of review and be subject to public notice and comment. See Gormsen Dec. ¶¶ 2-3, 10-12. The Administrative Procedure Act, 5 U.S.C. § 5533(d), requires at least thirty days for the public to review a proposed regulation. Once it has been reviewed by the public, the draft rule is again subject to internal review. Id. ¶ 13. Only after this exhaustive review can the rule be published as a final rule in the Federal Register. Id. ¶ 15.

On May 13, 2008 the Attorney General's proposed rule for NMVTIS was submitted to the OMB. Id. ¶ 17. On July 24, 2008, the OMB returned the proposed rule to the Attorney General. Id. On September 22, 2008, the proposed rule was published and subject to a sixty-day public comment period. See 73 Fed. Reg. 54544 (proposed September 22, 2008) (to be codified at 28 C.F.R. pt. 25). Defendant is taking steps to begin to implement NMVTIS. See Dec. Burch ¶ 11 (stating that by the end of 2008 it is expected that there will be a sufficient number of participating States in the NMVTIS program for full implementation of the database). Pursuant to this court's recent order granting plaintiff's motion for summary judgment, defendant has been ordered to publish the final rule in the Federal Register and provide consumer access to NMVTIS by January 9, 2009. See Order Granting Plaintiffs' Motion for Summary Judgment, Docket No. 48.

Plaintiff Public Citizen is an organization whose purpose is, in part, to further consumer protection and safety related to automobiles. See Claybrook Dec. ¶¶ 2, 3. Consumer Action is an organization dedicated to assisting costumers to make "informed choices about buying used cars." Ridout Dec. ¶ 2. Likewise, Consumers for Auto Reliability and Safety ("CARS") is concerned with auto safety. See Taterka Dec. ¶ 2. Plaintiffs' members include prospective purchasers of automobiles. See Steinbach Dec. ¶¶ 2, 5 (CARS and Public Citizen member); Ellsworth Dec. ¶¶ 2, 3 (CARS members); Graff Dec. ¶¶ 1- 3 ( Public Citizen member); Perez Dec. ¶¶ 2, 3 (Consumer Action member). Plaintiffs, Public Citizen, CARS and Consumer Action, acting on behalf of

3

themselves and their members, move for summary judgment to compel the Attorney General to implement the NMVTIS and request this court to create a time line for NMVTIS implementation. Complaint ¶ 5. Plaintiffs brought the instant action pursuant to the Federal Administrative Procedure Act, 5 U.S.C. §§ 706(1) & (2) ("APA").[1]

Plaintiffs contend that the Attorney General's failure to establish by regulation procedure and practices to facilitate reporting of information by insurance carriers and junk and salvage yards, as required by 49 U.S.C. § 30504(c), constitutes agency action "unlawfully withheld" and "unreasonably delayed" or "not in accordance with the law." Complaint ¶ 28; see APA 5 U.S.C. §§ 706(1) & (2). The Attorney General concedes that he has not carried out the three actions that are required by statute and which plaintiffs are seeking to compel, namely (1) issuance of regulations to facilitate reporting by insurance carriers and junk and salvage yards, (2) setting of a start date for the reporting of such information, and (3) making such information available to prospective purchasers of automobiles. Complaint ¶ 27; see Joint Case Management Statement at 2:15.

Plaintiffs requested that the court declare that the Attorney General has violated the APA, 5 U.S.C. § 706(1) and the Anti-Car Theft Improvements Act, 49 U.S.C. §§ 30502 and 30504 and sought that the court order the defendant to: (1) no later than thirty days from the date of the court's order, if the Attorney General has not already done so, publish a notice of proposed rulemaking in the Federal Register; (2) no later than sixty days from the date of notice of proposed rulemaking, and no later than ninety days from the date of the court's order, publish a final rule establishing procedures and practices to facilitate the reporting of information to NMVTIS by insurance carriers and junk and salvage yards; (3) no later than thirty days from the publication of the final rule, establish a commencement date for monthly reporting of information to NMVTIS by insurance carriers and junk and salvage yards; (4) no later than sixty from the date of the court's order, ensure full access to information required under 49 U.S.C. §§ 30502(d) and (e)(C) to prospective purchasers of automobiles; and, (5) beginning thirty days after the court's order, and every sixty days thereafter, file progress reports detailing actions taken, and possible impediments to meeting the above deadlines with the court. See Complaint ¶ 30.

