DEEPAK GUPTA
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
Tel.: (202) 588-1000
Fax: (202) 588-7795
Email: dgupta@citizen.org

ERICA L. CRAVEN
Levy, Ram & Olson llp
639 Front Street, 4th Floor
San Francisco, CA 94111
Tel.: (415) 433-4949
Fax: (415) 433-7311
Email: elc@lrolaw.com
*Attorneys for Plaintiffs*

JOSEPH P. RUSSONIELLO
United States Attorney
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
(415) 436-6730
(415) 436-6748 (fax)

MICHAEL F. HERTZ
Acting Assistant Attorney General
SANDRA M. SCHRAIBMAN
Assistant Branch Director
RAPHAEL O. GOMEZ
Senior Trial Counsel
PETER D. LEARY
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7318
Washington, DC 20044
(202) 514-1318
(202) 616-8470 (fax)
Email: raphael.gomez@usdoj.gov
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| PUBLIC CITIZEN, INC., *et al.* <br> *Plaintiffs*, <br><br> v. <br><br> ERIC H. HOLDER, JR., <br> *Defendant*. | No. CV 08-0833 (MHP) <br><br> **STATUS REPORT,** <br> **JOINT STIPULATION AND** <br> ~~**PROPOSED**~~ **ORDER** |

The Parties submit this Status Report and Joint Stipulation to update the Court about Defendant's compliance with two deadlines contained in the Court's September 30, 2008 Order and stipulate to an extension for the grace period related to States that currently purport to restrict consumer access to titling information that they maintain and provide to the National Motor Vehicle Title Information System (NMVTIS).

## 1.    Issuance of Final Rule and Launch of Consumer Access

In accordance with the Court's September 30, 2008 Order, the Final Rule related to NMVTIS was published in the Federal Register on January 30, 2009.  Also in accordance with the Order, consumer access to the NMVTIS database commenced on January 30, 2009, with two portal providers launching websites that provide consumers with access to the information contained within NMVTIS, with the exception of information from States that purport to restrict consumer access.

## 2.    States Purporting to Restrict Consumer Access

The Court's September 30, 2008 Order provides that "[t]he Attorney General shall endeavor to convince any state that currently has in place any restriction on the authority of the Attorney General or his system operator to provide consumer access to vehicle information, as required by 49 U.S.C. § 30502(e) and 30503(a), to lift any such restriction" not later than February 27, 2009.  Order at 2.  In its January 27, 2009 Supplemental Status Report (Doc. 55), Defendant informed the Court that three states that currently provide titling information to NMVTIS—New York, California and Pennsylvania—sought to restrict consumer access to that information on January 30, 2009.

Pursuant to the Court's September 30, 2008 Order, the Department of Justice (DOJ) has engaged in numerous meetings and communications with these States seeking their consent to release of their state titling information in NMVTIS without restriction or additional fees to consumers.  In addition, DOJ has updated Plaintiffs frequently on its efforts to persuade these States to consent to consumer access to their vehicle information maintained by NMVTIS, and Plaintiffs have undertaken and updated DOJ on their independent efforts to similarly persuade these States. See Exhibit 1, January 29, 2009 Letter from Plaintiffs to the Governor of New York; Exhibit 2, January 29, 2009 Letter from Plaintiffs to the Governor of California.  These efforts by the Parties

*Public Citizen v. Holder*, No. CV 08-0833 (MHP)
Status Report, Joint Stipulation and Proposed Order

have been successful with respect to New York and Pennsylvania, however the Parties are still trying to resolve the issue with respect to California.  Since February 17, 2009, counsel for the Parties have tried to resolve this issue via stipulation, without the need for the Court's involvement, and the Parties have concluded that additional time to work with California may be productive.

**a.)    Pennsylvania**

The Parties have met with the most success with Pennsylvania, which has consented to the immediate release to consumers of the titling data it provides to NMVTIS.  Pennsylvania participates in NMVTIS by providing regular updates of the titling information it maintains,[1] but previously the Commonwealth had stated that this information could not be released to consumers without compensation—a potentially insurmountable practical barrier.  When Defendant submitted its January 27, 2009 Supplemental Status Report, Pennsylvania's position was that state law required a $5.00 fee for each and every Pennsylvania record provided to consumers.  See Exhibit 3, January 27, 2009 Letter from the Pennsylvania Office of Chief Counsel to DOJ.    In subsequent conversations, Pennsylvania conceded that nothing in the Anti-Car Theft Act of 1992, as amended, mandates that the DOJ or its operator collect state-established fees for vehicle records. Pennsylvania also made an alternate proposal: that it could be compensated $0.05 per record provided to NMVTIS on a forward-looking basis, a fee that could be used as an offset against user fees for Pennsylvania's use of NMVTIS.    Both Plaintiffs and Defendant submitted letters to representatives from Pennsylvania addressing the discretion that Pennsylvania enjoys to release the data it maintains, clarifying what information is released by NMVTIS, and raising constitutional concerns with whether Pennsylvania law is preempted by federal law.  See Exhibit 4, February 24, 2009 Letter from Plaintiffs to Governor and Secretary of Transportation of Pennsylvania; Exhibit 5, February 23, 2009 Letter from DOJ to the Pennsylvania Office of Chief Counsel.  In a February 27, 2009 telephone call between Defendant and Pennsylvania, the Commonwealth agreed that the titling data it provides to

---

[1]    Pennsylvania was participating at this level on January 1, 2009.  According to the Final Rule, Pennsylvania is required to maintain at least this level of participation for the remainder of 2009 and be in full compliance by January 1, 2010, the date by which all States must be in full compliance.  See 74 Fed. Reg. 5740, 5778.