4

In response to plaintiffs' motion for summary judgment, defendant raised affirmative defenses, arguing lack of subject matter jurisdiction, failure to state a claim, and laches. Answer at 1:22-27. In addition, defendant sought leave to file an amended answer to include the additional affirmative defense of the statute of limitations, alleging that plaintiffs' motion fell outside of the six-year statute of limitations provided by 28 U.S.C. § 2401. Def.'s Motion to File an Amended Answer at 2:16-20, 5:2-11. Defendant also sought judgment on the pleadings or in the alternative summary judgment, asserting that the Attorney General has taken steps towards implementing the NMVTIS. See Def.'s Motion for Judgment on the Pleadings, or in the Alternative, Motion for Summary Judgment at 7:15-24. Specifically, the second declaration of James Burch, a Deputy Director at the Bureau of Justice Assistance in the Department of Justice alleged that plaintiff's time line might not be reasonable, in large part because it is not possible to accurately predict how much time the agency will need to review the public comments. Second Burch Dec. ¶¶ 1-4. The parties submitted declarations in opposition to, and in support of, the cross-motions for summary judgment and defendant's motion to file an amended answer. Having previously ruled on plaintiff's motion for summary judgment in abbreviated form, the court rules on the remaining issues herein.

LEGAL STANDARD

I.   Amendment of Pleadings

According to Federal Rule of Civil Procedure 15, a party may amend a pleading with leave of court, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has construed Rule 15(a) broadly, requiring that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir.1987) (describing a "strong policy permitting amendment"); Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F.Supp. 1237, 1241 (N.D. Cal.1997) (Jensen, J.) ("[T]he court must be very liberal in granting leave to amend.").

Despite this liberal policy permitting amendment, the court may decline to grant leave where there is "any apparent or declared reason" for doing so. Collaboration Properties, Inc. v. Tandberg

5

ASA, 2006 WL 2398762, 2 (N.D. Cal. 2006) (Patel, J.).  Although prejudice is the "touchstone of the inquiry under rule 15(a)" and "carries the greatest weight" the court must balance other factors including bad faith and undue delay in addition to prejudice to the opposing party.  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003); Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).  Futility alone can also justify the denial of a motion to amend. Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995), cert. denied, 516 U.S. 1051 (1996).

II.     Summary Judgment

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the proceedings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Mere allegations or denials do not defeat a moving party's allegations. Id.; see also Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations and inferences drawn from the facts must be viewed in the light most favorable to the party opposing the motion.  Anderson, 477 U.S. at 249; Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

DISCUSSION

These cross-motions for summary judgment raise three main legal issues.  The parties agree that the motions do not raise issues of material fact.  The parties agree that the regulations have not

6

been issued, a commencement date for monthly reporting by insurance carriers and junk and salvage yard operators has not been established and that prospective purchasers of automobiles do not have access to NMVTIS. The first legal issue in dispute concerns plaintiffs' standing to bring their claims: Defendant contends that the court lacks subject matter jurisdiction over this matter because plaintiffs' lack both representational/associational standing to sue on behalf of their members and organizational standing to sue on their own behalf. Second, defendant argues that plaintiffs' causes of action are time barred because the six-year statute of limitations applicable to administrative actions has expired. Defendant seeks leave to file an amended answer to include the statute of limitations as an additional affirmative defense, while also contending that the first defense, lack of subject matter jurisdiction, necessarily included a statute of limitations defense. Finally, the parties disagree about the reasonableness and lawfulness of defendant's progress (or lack thereof) towards taking the actions that are the subject of plaintiffs' claims.

I.   Standing

In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. Warth v. Seldin, 422 U.S. 490, 498 (1975). Defendant contests plaintiffs' standing to bring this suit on behalf of its members ("representational" or "associational" standing) or on its own behalf ("organizational" standing). See Smith v. Pac. Props & Dev. Corp., 358 F.3d 1097, 1101 (9th Cir. 2004). Plaintiffs' representational standing is contingent upon the standing of its members to bring suit, while plaintiffs' organizational standing turns on whether the organization itself has suffered an injury-in-fact. Id. The court examines each in turn.