*Public Citizen v. Holder*, No. CV 08-0833 (MHP)
Status Report, Joint Stipulation and Proposed Order

NMVTIS could be released immediately to consumers, although Pennsylvania reserved the right to pursue its argument about the remittance of state fees in the future, should it so choose. Accordingly, the Defendant has directed the operator of NMVTIS, the American Association of Motor Vehicle Administrators (AAMVA), to make the data Pennsylvania provides to NMVTIS available to consumers as soon as possible.

**b.)    New York**

The Parties' negotiations with New York have also been a success; the State has consented to release to consumers the titling data it provides to NMVTIS no later than March 22, 2009.[2/]  New York's initial resistance to the release of this data was due to a restriction in the State's contract with a third-party vendor.  This obstacle will be removed by either the signing of a new contract without the restriction or the expiration of the current, restrictive contract (which expires on March 21, 2009).  The Parties jointly stipulate that the Grace Period should be extended for New York to no later than March 22, 2009, after which the Defendant will direct AAMVA to make the data New York provides to NMVTIS available to consumers.

**c.)    California**

Some progress has been made with California.  Originally, California had executed a memorandum of understanding with AAMVA purporting to restrict the release of the titling information maintained by California to consumers.  Following the Parties' efforts, California has confirmed that, in theory, it has no opposition to the release of the titling information it maintains to individual consumers performing individual searches.  However, despite the fact that California participates in NMVTIS by providing regular updates of titling information to the system,[3/] the State

---

[2/]    New York was providing regular updates of titling information to NMVTIS on January 1, 2009.  Again, according to the Final Rule, New York is required to maintain at least this level of participation for the remainder of 2009 and be in full compliance by January 1, 2010, the date by which all States must be in full compliance.  See 74 Fed. Reg. 5740, 5778.

[3/]    California was participating in NMVTIS at this level on January 1, 2009.  Again, according to the Final Rule published in the Federal Register on January 30, 2009, California is required to maintain at least this level of participation for the remainder of 2009 and be in full

(continued...)

*Public Citizen v. Holder*, No. CV 08-0833 (MHP)
Status Report, Joint Stipulation and Proposed Order

maintains that the contract it signed with a third-party vendor to furnish this titling information to NMVTIS restricts its release to consumers.  In April 2008, California entered into a contract with a vendor, R.L. Polk & Company (Polk), to translate the data maintained by California to the format required by AAMVA and then provide that data to NMVTIS.  This contract contained a clause that limits the release of titling information maintained by California and translated by Polk to law enforcement and governmental entities.  California sent a letter to Polk on February 13, 2009, requesting that Polk lift the contractual restriction.  See Exhibit 6, February 13, 2009 Letter from California to R.L. Polk & Company.  On February 24, Polk responded that it was unwilling to remove the contractual restriction at this point, but that it would continue to negotiate with California to seek a modification to the contract.  See Exhibit 7, February 24, 2009 Letter from R.L. Polk & Company to California.  The Parties jointly stipulate that the Grace Period should be extended for California to no later than March 31, 2009, so that the Parties may continue to explore various alternatives with the State.  However, the Parties also reserve the right to stipulate to the termination of this Grace Period extension prior to March 31, 2009, if they jointly agree that further conversations with California would be unproductive.

### 3.    Tennessee Update

Finally, DOJ wishes to provide a brief update regarding the status of Tennessee.  As Defendant informed the Court in its January 27, 2009 Supplemental Status Report, Tennessee provided state titling information to NMVTIS up to December 2005.  However, since that date Tennessee has not supplemented or provided additional titling information.  Although Tennessee has failed to respond to efforts by DOJ to secure data updates as soon as possible, see Exhibit 8, January 26, 2009 Letter from DOJ to the Deputy Commissioner at the Tennessee Department of Revenue, DOJ plans to continue its outreach to the State.

---

[3]/    (...continued)
compliance by January 1, 2010, the date by which all States must be in full compliance.  See 74 Fed. Reg. 5740, 5778.

*Public Citizen v. Holder*, No. CV 08-0833 (MHP)
Status Report, Joint Stipulation and Proposed Order

**4.     Conclusion**

For the foregoing reasons, the Parties stipulate that the Grace Period described in Paragraph Four of the Court's September 30, 2008 Order should be extended until no later than March 22, 2009 for New York and no later than March 31, 2009 for California.

| | |
|---|---|
| _/s/ Peter D. Leary_ | _/s/ Deepak Gupta_ |
| PETER D. LEARY | DEEPAK GUPTA |
| Counsel for Defendant | Counsel for Plaintiffs |

I, Peter Leary, as the electronic filer, attest that Deepak Gupta, whose name appears above, has concurred in this filing.

_/s/ Peter D. Leary_

PETER D. LEARY

<del>PROPOSED</del> ORDER

The Court orders that the Grace Period described in Paragraph Four of the Court's September 30, 2008 Order shall be extended until no later than March 22, 2009 for New York and no later than March 31, 2009 for California.

DATED: __3/9/2009_____



IT IS SO ORDERED

Judge Marilyn H. Patel

_Public Citizen v. Holder_, No. CV 08-0833 (MHP)
Status Report, Joint Stipulation and Proposed Order

## PUBLIC CITIZEN LITIGATION GROUP

1600 20TH STREET, N.W.
WASHINGTON, D.C. 20009-1001

**DEEPAK GUPTA**
(202) 588-7739
DGUPTA@CITIZEN.ORG

January 29, 2009

The Honorable David Paterson
Governor, State Capitol
Albany, NY 12224

Dear Governor Paterson:

I am writing to urge the State of New York to meet its obligations under federal law—and protect the safety and well-being of its citizens—by participating fully in the National Motor Vehicle Title Information System (NMVTIS), a vehicle-history database maintained by the U.S. Department of Justice. Before purchasing a potentially dangerous car, a consumer using the system will be able to instantly check the validity of the vehicle's title, verify its mileage, and learn whether it has been stolen or deemed a junk or salvage vehicle. The database will save lives.