    A.   Representational/Associational Standing

For purposes of representational standing analysis it is sufficient if any one of the plaintiffs meets the requirements of the Hunt test, i.e., that: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to vindicate are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. Hunt v. Washington Apple Advertising Comm'n, 432 U.S. 333, 343 (1977); see also Mass., 127 S. Ct. at 1453 ("Only one of the [litigants] needs to have standing").

7

As to the first prong, an individual member has standing if she has suffered an actual injury that is fairly traceable to defendant's action or inaction and is likely to be redressed by a favorable order. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). The court disagrees with defendant's position that plaintiffs' members lack standing because they have not suffered a sufficiently concrete injury. In support of their motion for summary judgment, plaintiffs present declarations from several of their members who plan to purchase used cars. See, e.g., Steinbach Dec. ¶¶ 2, 5 (CARS and Public Citizen member); Ellsworth Dec. ¶¶ 2, 3 (CARS members); Graff Dec. ¶¶ 2, 3 ( Public Citizen member); Perez Dec. ¶¶ 2, 3 (Consumer Action member). Each of these declarants describe an increased risk of harm because they do not have access to NMVTIS. See Steinbach Dec. ¶¶ 4, 6, 11-12; Ellsworth Dec. ¶¶ 4-5, 8; Graff Dec. ¶¶ 4, 5; Perez Dec. ¶ 4.

The inability to access information, that the government is statutorily required to disclose, is a "sufficiently distinct injury to provide standing to sue." Public Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 449 (1989); Federal Elections Comm'n v. Akins, 524 U.S. 11, 22 (1998); and see Ctr. for Biological Diversity v. Brennan, ___F. Supp. 2d___, WL 2408901 at *7 (N.D. Cal. 2007) (Armstrong, J.). The Anti-Car Theft Improvement Act created a legal entitlement to information to prospective automobile purchasers. See 49 U.S.C. § 30502(e)(C) (providing that the Attorney General, "shall make available . . . to a prospective purchaser of an automobile on request of that purchaser . . . information in the System about that automobile."). The injuries suffered by plaintiffs' members are caused by the Attorney General's ongoing failure to implement NMVTIS. See, e.g., Ellsworth Dec. ¶¶ 4, 5; Perez Dec. ¶¶ 3-5; Steinbeck Dec. ¶¶ 6, 7.

It is axiomatic that when a party fails to compile and make available information to the public, the public does not have access to that information. In the instant action, because the government has not implemented NMVTIS, the information to which plaintiffs' members are entitled has not been disclosed. Accordingly, they have suffered an informational injury and a related increased risk of harm by being deprived of this safety information. See, e.g., Steinbeck Dec. ¶¶ 5-14 (detailing the increase risk of harm associated with not knowing the flood and accident history of used cars); Brown Dec. ¶ 6-12 (describing the need for NMVTIS in view of defective and incomplete commercial vehicle-history services like "CARFAX"). A particularly poignant

1  declaration from Robert and Mary Ellsworth, CARS members, describes their personal experience
2  with the harm that results from not having access to NMVTIS. Ellsworth Dec. ¶¶ 4-7 (Because they
3  were unable to obtain a vehicle's prior history, they unwittingly purchased a truck that was
4  previously in a frontal collision and had been cheaply refurbished. After they purchased the truck
5  they were involved in a frontal collision. The air bags, which had never been repaired or replaced
6  after the first collision, failed to deploy; their son died as a result.). Both the informational injury
7  suffered by plaintiffs' members as well as their increased risk of harm due to the unavailability of
8  the NMVTIS is redressable by a court-mandated compliance with the Anti-Car Theft Improvements
9  Act and implement NMVTIS. See Steinbach Dec. ¶ 14; Ellsworth Dec. ¶ 8; Taterka Dec. ¶¶ 8, 9.

10    As to the second and third prongs of the Hunt test, the subject of the litigation and the injury
11 faced by their members is clearly germane to plaintiffs' purposes. For example, the aim of Public
12 Citizen is to further consumer protection and safety related to automobiles. See, e.g., Claybrook
13 Dec. ¶¶ 2, 3. And "helping individuals navigate the used-car buying process has been integral to
14 [Consumer Action's] mission." Ridout Dec. ¶ 3. The interests of allowing prospective automobile
15 purchasers access to a database to search for safer vehicles and to give the member purchasers
16 greater value for their money by paying fair market value for a clean vehicle are germane to the
17 purpose of Public Citizen, CARS and Consumer Action alike. Lastly, the participation of the
18 individual members of these organizations is not required nor necessary to either the claim asserted
19 or the relief requested. Accordingly, plaintiffs satisfy the test for representational standing.