Tomorrow, in response to litigation brought by consumer groups, the federal government will be launching consumer access to the system and issuing final regulations concerning the obligations of states, insurers, and junk and salvage yards to report data. Unfortunately, unless the New York State Department of Motor Vehicles (DMV) changes its legal position, New Yorkers will not be able to enjoy the benefits of NMVTIS, and those outside the state will be kept in the dark about vital safety information in the state's records. Although New York is reporting data to the system, the DMV is insisting that consumers be barred from accessing that data. That position is not only bad for New Yorkers, but it violates the federal Anti-Car Theft Act, which provides that "[e]ach state shall make titling information maintained by that State available for use in operating the National Motor Vehicle Title Information System," and requires that the information be made available to "prospective purchasers of automobiles." 49 U.S.C. §§ 30503(a), 30503(e). The federal district court in San Francisco set a deadline of January 30, 2009, for consumer access, and gave the federal government until February 27, 2009, to convince New York to lift its restrictions on consumer access. *See Public Citizen v. Mukasey*, 2008 WL 4532540 (N.D. Cal. 2008).

We hope that New York will voluntarily lift its restrictions on consumer access before the deadline set by the court. If New York does not do so, we intend to work with the federal government to take whatever steps are necessary to ensure that consumers have access to critical safety information, as required by federal law.

Sincerely,

Deepak Gupta
Staff Attorney

cc:     David J. Swarts, Commissioner, New York State Department of Motor Vehicles
        James H. Burch, Acting Director, Bureau of Justice Assistance, U.S. Dept. of Justice

**PUBLIC CITIZEN LITIGATION GROUP**

1600 20TH STREET, N.W.
WASHINGTON, D.C. 20009-1001

**DEEPAK GUPTA**

(202) 588-7739
DGUPTA@CITIZEN.ORG

January 29, 2009

The Honorable Arnold Schwarzenegger
Governor, State Capitol
Sacramento, CA 95814

Dear Governor Schwarzenegger:

I am writing to urge the State of California to meet its obligations under federal law—and protect the safety and well-being of its citizens—by participating fully in the National Motor Vehicle Title Information System (NMVTIS), a vehicle-history database maintained by the U.S. Department of Justice. Before purchasing a potentially dangerous car, a consumer using the system will be able to instantly check the validity of the vehicle's title, verify its mileage, and learn whether it has been stolen or deemed a junk or salvage vehicle. The database will save lives.

Tomorrow, in response to litigation brought by consumer groups, the federal government will be launching consumer access to the system and issuing final regulations concerning the obligations of states, insurers, and junk and salvage yards to report data. Unfortunately, unless the California Department of Motor Vehicles (DMV) changes its legal position, Californians will not be able to enjoy the benefits of NMVTIS, and those outside the state will be kept in the dark about vital safety information in the state's records. Although California is reporting data to the system, the DMV is insisting that consumers be barred from accessing that data.  That position is not only bad for Californians, but is in violation of the federal Anti-Car Theft Act, which provides that "[e]ach state shall make titling information maintained by that State available for use in operating the National Motor Vehicle Title Information System," and requires that the information be made available to "prospective purchasers of automobiles." 49 U.S.C. §§ 30503(a), 30503(e).  The federal district court in San Francisco set a deadline of January 30, 2009, for consumer access, and gave the federal government an additional month, until February 27, 2009, to convince California to lift its restrictions on consumer access. *See Public Citizen v. Mukasey*, 2008 WL 4532540 (N.D. Cal. 2008).

We hope that California will voluntarily lift its restrictions on consumer access before the deadline set by the court. If California does not lift its restrictions, we intend to work with the federal government to take whatever steps are necessary to ensure that consumers have access to critical safety information, as required by federal law.

Sincerely,

Deepak Gupta
Staff Attorney

cc:     George Valverde, Director, California Department of Motor Vehicles
        James H. Burch, Acting Director, Bureau of Justice Assistance, U.S. Dept. of Justice



COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE OF GENERAL COUNSEL

January 27, 2009

James H. Burch
Acting Director
Bureau of Justice Assistance
U.S. Department of Justice
20 Mass. Ave., N.W.
Washington, D.C.  20530

      Re:    Release of Pennsylvania Vehicle
            Record Information in
            NMVTIS

Dear Mr. Burch:

This letter is by way of follow-up to recent conversations on the above subject between your office, the Commonwealth of Pennsylvania and the American Association of Motor Vehicle Administrators (AAMVA). Confirming these conversations, it is the position of the Commonwealth that Pennsylvania vehicle record information lodged in the National Motor Vehicle Title Information System (NMVTIS) cannot be made available to consumers until and unless provision is made for payment to the Commonwealth of its $5.00 statutory fee for each and every Pennsylvania record provided.

The Commonwealth's position on this issue is based on Section 1955 (a) of the Vehicle Code, 75 Pa. C.S. § 1955 (a), which was originally enacted in 1980 and which reads:

The fee for a copy of written or electronic information relating to a driver *registration*, *title* or security interest *shall* be $5.  (Emphasis added)

In Pennsylvania, as I daresay is the case in most jurisdictions, the use of the term "shall" in a statute to qualify an action means that said action must be considered mandatory subject only to specific statutory exceptions. The exemptions to the fee requirements of the Vehicle Code are set forth in Sections 1901 and 1902 of the Vehicle Code, 75 Pa. C.S. §§ 1901 and 1902. Political subdivisions, another state and the Federal Government are all expressly exempt from fees (see § 1901 (a) (2) (5) and (6)), hence access by law enforcement or another state to Pennsylvania vehicle record information in NMVTIS such has occurred to date is not subject to the $5.00 per record charge. There is no comparable exemption in Pennsylvania law for the provision of vehicle record information to consumers. The Commonwealth therefore has no discretion to take



James H. Burch
January 27, 2009
Page 2

any position other than that it must receive $5.00 each and every time a Pennsylvania vehicle record in NMVTIS is provided to a consumer.