20    B.    Organizational Standing

21    Although it need not be shown, given that plaintiffs have demonstrated standing to sue on
22 behalf of their members, the court also finds that plaintiffs have organizational standing. Even if an
23 organization has not suffered injury to itself, it may have standing to assert the rights of others who
24 have suffered an injury-in-fact. Warth v. Seldin, 422 U.S. 490, 511 (1975). Furthermore, "an
25 increased risk of harm can itself be [an] injury-in-fact sufficient for standing." Ecological Rights
26 Found. v. Pacific Lumber Co., 230 F.3d 1141, 1151 (2000). When it is not necessary to know the
27 names of injured persons in order to be assured beyond any reasonable doubt that they exist, the
28 organizations to which they belong have suffered an injury-in-fact, such that they may pursue the

9

action on their members' behalf. <u>Public Citizen v. FTC</u>, 869 F.2d 1541, 1551-52 (D.C. Cir 1989). The court notes that a substantial risk of harm created by agency failure to implement the NMVTIS has been acknowledged by both Congress and the Department of Justice. <u>See, e.g.</u>, H.R. Rep. No. 104-618, at 2-3 (1996) (stating that timely implementation "would prevent thieves from obtaining legitimate vehicle ownership" and concluding that the detrimental effects of fraud for consumers "remain unacceptably high, due in part to the failure to implement [NMVTIS]."). Moreover, because plaintiffs' seek only injunctive relief, the participation of individual members is not required and their specific identities need not be known. Accordingly, for purposes of the injury-in-fact requirement, plaintiffs' have demonstrated that they face a concrete and particularized injury that provides standing to sue. <u>See</u> <u>Public Citizen v. U.S. Dep't of Justice</u>, 491 U.S. 440, 448-450 (1989).

Finally, defendant also raises prudential considerations for standing. Indeed, the question of standing involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. <u>Bennett v. Spear</u>, 520 U.S. 154, 162 (1997) (citing <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975)). In suits under the APA, the Supreme Court has held that the applicable prudential standing requirement is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." <u>Ass'n of Data Processing Serv. Org., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970). In that regard, the Supreme Court has construed the "generous review provisions" of the APA to serve a "broadly remedial purpose." <u>Id.</u> at 156. The Supreme Court has more recently restated that "the breadth of the zone of interests varies according to the provisions of law at issue, so that what comes within the zone of interests of a statute for purposes of obtaining judicial review of administrative action under the 'generous review provisions' of the APA may not do so for other purposes." <u>Bennett</u>, 520 U.S. at 163. There can hardly be any real dispute that plaintiffs have standing under the zone of interests test to bring their present causes of action under the APA. The court finds that plaintiffs have standing to sue on behalf of themselves and their members.

II.     <u>Motion to Amend Answer/Statute of Limitations</u>

1 Defendant asserts that the present action is not timely under 28 U.S.C. § 2401, the general
2 six-year statute of limitations for federal government action.  See Wind River Min. Corp. v. United
3 States, 946 F.2d 710, 713 (9th Cir. 1991); Sierra Club v. Penfold, 857 F.2d 1307, 1315 (9th Cir.
4 1988); Dugong v. Rumsfeld, ___F. Supp. 2d___, 2005 WL 522106, at *5 (N.D. Cal. 2006 ) (Patel,
5 J.).  28 U.S.C. section 2401(a) sates, in relevant part, that "every civil action commenced against the
6 United States shall be barred unless the complaint is filed within six years after the right of action
7 first accrues."  Under that section, a cause of action "against an administrative agency 'first accrues'
8 . . . as soon as (but not before) the person challenging the agency action can institute and maintain a
9 suit in court."  Spannaus v. Dep't of Justice, 824 F.2d 52, 36 (D.C. Cir. 1987).  Indeed, "until the
10 plaintiff can file suit and obtain relief," a limitations period ordinarily does not begin to accrue.
11 California ex rel. California Dept. of Toxic Substances Control v. Neville Chemical Co., 358 F.3d
12 661, 668 (9th Cir. 2004).