It is important to note that the Commonwealth's position here is in no way inconsistent with the fee provisions of the Anti Car Theft Act of 1992 (ACTA).  Section 202 (a) (3) of ACTA, in speaking to limitations on the fees collected and retained by the operator of NMVTIS, i.e., AAMVA, expressly exempts from those limitations "fees collected by the operator and passed on to a State or other entity providing information to the operator."   While the Department of Justice has chosen to ignore this language in its proposed rulemaking of September 22, 2008, addressing the implementation of NMVTIS, it is clear from ACTA that Congress had no intention to establish a system that would in any way result in a deprivation of revenues being derived by the states from the sale of vehicle records for consumer use.

In conclusion, until such time as this issue is resolved to the satisfaction of the Commonwealth, we have instructed AAMVA that it is not at liberty to disclose Pennsylvania vehicle record information for consumer purposes.   AAMVA has represented to the Commonwealth that it will abide by this restriction.

Please feel free to contact me at your convenience if you have any questions.   The Commonwealth looks forward to continuing discussions with you and AAMVA on this matter in the near future.

Sincerely,

Robert J. Shea
Assistant Chief Counsel

2200/RJS/na

cc:    Peter D. Leary, Trial Attorney, U.S. Department of Justice
       Neil Shuster, President and CEO, AAMVA
       Kurt J. Myers, Deputy Secretary for Safety Administration, PENNDOT
       Anita Wasko, Director, Bureau of Motor Vehicle, PENNDOT

# PUBLIC CITIZEN LITIGATION GROUP

1600 20TH STREET, N.W.
WASHINGTON, D.C. 20009-1001

DEEPAK GUPTA

(202) 588-7739
dgupta@citizen.org

February 24, 2009

The Honorable Edward G. Rendell          The Honorable Allen D. Biehler, P.E.
Governor                                 Secretary of Transportation
225 Main Capitol Building                400 North Street
Harrisburg, Pennsylvania 17120           Harrisburg, Pennsylvania 17120

Dear Governor Rendell and Secretary Biehler:

I am writing to urge the Commonwealth of Pennsylvania to meet its obligations under federal law—and protect the safety and well-being of its citizens—by participating fully in the National Motor Vehicle Title Information System (NMVTIS), a vehicle-history database maintained by the U.S. Department of Justice. Before purchasing a potentially dangerous car, a consumer using the system will be able to instantly check the validity of the vehicle's title, verify its mileage, and learn whether it has been stolen or deemed a junk or salvage vehicle. The database will save lives.

Last month, in response to litigation brought by Public Citizen and two other consumer groups, the federal government launched consumer access to NMVTIS and issued final regulations requiring states to report vehicle title information to the system. 74 Fed. Reg. 5740-5779. A federal court has set a deadline of February 27, 2009, for states to lift any restrictions on consumer access. *See Public Citizen v. Mukasey*, 2008 WL 4532540 (N.D. Cal. 2008).

Unfortunately, although PennDOT is reporting data to the system, "it is the position of the Commonwealth that Pennsylvania vehicle information lodged in the National Motor Vehicle Title Information System … cannot be made available to consumers until and unless provision is made for payment to the Commonwealth of its $5.00 statutory fee for each and every Pennsylvania record provided." Letter from Robert J. Shea, PennDOT, to James H. Burch, U.S. DOJ, dated Jan. 27, 2009, at 1. That position not only threatens the safety of Pennsylvanians and others who might benefit from safety information in the state's records, but also violates the federal Anti-Car Theft Act, which provides that "[e]ach state shall make titling information maintained by that State available for use in operating the National Motor Vehicle Title Information System," and requires the federal government to make such information available to "prospective purchasers of automobiles." 49 U.S.C. §§ 30503(a), (e).

As explained below, PennDOT's position misreads both state and federal law, faces insurmountable constitutional obstacles, and would be unworkable in practice.

1.      **Under Pennsylvania law, the federal government is entitled to request and receive state motor vehicle title information for free.**

As a general matter, Pennsylvania law provides that "[t]he fee for a copy of written or electronic information relating to a driver registration, title or security interest shall be $5." 75 Pa. Cons. Stat. § 1955. This is the statute on which PennDOT's legal position is premised. But even assuming that the fee requirement were otherwise applicable, Pennsylvania law expressly

PUBLIC CITIZEN LITIGATION GROUP

The Honorable Edward G. Rendell and Allen D. Biehler
February 24, 2009
Page 2

exempts information requested by and provided to the federal government. *See* 75 Pa. Cons. Stat. § 1901(5) ("[N]o fees shall be charged under this title to … [t]he Federal Government."). PennDOT's own regulations similarly provide that this "vehicle registration and title information" is to be provided for "free" to "[a]gencies of the Federal government." 67 Pa. Admin. Code § 95.2. Needless to say, the U.S. Department of Justice is an "agenc[y] of the Federal government." It is also the agency charged with establishing and maintaining NMVTIS, *see* 49 U.S.C. § 30502, and it has promulgated detailed regulations requiring states to make their vehicle titling information available to NMVTIS and requiring that information to be released to consumers. 74 Fed. Reg. 5778.