13 Defendant argues that the present action "first accrued" on the date when the Attorney
14 General failed to take the requisite action set out by statute, i.e., on December 31, 1997.  Defendant
15 contends that because the six-year statute of limitations began to run on that date, the present action
16 is now untimely.  However, this argument does not find support in case law.  The Ninth Circuit has
17 held that "no action can be remedial until a final remedial action plan is in place.  Id. at 670.
18 Moreover, there is no limitations period specifically applicable to unreasonable or unlawful delay
19 claims under the APA.  See, e.g., Am. Canoe Ass'n v. EPA, 30 F. Supp.2d 908, 925 (E.D. Va 1998)
20 (holding that  plaintiff's APA claim under § 706(1) is not time-barred, since "application of a statute
21 of limitations to a claim of unreasonable delay is grossly inappropriate").

22 Defendant did not rely on the statute of limitations defense in its original answer.
23 Accordingly, defendant now seeks leave to raise an additional affirmative defense challenging the
24 timeliness of this action, while maintaining that a statute of limitations defense was necessarily
25 included in its lack of subject matter jurisdiction defense and thus cannot be waived.  The defendant
26 relies on John R. Sand & Gravel Co. v. United States, __U.S.__, 128 S. Ct. 750 (2008), 128 S. Ct.
27 750 (2008),  to assert the jurisdictional nature of 28 U.S.C. § 2401(a), the six-year statute of
28 limitations applicable to APA actions.

11

1    Sand involves a different statute of limitations, and the Ninth Circuit has not had the
2    occasion to address Sand's applicability, if any, to the APA.  This court sees no reason to attempt to
3    extend Sand's holding and find such application now.  The Ninth Circuit has previously made clear
4    that "section 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject to waiver."
5    See Ceders-Sinai Med. Ctr. v. Shalala, 125 F.3d 765 (9th Cir. 1997); Dugong, 2005 WL 522106, at
6    *5.  Defendant's reliance on Sand is questionable.  Sand is distinguishable on multiple grounds:  It
7    involved a review of agency action rather than inaction, the question presented limits itself to a
8    lawsuit filed in the Court of Federal Claims and its holding specifically applies to a "special statute
9    of limitations governing the Court of Federal Claims."  128 S. Ct at 752.  Sand's only mention of 28
10   U.S.C. § 2401(a) is in a dissenting opinion, which itself is dicta and does not even attempt to apply
11   the holding of the case to that statute, but merely notes that Courts of Appeals are divided on the
12   waivable nature of 28 U.S.C. § 2401(a).  128 S. Ct at 760-61 (Ginsberg, J., dissenting) (noting that
13   "[t]oday's decision hardly assists lower courts endeavoring to answer this question" and "[a]fter
14   today's decision, one will need a crystal ball to predict when this Court will reject, and when it will
15   cling to, its prior decisions interpreting legislative texts.").  Accordingly, this court declines to hold
16   that defendant's jurisdictional defense necessarily included a statute of limitations defense and the
17   latter will have been waived absent this court granting defendant leave to amend its answer.
18       Generally, leave to amend pleadings "shall be freely given when justice so requires." Fed. R.
19   Civ. P. 15(a).  The court has the discretion to grant or deny an opportunity to amend, with futility
20   being one of the inquiries.  Foman v. Davis, 371 U.S. 178, 182 (1962) ( "[F]utility includes the
21   inevitability of a claim's defeat on summary judgment."); Johnson v. Am. Airlines, Inc., 834 F.2d
22   721, 724 (9th Cir.1987).  In the present case, the court finds defendant's motion futile, because the
23   statute of limitations defense will inevitably be defeated.  Even if the statute of limitations defense
24   was not waived, under some novel application of Sand, it is still necessarily barred under the
25   continuing violations doctrine.
26       A.    Continuing Violations Doctrine
27   The continuing violations doctrine serves to bar the application of the statute of limitations
28   defense when a single violation exists that is 'continuing' in nature.  See, e.g., Nat'l Parks

12

1  Conservation Ass'n, Inc. v. Tenn. Valley Auth., 480 F.3d 410, 417 (6th Cir. 2007) ("Courts have
2  long distinguished continuing violations, which toll the applicable statutes of limitations, from
3  repetitive discrete violations, which constitute independently actionable individual causes of
4  action."). Under the continuing violations doctrine, the court can consider as timely all relevant
5  violations including those that would otherwise be time barred. Sharpe v. Cureton, 319 F.3d 259,
6  267 (6th Cir.), cert. denied, 540 U.S. 876 (2003).