PennDOT's letter attempts to circumvent the federal-government exemption by focusing on the ultimate *end users* of NMVTIS—states, law enforcement officials, consumers, and others. It claims that there is no "exemption in Pennsylvania law for the provision of vehicle record information to consumers" and so the federal government may make the information available to the public only "[a]t a fee of $5.00 per record." Shea Letter at 1. But Pennsylvania does not provide NMVTIS records directly to consumers; it gives those records to the federal government and its system operator.  And Pennsylvania's statutes and regulations do not purport to (and, under the Supremacy Clause of the U.S. Constitution, are not *permitted* to) place any restrictions on what "agencies of the Federal government" may do, pursuant to federal law, with information obtained from Pennsylvania. PennDOT's position is thus wrong under Pennsylvania law.

## 2.     PennDOT's position creates an unnecessary conflict between state and federal law.

Even assuming that Pennsylvania law did in fact impose a per-record fee on consumer access to NMVTIS records, it would be preempted under the Supremacy Clause. U.S. Const. art. VI, cl. 2. "Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993). Because exaggerated claims of federal preemption are often used to stifle important state-law consumer protections, we at Public Citizen do not lightly invoke the preemption doctrine. But in this case, PennDOT's position is clearly preempted for several independent reasons.[1]

*First*, PennDOT's position is preempted because it would be impossible for the NMVTIS system operator to comply with both state and federal law, including federal regulations. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990); *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes."). Regulations implementing NMVTIS require that the operator disclose NMVTIS

---

[1] Nothing in federal statutory law permits states to impose fees for NMVTIS access. PennDOT claims its position is supported by the 1992 statute establishing NMVTIS, which prohibited the operator from collecting fees exceeding costs of operation, except for amounts "passed on to a State." PennDOT overlooks the fact that those words—"passed on to a State"—were specifically eliminated by Congress in a subsequent amendment. *See* 49 U.S.C. § 30502(c). In any event, the federal statute (both before and after the amendment) merely authorizes the operator to reimburse costs borne by other entities where appropriate; it does not authorize states to impose fees of their own.  *See* Letter from James H. Burch, U.S. DOJ, to Robert J. Shea, PennDOT, dated Feb. 23, 2009.

**PUBLIC CITIZEN LITIGATION GROUP**

The Honorable Edward G. Rendell and Allen D. Biehler
February 24, 2009
Page 3

records to consumers and that (1) "[t]he cost for Web-based prospective purchaser inquiries for individuals shall be nominal" and (2) "all consumer-access fees and methods be approved by the Department [of Justice] prior to enactment." 74 Fed. Reg. 5772; *id.* at 5777 (to be codified at 28 C.F.R. § 25.53(f)). To the extent that the states' laws demand that the system operator assess fees that are neither "approved" by the federal government nor "nominal" in the aggregate, the system operator cannot comply with both state and federal law.

*Second*, PennDOT's position would frustrate Congress's objectives. The Supreme Court has held that conflict preemption exists "where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). "A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987); *see Forest Park II v. Hadley*, 336 F.3d 724, 732 (8th Cir. 2003) ("[S]tate statutes may not interfere with the implementation of a federal program by a federal agency. Federal law is supreme.").

The practical problems with PennDOT's position are obvious. Congress required that NMVTIS permit consumers to "instantly and reliably" search data gathered from all fifty states, as well as insurance companies, junk yards, and salvage yards. 49 U.S.C. § 30502(d), (c). The need for the system is clear: Cars travel through interstate commerce and the gaps in information across state lines are routinely exploited to facilitate theft and fraud, including title-washing. Unless consumers have access to national vehicle-history information, they cannot buy used cars with confidence. But if every state were free to impose its own fees or charges for reporting information to the federal government, or for consumers' access to records in the federal database, the system would not serve those purposes. Under PennDOT's theory, every state could impose whatever charges or fees it saw fit and those fees would necessarily be cumulative, making searches of NMVTIS (which will typically reveal records from multiple states) prohibitively expensive to consumers.

In *Reno v. Condon*, 528 U.S. 141 (2000), the Supreme Court recognized that sales of motor-vehicle records "generate significant revenues for the States," but found that the federal Driver's Privacy Protection Act (DPPA), which both prohibits and mandates certain disclosures, preempted a state statute that, among other things, "authorize[d] the South Carolina DMV to charge a fee for releasing motor vehicle information." *Id.* at 144, 147. The Court rejected the state's challenge to the DPPA under the Tenth and Eleventh Amendments because the DPPA "does not require the States in their sovereign capacity to regulate their own citizens" but instead "regulates the States as the owners of data bases." *Id.* at 151. The Anti-Car Theft Act, the statute that authorizes NMVTIS, likewise overrides contrary state law and regulates the states only as the "owners of data bases." *See also Rios v. Direct Mail Express, Inc.*, 435 F. Supp. 2d 1199 (S.D. Fla. 2006) (DPPA preempts Florida law concerning disclosure of motor vehicle records).

*Third*, in addition to the conflicts between PennDOT's position and federal law identified above, the manner in which Pennsylvania is seeking to exercise its power under state law has special significance under the Supremacy Clause. Because the "power to tax" entails "the power to destroy," the Supreme Court has long held that the states are not free to impose taxes or fees

PUBLIC CITIZEN LITIGATION GROUP

The Honorable Edward G. Rendell and Allen D. Biehler
February 24, 2009
Page 4

on the federal government or those who stand in its shoes, or to do so in a manner that interferes with the implementation of federal programs. *See McCulloch v. Maryland*, 4 Wheat. 316, 431, 4 L.Ed. 579 (1819). Thus, to the extent that they "substantially interfere" with the federal government's activities, fees imposed by a state are "constitutionally invalid." *United States v. New Mexico*, 455 U.S. 720, 735 n.11 (1982).

\*       \*       \*

For all of these reasons, we hope that Pennsylvania will decide to voluntarily lift its restrictions on consumer access by the February 27 deadline set by the court. If Pennsylvania does not do so, we intend to work with the federal government to ensure that consumers have access to critical safety information, as required by federal law. Given the upcoming deadline and our obligation to report to the court, we would appreciate a prompt response.