7        Here, plaintiffs suggest that the continuing violations doctrine applies to government
8  *in*action. Although the Ninth Circuit has extended the continuing violations doctrine to employment
9  and civil rights contexts, it has not offered any explicit guidance regarding application of the
10 continuing violations doctrine to the situation at bar. See, e.g., Douglas v. Cal. Dep't of Youth
11 Auth., 271 F.3d 812 (9th Cir. 2001); Gutkowsky v. County of Placer, 108 F.3d 256 (9th Cir. 2007).
12 Courts outside of the Ninth Circuit are split on whether to apply the continuing violations doctrine to
13 instances of agency inaction. See, e.g., Wilderness Soc'y v. Norton, 434 F.3d 584, 589 (D.C. Cir.
14 2006) (concludes in dicta that § 2401(a) does not time-bar actions to rectify agency inaction in
15 violation of a statutory duty); S. Utah Wilderness Alliance v. Norton, 301 F.3d 1217, 1232 (10th Cir.
16 2002) (notes in dicta that an agency's failure to act as statutorily mandated "should be considered an
17 ongoing failure to act, resulting in an ever-green cause of action for failure to act"); Nat'l Parks
18 Conservation Ass'n, 480 F.3d at 416-17 (6th Cir.2007); Schoeffler v. Kempthorne, 493 F. Supp.2d
19 805, 814-22 (W.D. La. 2007); Save the Valley, Inc. v. U.S. Envtl. Prot. Agency, 223 F. Supp.2d 997,
20 1001 n. 1 (D. Ind. 2002); S. Appalachian Biodiversity Project v. U.S. Fish and Wildlife Serv.,
21 181 F. Supp. 2d 883, 887 (E.D. Tenn. 2001) ("The statute of limitations commences to run anew
22 each and every day that the Service does not fulfill the affirmative duty required of it."); Am. Canoe
23 Ass'n v. U.S. Envtl. Prot. Agency, 30 F. Supp.2d 908, 925 (D. Va. 1998); Nat. Res. Def. Council v.
24 Fox, 909 F. Supp. 153, 159-60 (S.D.N.Y. 1995).

25       This question was recently decided in the United States District Court for the District of
26 Oregon, on review of a Magistrate Judge's decision not to apply the continuing acts doctrine where
27 the United States Fish and Wildlife Service neglected to designate a critical habitat area for the
28 endangered Oregon chub. Institute for Wildlife Protection v. United States Fish and Wildlife

13

1 Service, ___F. Supp.2d___, WL 4117978 at *3-7 (D. Or. 2007). Navigating without guidance from
2 the Ninth Circuit, the Oregon District Court looked to the underlying purpose of statutes of
3 limitation. Id. at 5. In its examination, it found that statutes of limitation are "grounded in equity
4 and based on the principles of avoiding stale claims, achieving finality, and protecting those who
5 rely on the law." Id. (citing Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554-55 (1974);
6 Holmberg v. Ambrecht, 327 U.S. 392, 396 (1946).) But, "where the statutory violation is a
7 continuing one the staleness concern disappears." Havens Realty Corp. v. Coleman, 455 U.S. 363,
8 380 (1982) (quoted in Institute for Wildlife Protection, at 555). Based on this reasoning and the
9 weight of authority in other circuit and district courts, the Oregon District Court declined to apply
10 section 2401 to government inaction.

11 This court holds that an application of section 2401 to the Attorney General's failure to
12 comply with the Anti-Car Theft Improvements Act would allow the Attorney General to avoid
13 judicial oversight by merely delaying too long. In essence an application of section 2401 would
14 eviscerate a specific ongoing statutory obligation. This court agrees with the analysis of the Oregon
15 District Court and declines to apply section 2401 to bar judicial review of the Attorney General's
16 inaction where Congress specifically directed action. The Attorney General's failure to perform a
17 nondiscretionary duty is a continuing violation. The present action is therefore timely.