Sincerely,

Deepak Gupta
Staff Attorney

cc (via email):
Kurt J. Myers, Deputy Secretary for Safety Administration, PennDOT
Anita Wasko, Director, Bureau of Motor Vehicles, PennDOT
Robert J. Shea, Assistant Chief Counsel, Office of Chief Counsel, PennDOT
James H. Burch, Acting Director, Bureau of Justice Assistance, U.S. Department of Justice
Raphael Gomez, Senior Trial Attorney, U.S. Department of Justice
Peter D. Leary, Trial Attorney, U.S. Department of Justice



U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

_____

*Washington, D.C. 20531*

Robert J. Shea, Esq.
Assistant Chief Counsel
Office of Chief Counsel
General Law Division
P.O. Box 8212
Harrisburg, Pa. 17105-8212

February 23, 2009

Re: <u>National Motor Vehicle Title Information System (NMVTIS)</u>

Dear Mr. Shea,

      Thank you for your letter of January 27, 2009, setting forth the position of the Commonwealth of Pennsylvania regarding release of its vehicle record information to consumers through the National Motor Vehicle Title Information System ("NMVTIS"), as well as for your subsequent availability by telephone to discuss this issue. In response, I wanted to confirm our agreed-upon interpretation of the "fee provision" of the Anti-Car Theft Act of 1992, as amended, ("ACTA" or "the Act"), address the discretion that Pennsylvania enjoys to release its data, and clarify what information is released by NMVTIS.

      With respect to fees, the applicable statute reads as follows:

> User fees.--Operation of the System established or designated under subsection (a)(1) of this section shall be paid for by user fees and should be self-sufficient and not be dependent on amounts from the United States Government. The amount of fees the operator collects and keeps under this subsection subject to annual appropriation laws, excluding fees the operator collects and pays to an entity providing information to the operator, may be not more than the costs of operating the System.

49 U.S.C. § 30502(c).[1]

_____

[1] I should note that your January 27, 2009 letter cited language contained in the Anti-Car Theft Act of 1992 ("fees collected by the operator and passed on to a State or other entity providing information to the operator."). This language, however, was amended in 1994. As amended, the relevant provision now refers to "fees the operator collects and pays to an entity providing information to the operator."

-2-

Nothing in this paragraph mandates that the Department of Justice ("DOJ") or its operator collect state-established fees for vehicle records, nor does any other portion of the Act bind DOJ or its operator to collect whatever fees states may seek. Indeed, based on telephone conversations since Pennsylvania sent its January 27, 2009 letter, I understand that Pennsylvania acknowledges this statutory provision does not require DOJ, or the operator of NMVTIS, to collect state-assessed fees for release of their title records or information or otherwise pay entities for their information.

In your January 27, 2009 letter, you concluded that Pennsylvania vehicle record information "cannot be made available to consumers until and unless provision is made for payment to the Commonwealth of its $5.00 statutory fee for each and every Pennsylvania record provided." In support of your position, you stated that Section 1955 (a) of the Vehicle Code, 75 Pa. C.S. § 1955 (a) mandates that a $5.00 fee be collected for each Pennsylvania record provided to a consumer. However, as an alternative, Pennsylvania subsequently proposed during a telephone call that it could be compensated $0.05 per record provided to NMVTIS on a forward-looking basis (*i.e.*, no compensation would be expected for the information Pennsylvania already provided to NMVTIS). Under this proposal, the compensation would not necessarily have to be paid to Pennsylvania, but could be used as an offset against user fees for Pennsylvania's use of NMVTIS. Pennsylvania appears to have arrived at this $0.05 amount based on the fact that it sells certain of its title and vehicle records to R.L. Polk & Co. at $0.05 per record. In turn, Polk makes these records available to its subsidiary Carfax for purchase by consumers after a substantial mark-up.

DOJ, however, believes that the provision of vehicle records to NMVTIS at *no cost* is fully consistent with applicable Pennsylvania law and regulations. In accordance with 67 Pa. Code § 95.2(c)(1)(ii)(B), "vehicle registration and title information . . . will be provided . . . [f]ree to . . . Agencies of the Federal government." Indeed, Pennsylvania appears to share this belief. In its January 27, 2009 letter, Pennsylvania stated that "access by law enforcement or another state to Pennsylvania vehicle record information in NMVTIS such as occurred to date is not subject to the $5.00 per record charge." Rather, Pennsylvania is objecting to the operator of NMVTIS allowing consumers to access data in NMVTIS that may, in some form, contain data elements from its state vehicle records without collecting a fee on behalf of Pennsylvania.[2]

---

[2] Pennsylvania also raised the concern that it may lose up to $1 million in revenue by complying with ACTA and providing consumer access to its data through NMVTIS. However, the results of a NMVTIS search by a consumer will point the consumer to the relevant State's website for accessing that State's full vehicle record. NMVTIS also advises every consumer that the States' records contain more information than that which is contained in the NMVTIS records. In light of this, Pennsylvania may in fact see no loss, or even could see an increase, in revenue as a result of NMVTIS directing more consumers to Pennsylvania's website (especially those whom, if it were not for NMVTIS, would not have known that a particular vehicle is, or had been, titled in Pennsylvania).

-3-

It is important to understand, however, that the operator of NMVTIS will not be providing consumers access to Pennsylvania's vehicle records. Instead, the operator will be providing consumers access to NMVTIS records. The NMVTIS records will consist of a compilation and consolidation of information from a number of sources, including other state records and data from insurance carriers and junk and salvage yards. Therefore, NMVTIS is providing its information to users of its system, for which Pennsylvania's fee and extraction provisions have no applicability.