18 III.     Remedy

19 In the Ninth Circuit, courts have discretion as to whether or not to compel agency action.
20 See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 422 F.3d 782, 795-96 (9th Cir. 2005)
21 (citing Biodiversity Legal Found. v. Badgley, 309 F.3d 1166, 1177 (9th Cir. 2002)); see also Ford
22 Motor Co. v. NLRB, 305 U.S. 364, 373 (1939) ("while the court must act within the bounds of the
23 statute and without intruding upon the administrative province, it may adjust its relief to the
24 exigencies of the case in accordance with the equitable principles governing judicial action") (cited
25 by Santillan v. Gonzalez, 338 F. Supp.2d. 1065, 1085 (N.D. Cal. 2005) (Patel, J.)). While courts
26 may issue detailed remedies including concrete time lines, "[i]t is also settled, however, that the
27 court should not deny itself of the benefit of agency expertise in the absence of extraordinary
28

14

1  circumstances." Santillan, 338 F. Supp.2d. at 1085 (quoting Cal-Almond, Inc. v. Yeutter, 756 F.
2  Supp. 1351, 1356 (E.D. Cal. 1991)) (internal quotations omitted).
3        Section 706(1) of the APA provides in relevant part that a court "shall . . . compel agency
4  action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In its submissions and at
5  the oral hearing, defendant argued that steps were being taken to begin to implement NMVTIS, and
6  full implementation was generally expected by the end of this year, a time frame which was in
7  harmony with plaintiffs' proposed time line. The court is mindful, however, that the Attorney
8  General did not take any action towards implementing the NMVTIS until after plaintiffs brought the
9  present action. Indeed, at the oral hearing plaintiffs' reminded the court of an example from recent
10 past that suggests that the small progress defendant has made in the past decade may not be enough
11 to ensure that the congressional purpose behind the Anti-Car Theft Improvement Act is effectuated.
12 The 1992 Anti-Car Theft Act directed the Attorney General to establish a similar database of stolen-
13 vehicle information called the National Stolen Passenger Motor Vehicle Information System
14 (NSPMVIS) by July 25, 1993. 49 U.S.C. § 33109. The Attorney General did not issue a Notice of
15 Proposed Rulemaking (NPRM) relating to the NSPMVIS until nearly 9 years after the statutory
16 deadline had passed. 67 Fed. Reg. 17027 (April 9, 2002). That NPRM requested public comments
17 by June 10, 2002. Id. The Attorney General has only recently entered the final rulemaking stage for
18 the NSPMVIS. See 72 Fed. Reg. 22811-01 (April 30, 2007).
19       Considering this past history, and given that defendant only began the rulemaking process
20 once plaintiffs initiated this action, the court finds the Attorney General's recent progress towards
21 implementing NMVTIS welcome but insufficient to ensure that the congressional purpose behind
22 the Anti-Car Theft Improvement Act will be effectuated. As such, equitable relief is deemed
23 necessary. See Nat'l Wildlife Fed'n, 422 F.3d at 795. Thus, in order to make defendant's
24 assurances more concrete, the court found it necessary to order the Attorney General to comply with
25 the Anti-Car Theft Improvement Act with clear deadlines. A range of deadlines was discussed with
26 the parties at the hearing, and a proposed order was jointly filed by the parties with agreed upon
27 deadlines. The court granted plaintiffs' motion for summary judgment and ordered defendant to
28 comply with that jointly proposed order. See, Docket No. 48. In summary, the court ordered dates

for the final rule to be published, for consumer access to be granted and for information reporting by private entities to commence. The Attorney General was granted a grace period to obtain information from states that currently have restrictions on consumer access, and the court ordered progress reports with any notice of potential delay to be issued prior to any of the deadlines. The present ruling takes notice of these deadlines and finds they are consistent with the court's intent and reasoning contained in the present rulings.

CONCLUSION

On equitable consideration of all factors involved, defendant's motion to file an amended answer is DENIED; and defendant's motion for judgment on the pleadings or in the alternative for summary judgment is DENIED. Plaintiffs' motion for summary judgment has previously been GRANTED.

IT IS SO ORDERED.

Dated: October 9, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. 5 U.S.C. § 706 provides:

   To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall–

   (1) compel agency action unlawfully withheld or unreasonably delayed; and
   (2) hold unlawful and set aside agency action . . . found to be . . .
   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
   (B) contrary to constitutional right, power, privilege, or immunity;
   (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
   (D) without observance of procedure required by law . . . .