Even if DOJ were to accept Pennsylvania's argument that it would be providing consumers with access to Pennsylvania's vehicle records and not NMVTIS records, such an action still would be permissible under Pennsylvania law without collecting a state fee. 67 Pa. Code § 95.2(d) provides three exceptions to collection of the $5.00 fee for Pennsylvania's vehicle record information when it is in the public interest. The section reads as follows:

(d) Mass record interrogations. Mass driver license and vehicle registration interrogations will be:

(1) Available only to:

(i) Governmental agencies which meet Department specifications for data processing input and output.

(ii) Persons or agencies under contract to governmental agencies who are engaged in research, traffic safety programs or another program deemed by the Department to be in the public interest. A statement, acceptable to the Department, shall be filed with the Department certifying the purpose and use of the data. Information provided may not be used for the purposes of solicitation, endorsement or the compilation of mailing lists.

(iii) Persons who collect vehicle record data for programs determined by the Department to be in the public interest. An affidavit, acceptable to the Department, shall be filed with the Department certifying the purpose and use of the vehicle record data. Information provided may not be used for the purposes of solicitation, endorsement or the compilation of mailing lists other than for vehicle recall campaigns.

(2) Provided at a fee based on cost of compiling and extracting data except for those agencies as provided in paragraph (1)(i) and (ii), when the Department at its discretion, will set the fee at the cost, including authorized overhead charges, of extracting the records.

67 Pa. Code § 95.2.

Assuming *arguendo* that Pennsylvania records, and not NMVTIS records, are being provided to consumers, then Pennsylvania has the discretion "to set the fee at *the cost . . . of extracting* the records." Pennsylvania's cost of extracting the records in question is far lower

-4-

than $0.05 a record.  Indeed, because Pennsylvania already is providing the information to NMVTIS for access by the federal government and the states, it incurs no extraction cost whatsoever for any subsequent access by consumers.  Moreover, consultation with the operator of NMVTIS confirms that Pennsylvania previously installed automated extraction programs, and that these programs automatically send Pennsylvania's information to NMVTIS on a regular basis for use by the federal government and the states.  The cost to maintain this automated extraction program is minimal, not calculated on a per-record basis, and nowhere approaches $0.05 a record.

Finally, whether Pennsylvania seeks to recover $5.00 per record provided, $0.05 per record extracted, or some lesser amount per record extracted, it is unlikely that Congress designed ACTA envisioning that DOJ would, on an ongoing basis, pay the states and other entities for the data which they maintain, because these costs would quickly result in a system far too expensive for most consumers and other entities.  Pennsylvania's recommended approach is also undesirable from a practical perspective.  State fees for vehicle title histories vary widely, from as little as $1.00 to as much as $20.00, and the basis for the fees also is widely varied, based on the number of pages requested, extent of the report (report versus history), and the type of user requesting the report.  Aside from significant technological barriers that would exist to accommodating this varied structure of state fees, these fees would be in addition to the cost determined necessary to support the system.  Finally, enacting the system consistent with Pennsylvania's position would allow states and possibly other entities to "name their price" for information shared with the system and to use pricing to render the system inoperable or to attempt to avoid reporting compliance, in favor of more lucrative contracts with private vendors.

It is clear that the fee collection processes proposed by Pennsylvania would be prohibitively expensive for consumers and so unwieldy as to be likely to cause NMVTIS to fail.  At this time, DOJ believes that the process implemented under its regulations is the best method of ensuring the success of NMVTIS.

I look forward to speaking with you again very soon to resolve any remaining issues, especially given that DOJ has been ordered by a federal district court to provide prospective purchasers of automobiles with instant and reliable access to all information present in NMVTIS no later than February 27, 2009.

Sincerely,

James H. Burch, II
Acting Director

STATE OF CALIFORNIA— BUSINESS, TRANSPORTATION AND HOUSING AGENCY                                    ARNOLD SCHWARZENEGGER, *GOVERNOR*
**DEPARTMENT OF MOTOR VEHICLES**
ADMINISTRATIVE SERVICES DIVISION
P.O. BOX 932382
SACRAMENTO, CA 94232-3820



February 13, 2009

Mr. Joe Jurkiewicz
R. L. Polk & Company
26955 Northwestern Highway
Southfield, MI  48033-8455

SUBJECT:  California Department of Motor Vehicles (DMV) # TC07-017

Dear Mr. Jurkiewicz:

The purpose of this letter is to seek an amendment to our contract securing batch updates to the National Motor Vehicle Title Information System (NMVTIS) by R.L. Polk.  The amendment would remove Section O "USE OF DATA" from Exhibit A, the Statement of Work.

As you are aware, the California DMV entered into this contract in April 2008 to comply with provisions of the Anti-Car Theft Act and the Anti-Car Theft Improvements Act requiring states to report specific titling and branding information to the NMVTIS Operator, the American Association of Motor Vehicle Administrators.

In response to a United States (U.S.) District Court ruling in *Public Citizen v. Holder*, 2008 WL 4532540 (N.D. Cal. 2008), the U.S. Department of Justice has established two consumer access points for information contained in the NMVTIS database, and has published rules that are effective March 2, 2009.  Section O impedes compliance with these rules and the court ruling.

I am requesting a formal response in writing to this request no later than February 23, 2009.  I appreciate your attention to this matter.  If you have any questions please feel free to contact me or Kathleen Rose, Registration Operations Deputy Director, at (916) 657-8135.

Sincerely,


DEBBIE CASEY, Manager
IT Acquisitions

cc:  Larry Majerus
      Sean Wheatley
      Kathleen Rose
      Pam Mizukami
      Ila Parisek


*A Public Service Agency*



intelligence**insight**impact

February 24, 2009

Debbie Casey
Manager, IT Acquisitions
State of California – Business, Transportation and Housing Agency
Department of Motor Vehicles
Administrative Services Division
P.O. Box 932382
Sacramento, California 94232-3820

RE: California Department of Motor Vehicles (DMV) #TC07-017

Dear Debbie,

This letter is in response to your formal request to amend the contract between R. L. Polk & Co. ("Polk") and the California Department of Motor Vehicles for National Motor Vehicle Title Information System (NMVTIS) batch services. Specifically, your desired amendment would remove Section "O" in its entirety from Exhibit A. This would, in effect, completely eliminate the data use restrictions as outlined in this section.

As you know, Polk pays nearly $1,000,000 per year to the State of California for title and brand data. This includes the procurement of data required to facilitate the obligations of the NMVTIS contract. Our concern lies with the fact that the same data that Polk procures for a significant amount of money will be provided to a third party at no cost. From a business standpoint, this places our company in a position of inequity in the marketplace. We feel that providing unrestricted and free access to data that Polk invests great time and expense acquiring and processing is not reasonable. The concern of the outright elimination of Section "O" is increased given the potential for future changes to NMVTIS including the system operator, expanded data requirements and additional applications of the data outside of consumer access.

That being said, pursuant to Sections "N" and "O" contained within Exhibit A, in the event it becomes necessary to modify the terms of the contract, both parties have agreed to engage in good faith negotiations in an effort to define the circumstances under which Polk would be willing to continue the agreement. It is our intent to discuss potential and reasonable options for success on behalf of each party. We look forward to having this discussion in the near term.

In the meantime, please do not hesitate to contact me at 248.728.7953 with any questions.

Sincerely,

Joe Jurkiewicz
Vice President, Strategic Markets
R. L. Polk & Co
248.728.7953

cc: Larry Majerus
    Sean Wheatley
    Kathleen Rose

26955 Northwestern Highway, Southfield, MI 48033 – Phone 248.728.7000 – www.polk.com

R. L. Polk & Co. Confidential



U.S. Department of Justice

Office of Justice Programs

*Bureau of Justice Assistance*

---

Office of the Director                     *Washington, D.C. 20531*

January 26, 2009

Glen Page
Deputy Commissioner
Tennessee Department of Revenue
12th Floor
Andrew Jackson Building
500 Dedrick Street
Nashville, TN 37242

Re: National Motor Vehicle Title Information System (NMVTIS)

Dear Deputy Commissioner Page:

Thank you for taking the time on Friday, January 16, 2009 to discuss Tennessee's level of
participation in, and compliance with, the National Motor Vehicle Title Information System
(NMVTIS) as established by the Anti-Car Theft Improvements Act (ACTA) of 1992 (Public
Law 102-519) and the Anti Car Theft Improvements Act of 1996 (Public Law 103-272.) As we
discussed, the Department of Justice is responsible for implementing ACTA, which requires all
states to provide vehicle title history information to NMVTIS on a regular basis and to make
inquiries into the system before issuing a new title on an out-of-state vehicle. Further, the
Department is under a Federal District Court Order to provide prospective purchasers of
automobiles with instant and reliable access to all information present in NMVTIS by January
30, 2009.

In 2000, Tennessee received $300,000 in Department of Justice funding to update their titling
information system so that it could communicate with NMVTIS and use the system to make
inquiries on vehicle titles between March 2003 and December 2005.   Because Tennessee was in
full compliance with ACTA and because Tennessee's data remains in the system, we consider
Tennessee to be a participating State, but currently not in compliance with all of ACTA's
requirements. We understand from our discussion that Tennessee eventually ceased participation
in NMVTIS due to alleged system difficulties and technical support concerns.  We also
understand from our conversation that your agency is concerned with the required user fees
established pursuant to ACTA to support to the system.

As stated above, one of the Court's requirements is to provide consumers with reliable access to
NMVTIS data by January 30.  Because Tennessee data in the system has not been updated since
2005, it is expected that many consumers may receive false positive "hits" in the database
suggesting that a vehicle is titled in Tennessee when it no longer is.  This will create significant

problems for NMVTIS, and may also generate an increase in calls to your agency from consumers who have been given inaccurate information. Because of this, our immediate concern is how we can work with Tennessee to update its data as quickly as possible; specifically, how can we upload the historical Tennessee transaction data from March 2003 through December 2005 to NMVTIS? We know that you are in the process of implementing a new statewide system and that your technical resources are dedicated to accomplishing this by June 2009. However, we must advise Tennessee that because of the requirements of the Court's Order, we must notify the Court of Tennessee's response to this issue, as it impacts our ability to provide reliable data to consumers by January 30. We stand ready to explore options for updating data with your technical staff and have copied Patricia Dishman whom we have also consulted on this system and who administers Tennessee's allocation under the Justice Assistance Grants Program. As we explained on the call, Tennessee's compliance with ACTA's title verification requirements and the user fees is not something that needs to be addressed immediately, as these activities are not a part of the Court's Order.  Given the scope of the Court Order, we ask that we table these aspects of our discussion and focus solely on compliance with the data update activities.

Consistent with our need to update the Court in the coming days, we must request your response to this letter by January 29, 2009.  For your reference, we have enclosed a copy of the Anti-Car Theft Act and the Court's Order.

The Bureau of Justice Assistance appreciates your responsiveness and we look forward to your continued assistance in bringing Tennessee back into full compliance with the Anti-Car Theft Act.

Sincerely,

James H. Burch, II
Acting Director

Attachments

cc:    Rafael Gomez, Senior Trial Attorney, Civil Division, DOJ
       Peter Leary, Trial Attorney, Civil Division, DOJ
       Alissa Huntoon, Policy Advisor, Bureau of Justice Assistance
       Patricia B. Dishman, Director, Office of Criminal Justice Programs,
         Tennessee Department of Finance and Administration
       Neil Schuster, Executive Director, American Association of Motor Vehicle
         Administrators